Nos. 17-15983 & 17-16142

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

CHARLES RIDGEWAY, *et al.*,

*Plaintiffs, Appellees, and Cross-Appellants,*

v.

WAL-MART STORES, INC.,

*Defendant, Appellant, and Cross-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of California (Hon. Susan Illston)
No. 08-05221-SI

---

# APPELLANT'S RESPONSE AND REPLY BRIEF

---


RACHEL S. BRASS
JOSEPH A. GORMAN
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921

JAMES H. HANSON
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PC
10 West Market Street, Suite 1500
Indianapolis, IN 46204-2968

THEODORE J. BOUTROUS, JR.
LAUREN M. BLAS
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
tboutrous@gibsondunn.com

---

*Attorneys for Defendant, Appellant, Cross-Appellee Walmart Stores, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel of record certifies that Defendant-Appellant and Cross-Appellee Walmart Stores, Inc. has no parent corporation, and there is no publicly held corporation that owns 10% or more of its stock.

Dated: August 30, 2018

s/ Theodore J. Boutrous, Jr.
Theodore J. Boutrous, Jr.

## TABLE OF CONTENTS

Page

APPELLANT'S REPLY BRIEF ........................................................................1

INTRODUCTION ........................................................................................1

ARGUMENT ................................................................................................3

I. Plaintiffs' Formalistic Arguments Cannot Manufacture A Case Or Controversy Where None Exists ....................................................3

II. The Liability Judgment For Layovers, Rest Breaks, And Inspections Should Be Reversed ..........................................................9

A. Plaintiffs Are Not Entitled To Damages For Layovers .............9

1. Layover Time Is Not Compensable As A Matter Of Law ..........................................................................9

2. The Court Erred In Instructing The Jury On Control ........................................................................15

3. The Second Layover Instruction Was Not Corrective ......................................................................17

B. Plaintiffs Should Not Have Been Awarded Damages For Rest Breaks And Inspections Under Any Theory.....................20

1. The District Court Applied An Incorrect Legal Standard ......................................................................20

2. The Court's Jury Instructions On Inspections And Rest Breaks Were Erroneous and Prejudicial................23

III. The Court Did Not Hold Plaintiffs To Their Burden Of Proving Compliance With Rule 23's Class Certification Prerequisites ...........27

A. Dr. Phillips's Testimony Does Not Constitute Representative Evidence..........................................................28

B. Plaintiffs Cannot Save Dr. Phillips's Testimony By Relying On *Mt. Clemens*..........................................................33

C. No Other Representative Evidence Supports The Judgment ....................................................................36

CONCLUSION ....................................................................................39

CROSS-APPELLEE'S RESPONSE BRIEF ..............................................40

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................40

RESTATEMENT OF ISSUES PRESENTED ...........................................41

RESTATEMENT OF CASE ....................................................................41

STANDARD OF REVIEW ......................................................................43

ARGUMENT ..........................................................................................44

I. The District Court Correctly Declined To Award Liquidated Damages ....................................................................................44

A. Walmart's Pay Plans Were Objectively Reasonable ................44

B. Walmart In Fact Acted In Good Faith ......................................49

C. Plaintiffs' Arguments On Appeal Are Meritless ......................52

II. Imposing Penalties Here Would Violate Due Process ........................56

CONCLUSION ....................................................................................58

## TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
731 F.3d 952 (9th Cir. 2013) ....................32

*Aguilar v. Boulder Brands Inc.*,
2014 WL 4352169 (S.D. Cal. Sept. 2, 2014)....................8

*Alvarez v. IBP, Inc.*,
339 F.3d 894 (9th Cir. 2003) ....................32

*Amaral v. Cintas Corp. No. 2*,
163 Cal. App. 4th 1157 (2008) ....................33, 34, 44, 45, 50

*Amster v. Mulberg*,
2017 WL 1374699 (Cal. Ct. App. Apr. 17, 2017)....................54

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946)....................28, 33, 34

*Ariz. Christian Sch. Tuition Org. v. Winn*,
563 U.S. 125 (2011)....................6

*Arizona v. Shamrock Foods Co.*,
729 F.2d 1208 (9th Cir. 1984) ....................7

*Armenta v. Osmose, Inc.*,
135 Cal. App. 4th 314 (2005) ....................22, 47

*Augustus v. ABM Sec. Servs., Inc.*,
2 Cal. 5th 257 (2016) ....................13

*Bell v. Farmers Insurance Exchange*,
115 Cal. App. 4th 715 (2004) ....................32

*Benor v. Takeda Pharms. Am. Inc.*,
2018 WL 588563 (C.D. Cal. Jan. 25, 2018) ....................7

*Bluford v. Safeway Stores, Inc.*,
216 Cal. App. 4th 864 (2013) ....................21, 27, 48

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996)........................................................................56, 58

*Bono Enterprises v. Bradshaw*,
32 Cal. App. 4th 968 (1995) ..........................................................................14, 16

*Bratt v. Cty. of L.A.*,
912 F.2d 1066 (9th Cir. 1990) .........................................................................43

*Brigham v. Eugene Water & Elec. Bd.*,
357 F.3d 931 (9th Cir. 2004) ...........................................................................15

*Burdick v. Union Sec. Ins. Co.*,
2009 WL 4798873 (C.D. Cal. Dec. 9, 2009).........................................................5

*Burnell v. Swift Transp. Co. of Ariz. LLC*,
2016 WL 2621616 (C.D. Cal. May 4, 2016).......................................................46

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016)...............................................................................2, 5, 8

*Cole v. CRST, Inc.*,
2012 WL 4479237 (C.D. Cal. Sept. 27, 2012) ...................................................46

*Coles v. Eagle*,
704 F.3d 624 (9th Cir. 2012) ...........................................................................24

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...........................................................................................31

*Csaszi v. Sharp Healthcare*,
2003 WL 352422 (Cal. Ct. App. Feb. 18, 2003) ................................................13

*Dilts v. Penske Logistics LLC*,
769 F.3d 637 (9th Cir. 2014) ...........................................................................49

*Douglas v. Talk Am., Inc.*,
266 F.R.D. 466 (C.D. Cal. 2010).........................................................................8

*Drywall Tapers & Pointers of Greater New York v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*,
954 F.2d 69 (2d Cir. 1992) ...............................................................................52

*Experience Hendrix LLC v. Hendrixlicensing.com Ltd.*,
762 F.3d 829 (9th Cir. 2014) ....................................................................19

*Falcon v. Philips Elec. N. Am. Corp.*,
304 F. App'x 896 (2d Cir. 2008) ..................................................................8

*Gasaway v. Northwestern Mut. Life Ins. Co.*,
26 F.3d 957 (9th Cir. 1994) ......................................................................52

*Giaccio v. State of Pa.*,
382 U.S. 399 (1966)...........................................................................56, 57

*Gomez v. United States*,
490 U.S. 858 (1989)...................................................................................8

*Gonzalez v. Downtown LA Motors, LP*,
215 Cal. App. 4th 36 (2013) .....................................................................22

*Grayned v. City of Rockford*,
408 U.S. 104 (1972)..................................................................................56

*Harnish v. Widener Univ. Sch. of Law*,
833 F.3d 298 (3d Cir. 2016) .....................................................................38

*Harper House, Inc. v. Thomas Nelson, Inc.*,
889 F.2d 197 (9th Cir. 1989) ....................................................................24

*Harris v. Vector Mktg. Corp.*,
2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)...........................................57

*Hitt v. Arizona Beverage Co.*,
2009 WL 4261192 (S.D. Cal. Nov. 24, 2009).........................................5, 7

*In re Hotel Tel. Charges*,
500 F.2d 86 (9th Cir. 1974) ......................................................................30

*Jacquin v. Stenzil*,
886 F.2d 506 (2d Cir. 1989) .....................................................................53

*Jazzabi v. Allstate Ins. Co.*,
278 F.3d 979 (9th Cir. 2002) ....................................................................19

*Kennedy v. Arm Strong Towing Servs., Inc.*,
2017 WL 9486773 (Cal. Super. Ct. Dec. 7, 2017) ..........54

*Kline v. Coldwell, Banker & Co.*,
508 F.2d 226 (9th Cir. 1974) ..........6

*Kurgan v. Chiro One Wellness Ctrs. LLC*,
2014 WL 642092 (N.D. Ill. Feb. 19, 2014) ..........34

*Lusardi Constr. Co. v. Aubry*,
1 Cal. 4th 976 (1992) ..........45

*Martinez v. Combs*,
49 Cal. 4th 35 (2010) ..........57

*Mass. Delivery Ass'n v. Coakley*,
769 F.3d 11 (1st Cir. 2014) ..........49

*Medrano v. D'Arrigo Bros. Co.*,
336 F. Supp. 2d 1053 (N.D. Cal. 2004) ..........46

*Microsoft Corp. v. Baker*,
137 S. Ct. 1702 (2017) ..........6

*Missouri Pac. Ry. Co. v. Tucker*,
230 U.S. 340 (1913) ..........56

*Moore v. Deere Valley Trucking, Inc.*,
2018 WL 3848812 (D. Id. Aug. 13, 2018) ..........53

*Morillion v. Royal Packing Co.*,
22 Cal. 4th 575 (2000) ..........14

*Nance v. May Trucking Co.*,
2014 WL 199136 (D. Or. Jan. 15, 2014) ..........10

*Nance v. May Trucking Co.*,
685 F. App'x 602 (9th Cir. Mar. 29, 2017) ..........10

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ..........16

*Oglesby v. S. Pac. Transp. Co.*,
6 F.3d 603 (9th Cir. 1993) ........................................................................24

*Oman v. Delta Air Lines, Inc.*,
153 F. Supp. 3d 1094 (N.D. Cal. 2015)..............................................................55

*Oman v. Delta Air Lines, Inc.*,
889 F.3d 1075 (9th Cir. 2018) ...................................................................23, 45

*Ortega v. J.B. Hunt Transp., Inc.*,
No. 2:07-cv-08336-RGK-AFM (C.D. Cal. Aug. 7, 2018) ...........................45, 49

*Pollock v. Koehring Co.*,
540 F.2d 425 (9th Cir. 1976) ..........................................................................19

*Preiser v. Newkirk*,
422 U.S. 395 (1975)..........................................................................................5

*Reed v. Bowen*,
849 F.2d 1307 (10th Cir. 1988) ....................................................................4, 8

*Reinhardt v. Gemini Motor Transp.*,
869 F. Supp. 2d 1158 (E.D. Cal. 2012) ............................................................46

*Rodriguez v. Taco Bell Corp.*,
896 F.3d 952 (9th Cir. 2018) ..................................................2, 11, 12, 13, 14, 16

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007).......................................................................................45, 48

*Salmeron v. United States*,
724 F.2d 1357 (9th Cir. 1983) .........................................................................58

*Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*,
78 Cal. App. 4th 847 (2000) ............................................................................57

*Skilstaf, Inc. v. CVS Caremark Corp.*,
2010 WL 199717 (N.D. Cal. Jan. 13, 2010)..........................................................7

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)...................................................................................5, 58

*Standard Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013)....................5

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2013)....................57, 58

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016)....................29, 30, 31, 38, 58

*Ulin v. ALAEA-72*,
2011 WL 723617 (N.D. Cal. Feb. 23, 2011)....................50

*United States v. Beierle*,
77 F.3d 1199 (9th Cir. 1996)....................4, 35

*USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO*,
31 F.3d 800 (9th Cir. 1994)....................25

*Vaquero v. Stoneledge Furniture LLC*,
9 Cal. App. 5th 98 (2017)....................21, 25

**Constitutional Provisions**

Cal. Const. art. I, § 7....................56

U.S. Const. amend. V....................56

**Statutes**

Cal. Lab. Code § 200....................20

Cal. Lab. Code § 226.2....................21, 25, 47

Cal. Lab. Code § 1194.2....................55

**Regulations**

49 C.F.R. § 395.1....................9, 48

49 C.F.R. § 395.2....................35, 48

49 C.F.R. § 395.8....................35

13 Cal. Code Regs. § 1212 .......... 9

**Rules**

Fed. R. Civ. P. 23 .......... 28

Fed. R. Evid. 103 .......... 53

## APPELLANT'S REPLY BRIEF

## INTRODUCTION

Plaintiffs' opposition confirms what Walmart has said from the start: this is not a garden variety wage-and-hour case, but an effort to take advantage of a peculiar and unprincipled interpretation of California law to get paid for time spent not working, to be paid *again* for time spent on activities already paid well above the minimum wage, and, on top of that, to seek *penalties* for the wages alleged to be owed for those activities. The Court should reject Plaintiffs' invitation to affirm the judgment and to award penalties.

This profiteering effort should have ended years ago when two of the original four named plaintiffs died, the third lost interest in the suit, and the fourth was found to be such a poor class representative that counsel averred they were "not going to be able to carry forward" with him. Those events terminated whatever Article III case or controversy might have existed, and should have led to dismissal of the suit—not to a ruling ordering Walmart to resuscitate the matter by handing over the contact information for its current and former drivers so that Plaintiffs could search for a new plaintiff. The existence of a case or controversy does not turn on formalism, as Plaintiffs suggest, but on the court's power to award "effectual relief" to an injured party—if the allegedly injured party is no longer able to participate in the case, then

jurisdiction vanishes and dismissal is required. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016).

The district court also erred in ruling on summary judgment, and later instructing the jury, that time spent resting during federally mandated 10-hour off-duty breaks (called "layovers") was compensable. That ruling was based on its finding that Walmart "controlled" drivers by paying them an inconvenience fee of $42 if they took their layover in the truck's sleeper berth and that prior approval was required for the $42 to be paid if the driver took the layover elsewhere. That cannot be squared with this Court's decision in *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952 (9th Cir. 2018), holding that the provision of a benefit to employees who take their breaks in a specific location does not establish control. *Rodriguez* is fatal to Plaintiffs' claim to pay for layovers.

The court made similar errors in its summary judgment orders regarding rest breaks and inspections, and in instructing the jury on those two issues. One fundamental question in this case is whether California law permits employers to consider how much employees earn for different tasks and during each hour worked when evaluating minimum wage compliance, or whether, as Plaintiffs contend, context is irrelevant and all that matters is whether an employee was separately paid for each and every minute worked. In choosing the latter, the district court disregarded key

statutory provisions, as well as case law, permitting employers to consider total compensation (provided they are in fact compensating in some way for all work). The court then compounded the error by instructing the jury that what mattered for liability was not whether Plaintiffs in fact performed uncompensated work or took unpaid rest breaks, but whether Walmart followed its pay manuals—even though those manuals did not speak to whether rest breaks and inspections were paid or unpaid.

Finally, the judgment should be vacated because it is not supported by admissible classwide evidence. The vast majority of the witnesses spoke only to the highly individualized work performed by Walmart drivers, and their testimony was in no way representative of the experiences of over 800 drivers. The expert testimony offered to fill that gap was fundamentally unreliable and scientifically unsound, and should have been excluded in its entirety. For these reasons, Walmart respectfully asks the Court to vacate the judgment or else to order a new trial.

Walmart's response to Plaintiffs' cross-appeal, which explains that the court did not abuse its discretion in declining to award liquidated damages, is set forth *infra* at pages 40-58.

## ARGUMENT

### I. Plaintiffs' Formalistic Arguments Cannot Manufacture A Case Or Controversy Where None Exists

This case should have been dismissed when the four original named plaintiffs either passed away, elected not to continue with the case, or were cast aside by their

counsel as class representatives. Each of those events terminated any case or controversy between the Named Plaintiffs and Walmart, and thus eliminated jurisdiction over the suit. AOB22. The court's decision to order Walmart to produce a list of current and former employees so that Plaintiffs' counsel could continue their lawsuit was an act in excess of jurisdiction, or, at minimum, an abuse of discretion. AOB25-27.

Plaintiffs attempt to defend that error, but in the end, it is indefensible. First, Plaintiffs argue that the deceased plaintiffs' claims were not extinguished, but instead became the property of their estates, which "could have been substituted as plaintiffs once the stay of litigation was lifted." RB17. But the district court expressly found that the deceased plaintiffs' claims were "extinguished" (ER243), which Plaintiffs have not appealed. Even if the claims were still live, Plaintiffs' argument is irrelevant, as they never tried to substitute the estates of the deceased plaintiffs (RB17), and have therefore waived the argument. *See Reed v. Bowen*, 849 F.2d 1307, 1311 (10th Cir. 1988) ("It is neither practical nor prudential to engage the powerful machinery of a class action on the basis of a hypothetical."); *United States v. Beierle*, 77 F.3d 1199, 1201 (9th Cir. 1996) ("These claims are waived because they were not raised below.").

Second, there is no merit to Plaintiffs' contention that the claims of the plaintiff who lost interest in the case, and of the plaintiff about whom counsel had "concerns," remained live because counsel never sought to "dismiss" or "withdraw" them from the litigation. RB17-18. Those arguments rest on a misunderstanding of Article III's "case" or "controversy" requirement. Plaintiffs who voluntarily or involuntarily abandon claims are not just "inadequate representative[s]" (*Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013)), they lack a live case or controversy with a defendant. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) (requiring a concrete and redressable injury); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (courts may resolve only cases that "affect the rights of litigants in the case before them"). What matters for jurisdiction is the court's power to award relief: if an event "occurs during litigation" that makes it "impossible for a court to grant any effectual relief whatever to a prevailing party," then the case should be dismissed. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). That "event" need not be a withdrawal or dismissal (*see, e.g.*, *Hitt v. Arizona Beverage Co.*, 2009 WL 4261192, at *5 (S.D. Cal. Nov. 24, 2009) (jurisdiction lapsed where plaintiff no longer wished to proceed with the case); *Burdick v. Union Sec. Ins. Co.*, 2009 WL 4798873, at *7-8 (C.D. Cal. Dec. 9, 2009) (no jurisdiction where plaintiff "expressly disavowed any intention to seek the relief in question")), and Plaintiffs cite no authority suggesting otherwise.

Moreover, a ruling that a plaintiff who will not or cannot continue litigating her claims continues to have an Article III case or controversy with a defendant simply because she did not dismiss or withdraw her claims would contravene the Supreme Court's decision in *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1711, 1714-15 (2017), insofar as it disapproved of efforts to "engineer[]" jurisdiction where the parties are no longer in conflict. Further, if Plaintiffs' proposed rule were correct, counsel lacking a viable class representative could simply seek a court order compelling the defendant to produce a list of other potential plaintiffs, something the law forbids. AOB26 & n.1 (citing cases rejecting plaintiffs' efforts to compel production of a list of potential plaintiffs). Indeed, "[i]n an era of frequent litigation [and] class actions, … courts must be more careful to insist on the formal rules of standing, not less so." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011); *see also Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 238 (9th Cir. 1974) (Duniway, J., concurring) (opining that Rule 23 did not "abrogate [the] policy [against 'stirring up litigation']").

In any event, it is clear that the two living plaintiffs in fact lacked a live case or controversy with Walmart. One plaintiff informed counsel that he no longer wished to proceed (FER232), and Plaintiffs offered no proof that he had any desire to continue participating in the case in any other capacity. As for the other plaintiff, counsel represented to Walmart (contrary to their current representation that this

plaintiff "was *still* an adequate class representative" (RB18) (emphasis added)), that they were "*not going to be able to carry forward*" with him "as [a] class representative[]." FER232 (emphasis added); *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1214 (9th Cir. 1984) (plaintiffs may not engage in "intentional self-contradiction … as a means of obtaining unfair advantage").

It is "impossible" for a court to "grant any effectual relief" when plaintiffs, or their counsel, lose interest in prosecuting their claims. In *Hitt*, for example, the plaintiff did not formally withdraw or dismiss her claims, but "informed her counsel"—before the class had been certified—that she no longer "wishe[d] to prosecute her action," and the court concluded that "there is no longer a 'case or controversy' to be decided within the meaning of Article III of the constitution." 2009 WL 4261192, at *5; *see also Benor v. Takeda Pharms. Am. Inc.*, 2018 WL 588563, at *7 (C.D. Cal. Jan. 25, 2018) (plaintiffs lacking standing "cannot cure the absence of subject matter jurisdiction through substitution of a new named plaintiff"); *Skilstaf, Inc. v. CVS Caremark Corp.*, 2010 WL 199717, at *6 (N.D. Cal. Jan. 13, 2010) (dismissing complaint without leave to amend where contested covenant was enforceable against the named plaintiff and "it is not appropriate [prior to class certification] to permit substitution of the named plaintiff").

Make no mistake: the district court's approach was highly unusual if not wholly unprecedented. At bottom, despite ostensibly having had years to find new

class representatives while the case was stayed, counsel had no plaintiffs "ready and waiting" to press claims against Walmart (*Aguilar v. Boulder Brands Inc.*, 2014 WL 4352169, at *7-9 (S.D. Cal. Sept. 2, 2014)), and thus, could not seek any "effectual relief" from the district court. *Campbell-Ewald*, 136 S. Ct. at 669.[1]

Plaintiffs argue that Walmart cannot show prejudice from the district court's decision because it did not challenge the court's subsequent grant of leave to amend. RB20 n.3. But a party challenging the absence of jurisdiction need not show prejudice (*see, e.g.*, *Gomez v. United States*, 490 U.S. 858, 876 (1989)), and even if that were required, Walmart did preserve its objection by opposing Plaintiffs' motion, and the resulting prejudice is self-evident. There would have been no amendment, and likely no $73 million judgment, had the court dismissed the case when jurisdiction ceased to exist. Under the circumstances, the proper course was to declare the claims of the four original named plaintiffs moot and dismiss the case for want of an actionable case or controversy, and the district court exceeded its jurisdiction and abused its discretion in ordering otherwise. *See* AOB22-27.

---

[1] Although not an Article III issue, it bears mentioning that courts routinely deny requests for discovery to identify a new class representative after the proposed representative has been found inadequate. *See, e.g.*, *Reed*, 849 F.2d at 1311; *Falcon v. Philips Elec. N. Am. Corp.*, 304 F. App'x 896, 898 (2d Cir. 2008) (unpublished); *Douglas v. Talk Am., Inc.*, 266 F.R.D. 466, 466 (C.D. Cal. 2010). There is no reason that rule should be different where counsel effectively *concedes* inadequacy.

## II. The Liability Judgment For Layovers, Rest Breaks, And Inspections Should Be Reversed

The judgment in this case stemmed from erroneous summary judgment rulings, which concluded, based on the court's misinterpretation of language in one of Walmart's pay manuals, that drivers were not separately paid for various activities and that Walmart's manuals exercised control over drivers during layovers. ER134. The court's rulings on each of these issues misapprehended and misapplied the relevant legal standards. The court then compounded its error by directing the jury to find for Plaintiffs if it concluded that Walmart followed the pay manuals that the court had erroneously found unlawful. Each of these errors warrants reversal, or, at minimum, a new trial.

### A. Plaintiffs Are Not Entitled To Damages For Layovers

#### 1. Layover Time Is Not Compensable As A Matter Of Law

Walmart drivers, like all long-haul truck drivers, are required by federal regulations to take 10-hour breaks (called "layovers") after 14 hours on duty. Both federal and California regulations prohibit drivers from working, or even being "in readiness to work" (i.e., on call), during those layovers. *See* 49 C.F.R. § 395.1(g)(1)(i); 13 Cal. Code Regs. § 1212(g)(1)(A). Walmart trucks, like many others in the industry, are equipped by the manufacturer with a sleeper berth compartment where drivers can sleep or rest during the layover. Drivers can also engage

in a number of additional activities outside the sleeper berth, including eating, running errands, and exercising. AOB16-17, 29-30. There is no evidence that any other trucking company pays its drivers a dime for these federally mandated layovers, and this Court recently affirmed a decision holding that, as a matter of law, time spent in a sleeper berth is not compensable under federal or Oregon law. *Nance v. May Trucking Co.*, 685 F. App'x 602, 605 (9th Cir. Mar. 29, 2017) (unpublished), *affirming in relevant part Nance v. May Trucking Co.*, 2014 WL 199136 (D. Or. Jan. 15, 2014). As in *Nance*, Walmart simply cannot continue complying with federal and state regulations prohibiting its drivers from working (which it indisputably does), on the one hand, while *also* being forced to compensate drivers for that same time as time "worked," on the other hand. Plaintiffs' four arguments in response conflict with this Court's binding authority or mischaracterize the district court record and should be rejected.

1. Plaintiffs' primary argument is that *Nance* is inapplicable and layovers *are* compensable in California because *Nance* was an Oregon case, and in California, time is compensable if the employer *controls* the employee, even if that employee is not working. RB30-31, RB36. Plaintiffs defend the trial court's view that Walmart exercised control here by "specifying the location for a paid layover and prohibiting payment for layovers taken at the driver's residence without prior authorization."

RB31 (quoting ER189). But this Court's recent decision in *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952 (9th Cir. 2018), confirms the fallacy of Plaintiffs' position.

In *Rodriguez*, this Court examined Taco Bell's policy of paying for its employees' meals *only if* they ate those meals in the restaurant. *See* 896 F.3d at 954 (policy manual stating employees "must eat [their] discounted meal in the restaurant"). Although employees were free to leave the premises and eat meals elsewhere, the plaintiff "availed herself of a discounted meal almost every shift." *Id.* The purpose of the policy was "to prevent theft" of discounted food that would be "given to friends and family." *Id.* Plaintiff argued that because the discounted meals were available only to employees who remained on premises, "employees are under employer control during the meal period" and "the time must be counted as time worked." *Id.* at 956. This Court rejected plaintiff's argument, holding that neither providing the discounted meal nor specifying where it must be consumed amounted to "control" during meal periods because employees were "relieved" "of all duties" during that time, the purchase was voluntary, and employees were free to choose to spend their break time however they pleased. *Id.* at 956-57. This Court also emphasized that although Taco Bell imposed additional restrictions—prohibiting employees from eating near the "food production area" and "cash register service area"—these restrictions did not amount to control because the employees were "free to

leave the premises or spend their break time in any way that they choose *that does not interfere with Taco Bell conducting its business*." *Id.* (emphasis added).

Walmart drivers likewise were relieved of all duties during their layovers and were free to spend their layovers however they pleased. Most drivers slept in the sleeper berth, but others laid over at home or a hotel, watched movies, visited family, exercised, ate, went golfing, or engaged in myriad other activities. AOB16-17, 29-30. While drivers received $42 for the inconvenience of taking layovers away from home in the sleeper berth (or at a hotel), some also received $42 if they took the layover at home and first obtained permission to receive the layover pay for doing so. ER1320-1323. The decision to sleep in the berth was entirely voluntary—drivers were not required to use the sleeper berth, and could leave the truck for hours or the duration of the federally mandated layover—it was completely up to them. ER694, ER544, ER496-97; *see also* AOB36-37. Given those facts, Walmart's payment of $42 to drivers who slept in the sleeper berth was, like the meal in *Rodriguez*, "a benefit or service that employees could choose, but were not required to take advantage of," and therefore "compensation was not required" for time spent enjoying that benefit. 896 F.3d at 957. Just as many Taco Bell employees preferred to eat discounted meals *at* Taco Bell, the evidence showed that Walmart drivers preferred the convenience of sleeping in sleeper berths while on the road (FER140), while others stayed in hotels or went home, just as Taco Bell employees could pay

for or bring lunch and eat it elsewhere. And to the extent a particular driver's preference was in any way influenced by the fact that he or she was on the road, away from home (thereby limiting their options), such "practical limitations" do not establish control. *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 270 (2016).

*Rodriguez* is therefore fatal to Plaintiffs' argument that the payment of $42 for layovers away from home establishes control. *See also Csaszi v. Sharp Healthcare*, 2003 WL 352422, at *10 (Cal. Ct. App. Feb. 18, 2003).

2. Plaintiffs also now argue (as they did for the first time after trial (ER59-60)) that Walmart controls its drivers by prohibiting consumption of alcohol, possession of firearms, or invitations to spouses or pets to join them in the sleeper berth during the layover. RB12-13, 32-33. But such restrictions are akin to Taco Bell's prohibition of eating discounted meals near the cash register or food preparation area—to do so would "interfere with Taco Bell conducting its business." *Rodriguez,* 896 F.3d at 957. Indeed, no California court has come close to holding that legal and safety compliance and basic rules of workplace etiquette are sufficient to establish control. *See* AOB37-38.

3. In addition, Plaintiffs argue that Walmart's policies not only prohibit drivers from obtaining *pay* for a layover taken at home without permission, but also prohibit drivers from taking *any* layover at home without permission. RB7, 35. This is simply incorrect, as the language of the pay manual and the evidence at trial both

established that permission was only required to get *paid* for a layover taken outside of the sleeper berth. *Supra* pp. 9-10, 12; *see also* ER977 ("The intent is to *pay* Drivers for layovers taken in the tractor cab. Any exceptions must be approved prior to the Layover….") (emphasis added). But even *if* drivers were required to obtain permission to take the layover at home, that would not establish control. As the California Court of Appeal recognized in *Bono Enterprises v. Bradshaw*, 32 Cal. App. 4th 968 (1995), while employees who are *prohibited* from leaving the worksite during a break may be under an employer's control, employees who are required to "ma[k]e prior arrangements" before leaving the worksite are not. *Id.* at 978 n.4. This fact, described as "extremely significant" (*id.*), distinguishes this case from both *Bono* and *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000), which also involved prohibitions on employee activity.

Thus, while a flat prohibition on an employee's activity may imply control, requirements making it more burdensome for the employee to act, standing alone, will not. Indeed, *Rodriguez* distinguished *Morillion* on this basis, because in *Morillion*, the employees "had no choice" but to ride employer buses to work. *Rodriguez*, 896 F.3d at 957 (noting that *Morillion* "was careful to limit its holding to those policies that compelled employee participation"). That is not the case here, where drivers were free to, and did, use their layover time as they wished—at home, in hotels, in the sleeper berth, or wherever they chose.

4. Finally, Plaintiffs argue in passing that *Nance* is inapplicable because "California law has no special rules governing pay for layover time" (RB36-37 n.7), but that, too, is wrong. As set forth in Walmart's opening brief (AOB29-30), California regulations describe in detail the requirements for recording on- and off-duty time during layovers, and Plaintiffs do not respond to (let alone dispute) Walmart's description of those provisions.[2]

Thus, as in *Rodriguez*, there is no control here as a matter of law.

### 2. The Court Erred In Instructing The Jury On Control

Even if layover time could be deemed compensable, the district court here erroneously decided the issue at summary judgment, resulting in an improper jury instruction that requires a new trial. AOB33-35. The instruction told the jury—in direct, conditional, if/then language—how to reach their verdict: *if* Walmart applied its pay manual in practice, *then* the jury must award unpaid wages for layover time. ER98 ("Therefore, if plaintiffs prove by a preponderance of the evidence that Walmart applied the policy as it is stated in the driver pay manuals, then plaintiffs

---

[2] While Plaintiffs attempt to recast *Nance* as a preemption case (RB36), *Nance* merely referred to cases (*e.g.*, *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 936 (9th Cir. 2004)), looking to analogous regulatory schemes for guidance in determining whether regulated time is "compensable"; it was not decided on preemption grounds. Plaintiffs do not dispute that it is proper to use similar authorities here. Walmart's separate preemption argument is set forth in its opening brief. *See* AOB33-35.

are entitled to the amount of additional pay….”). The court explained to the jury that its task was limited to deciding whether Walmart applied its pay manuals (rather than deciding control) because “[t]he Court has previously found that the policies stated in Wal-Mart’s driver pay manuals subjected drivers to Wal-Mart’s control during layover periods.” ER98.

Although the jury instruction did not specify *which* provision of the pay manual the court was referring to (itself grounds for a new trial), Plaintiffs argue, and the district court held in post-trial orders, that if applied in practice, Walmart’s payment of $42 to drivers for layovers away from home established control. ER68. But, the payment of an incentive or inconvenience fee (*Rodriguez*, 896 F.3d at 957), or the provision of an optional service to employees (even if permission is required to opt out (*Bono*, 32 Cal. App. 4th at 978 n.4)), does *not* establish control as a matter of law. Thus, the district court erred in instructing the jury.

Plaintiffs do not dispute that the district court’s layover instruction was erroneous and that it took the issue of control away from the jury. Nor could they, because in closing argument, counsel told the jury, “You don’t get to decide that,” and “the only question remaining” was whether “Wal-Mart applied the policy as it is stated in the Driver Pay Manuals.” ER330. Plaintiffs are judicially estopped from taking a different position here. *New Hampshire v. Maine*, 532 U.S. 742, 745 (2001).

Plaintiffs also do not dispute that Walmart properly (and repeatedly) objected to this instruction.[3]

Rather, Plaintiffs argue that the court later *corrected* this instruction with a subsequent instruction that Walmart did not object to. But that argument fails at the outset because the second instruction did not correct the first one at all.

#### 3. The Second Layover Instruction Was Not Corrective

Plaintiffs argue that Walmart's challenges to the court's instructions are waived because Walmart "endorsed" a second, corrective instruction on layovers. RB1, 23-26. But that second instruction addressed the question of what "control" means under California law; it did not correct the first instruction telling the jury what to decide and how to do so.

Specifically, during deliberations, the jury submitted a note to the court *requesting a definition* "regarding Walmart's control during layover periods" on "[p]age 17, line 12 and 13" of the jury instructions. ER284-85. In response, the court instructed the jury that there is "no clear definition of control in the California Labor Code" but that cases have interpreted the term:

---

[3] Plaintiffs' argument that Walmart "did not object to [Plaintiffs' closing] statement" is beside the point. RB29 n.6. Walmart is merely pointing out that Plaintiffs' counsel told the jury that the judge had already decided the issue of control. The court's decision is precisely what Walmart argues was reversible error. That error was not "harmless" (RB28), because it told the jury how to decide an issue that was, at minimum, disputed.

> The cases from the California courts have stated that the level of the employer's control over its employees, rather than the mere fact that the employer requires the employee's activity, is determinative. To determine if a driver was subject to Walmart's control during the layover, you must determine whether the driver was able to use that time effectively for his or her own purposes. I will give you two examples from other cases.

ER299. The court then went on to discuss the facts of two different cases. ER300.

Plaintiffs assert that this second instruction corrects the first. But it does not. The second instruction makes no mention of the first, let alone corrects it. To the contrary, the jury asked for a definition of "Walmart's control," and the court provided one. While Plaintiffs rely heavily on the statement "you must determine whether the driver was able to use that time" as somehow amending the first instruction, that clause (which clearly refers to how "control" is defined in the case law) is also qualified by the preceding statement "[t]o determine if a driver was subject to Walmart's control during the layover…." ER299. And the court had already told the jury, unequivocally, that it had decided *that* question—if the pay manual was applied in practice, then Walmart controlled the drivers.

That this was not a corrective instruction is underscored by looking to the corrective instruction the court *did issue* on the question whether Walmart could argue that its activity codes in fact paid for certain tasks. Specifically, over Walmart's objection, the court read a midtrial jury instruction concerning its summary judgment order (FER138), but Walmart moved for a corrective instruction

(FER158), which the court granted, and in turn told the jury: "I am going to give you a further instruction. This instruction is meant to *replace* the instruction that I read to you on Thursday last week, and you *should consider this instruction and not the one I read on Thursday*." FER122 (emphases added). The court concluded by stating: "So, *that's a superseding instruction*." FER123 (emphasis added). *This* language is clear to the jury that the court is correcting itself.

In other words, the record shows that the district court understood and executed its obligations when, midtrial, it told the jury with "concrete accuracy" that its instruction was a correction. *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 986-88 (9th Cir. 2002) (describing "obligation" when correcting prior instruction); *Experience Hendrix LLC v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 847 (9th Cir. 2014); *Pollock v. Koehring Co.*, 540 F.2d 425, 426 (9th Cir. 1976) (vacating judgment where district court's response to jury question did not correct, and compounded, error with original instruction because "inconsistent or equivocal instructions and incorrect statements of the law may be prejudicially erroneous"). But there can be no serious suggestion that on this second occasion it did so *sub silentio*. For the same reason, no reasonable juror would have considered the second layover instruction to be superseding or correcting the first. And since Plaintiffs do not, and cannot, dispute that the first instruction erroneously told the jury that Walmart controlled drivers if it followed its pay manuals, at minimum, a new trial is warranted.

### B. Plaintiffs Should Not Have Been Awarded Damages For Rest Breaks And Inspections Under Any Theory

#### 1. The District Court Applied An Incorrect Legal Standard

Plaintiffs do not dispute that California law permits employers to pay employees using non-hourly compensation systems (Cal. Lab. Code § 200(a)), nor do they dispute that the drivers' wages in this case, when evaluated across a given year, month, week, or day, exceeded the applicable minimum wage for all time worked. AOB3, 41-42. Instead, Plaintiffs contend that, because California law prohibits "averaging," the drivers' actual earnings are irrelevant, and what matters is whether the time spent on a particular task, considered in isolation, was paid at a rate at or exceeding the minimum wage. RB40. Under that theory, the amount paid for other activities within a given hour, day, or week, is immaterial. RB40.

As Walmart argued in its opening brief, that theory is at odds with provisions of the Labor Code that contemplate a more holistic approach to minimum wage compliance. Section 226.2(3)(A), for example, provides that "employees [paid on a piece-rate basis] shall be compensated for rest and recovery periods at a regular hourly rate that is no less than the higher of: (i) an average hourly rate determined by dividing the total compensation for the workweek, exclusive of compensation for rest and recovery periods and any premium compensation for overtime, by the total hours worked during the workweek, exclusive of rest and recovery periods" or

(ii) "the applicable minimum wage." Cal. Lab. Code § 226.2(3)(A)(i), (ii). Numerous state and federal cases, which remain good law, also support the view that minimum wage compliance must be evaluated with reference to an employee's overall compensation and not on a minute-by-minute basis. AOB41-43 (citing cases).

That rule is no different for rest breaks: *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864 (2013), did not hold that *each minute* of a rest period must be directly compensated; it merely said rest periods must be "separately compensated in a piece-rate system." *Id*. at 872. *Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98 (2017), does not take a different view, and indeed, supports Walmart's context-dependent view of compensation insofar as it states that employers must separately compensate rest periods only if their "compensation plan *does not already include a minimum hourly wage for such time*." *Id*. at 110 (emphasis added). Where, as here, an activity-based pay plan includes components such as hourly wages, there can be no violation of California law when rest breaks are taken during those periods. And there is no dispute this was true for at least some rest breaks and drivers. FER151; FER103.

Context is similarly important with respect to pay for inspections. Contrary to Plaintiffs' suggestion that an employer must pay for the 15 minutes spent on a pre-trip inspection "no matter how much the employer may pay the driver for any other period of time" (RB40), understanding how a driver did her work and how it

was treated under the pay plan (i.e., putting it into context) is not tantamount to "averaging."

Two decisions are critical to the "averaging" question under California law: *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005) and *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36 (2013). Both turned on the existence of unpaid time and held that, if such time exists, an employer may not average an employee's weekly pay across all hours worked in a pay period and claim that time was paid.

The situation for Walmart's drivers, however, is different. The units in which drivers are paid—"Hooks," "Arrives," etc.—necessarily include tasks that are part of and/or directly related to their safe completion. As Walmart explained in its opening brief, drivers and managers alike testified that inspections were "part of" a paid activity (such as a "Hook," Mileage, or an "Arrive"). ER593, ER667-668, ER696. And with respect to rest breaks—not to be confused with mandatory 10-hour layovers—some drivers testified that they never took those breaks at all, or opted not to take them every day, such that they would not be entitled to compensation. ER449-450, ER458, ER501-502, ER551, ER554-555, ER564, ER664.

The most that can be said for Plaintiffs is that California law is unsettled on this point, as this Court recently recognized when it certified to the California Supreme Court the question whether "the *Armenta/Gonzalez* bar on averaging wages appl[ies] to a pay formula that generally awards credit for all hours on duty, but

which, in certain situations resulting in higher pay, does not award credit for all hours on duty." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1077 (9th Cir. 2018). Delta's pay plan is different than Walmart's, and thus any decision by the California Supreme Court (which accepted the certified question), while perhaps informative, will not necessarily be controlling on this case. *Oman* does, however, highlight the analytical difficulties inherent in applying *Armenta* and *Gonzalez* to compensation plans with non-standard components (such as "Hooks" and "Arrives") that result in payments exceeding the minimum wage. Walmart respectfully submits that the correct and most sensible course here is to rule that such compensation plans do not violate California's minimum wage laws, and that the judgment in this case with respect to inspections and rest breaks cannot be sustained.

#### 2. The Court's Jury Instructions On Inspections And Rest Breaks Were Erroneous and Prejudicial

Even if the Court were to adopt Plaintiffs' view regarding "averaging," the district court erred in instructing the jury that Walmart's pay manuals did not "separately specify pay for rest breaks," that it had "previously found that Wal-Mart's 2008 driver pay manual states that no pay is earned for certain tasks," and that "[s]uch a policy, if enforced or applied, does not comply with California's minimum wage laws." ER97. These statements told the jury that Walmart did not actually pay for these tasks *unless* the jury found that Walmart did not follow its own pay manuals. AOB44-45. As with the court's layover instruction, that was an incorrect

and prejudicial framing of the relevant question, which was whether there was evidence to conclude that these activities were unpaid. *See Coles v. Eagle*, 704 F.3d 624, 630-31 (9th Cir. 2012) (jury instruction that "enforced an erroneous partial grant of summary judgment" is reversible error); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 208 (9th Cir. 1989).

Plaintiffs make three primary points in response, none of which can explain away the district court's error. First, they assign undue weight to the fact that the jury agreed with Walmart's arguments that the seven other activities at issue (fueling, washing, weighing, etc.) were paid through Walmart's activity-based pay plan. RB39, 41, 42. That fact does not mitigate the prejudice created by the court's instruction because the relevant question in analyzing jury instructions is whether, when viewed as a whole, the instructions are "misleading or inadequate." *See, e.g.*, *Oglesby v. S. Pac. Transp. Co.*, 6 F.3d 603, 606 (9th Cir. 1993). The court's instructions on rest breaks and inspections effectively told the jury that it should find Walmart liable "if" Walmart followed its pay manuals. ER97, ER99. That was plainly inaccurate and misleading: because the manuals do not speak to whether these activities are paid or unpaid, whether Walmart "followed" its pay manuals would not shed light on the question whether compensation was owed for either of them. Just as a broken clock is right twice a day, the fact that the jury reached the right result as to some claims despite the erroneous instruction does not

establish that the instruction was correct. *Cf. USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994).

*Vaquero* does not support Plaintiffs' argument either. RB41. *Vaquero* referred to the district court's summary judgment order in *Ridgeway* only for its *Bluford* analysis, not for its description of Walmart's pay manuals or its jury instructions. *See* 9 Cal. App. 5th at 111, 116. As such, it does not illuminate the issue here.

Second, Plaintiffs are equally off-base in arguing that Walmart cannot claim prejudice because it was "permitted" to argue that the activities in question were "directly related" to the units of compensation drivers received. RB42-43. That is not what the trial record shows. The "directly related" statute, Section 226.2, provides that employees paid on a piece-rate basis "shall be compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation." Cal. Lab. Code § 226.2(a)(1). "[O]ther non-productive time" is defined as time under an employer's control that "is not *directly related* to the activity being compensated on a piece-rate basis." *Id*. § 226.2 (emphasis added). Without conceding that the activities in question were "non-productive," Walmart specifically asked the court to instruct the jury that it could find for Walmart if it found those tasks were directly related to the units of pay (e.g., "Hooks," "Arrives," and the like). FER158; *see also* ER1002, ER1481, FER175. The court declined to instruct the jury on that basis (ER60, ER97), based on a mistaken view of Section 226.2's effect and

scope. Plaintiffs cannot seriously contend that Walmart was permitted to argue something that the district court rejected.

Moreover, while Walmart did present arguments and evidence regarding the activities covered by its pay codes, contrary to Plaintiffs' assertions (RB42), the question whether an activity is explicitly *paid* by a given pay code is conceptually distinct from the question whether a given activity should be considered paid under that code because it is *related* to whatever is explicitly paid by the code. For example, sweeping the debris out of a trailer may not, in some instances, be part of what is required to safely deliver a load to a destination. But it is directly related to that act, insofar as a clean trailer makes it less likely that merchandise will be damaged or dirtied during delivery, and may make it easier to locate the relevant merchandise. Thus, while sweeping a trailer might not be explicitly compensated through a "Hook" or "Arrive," it would be compensated under a "directly related" theory. But Walmart was not permitted to make that argument to the jury.

Third, Plaintiffs are mistaken that the instructions accurately described the facts and did not limit the scope of the jury's liability inquiry. RB43-44. For proof, the Court need look no further than this syllogism from the rest break instruction, which mirrored the layover instruction: "*If* you find … that Walmart applied the policy as it is stated in the driver pay manuals [i.e., that the manuals "do not separately specify pay for rest breaks"], such that minimum wage was not earned for rest

breaks, *then* plaintiffs are entitled to recovery of wages …." ER99 (emphases added).

The only logical inference from that instruction—even considering its statement that "plaintiffs must still prove … the class members *in fact were not paid*" (RB43-44 (emphasis in original))—is that following Walmart's pay manuals would lead to a minimum wage violation. But such an instruction misstates both the law and the facts. There is no requirement that an employer "separately specify pay" for rest breaks; under *Bluford*, it simply must ensure such breaks are "separately compensated." 216 Cal. App. 4th at 872. In addition, Walmart's pay manuals do not fail to "specify pay" for rest breaks or inspections, because, contrary to the insinuation in the court's instruction, they do not single out these activities as unpaid. ER957-986. The instruction is prejudicial because it not only asked the jury the wrong question, it asked it in a way that implied only one conclusion: that Walmart violated the law. At minimum, a new trial should be granted on the issue of liability for rest breaks and inspections.

## III. The Court Did Not Hold Plaintiffs To Their Burden Of Proving Compliance With Rule 23's Class Certification Prerequisites

The fundamental problem with the proof offered in this trial is that it did not accurately represent the class members' tremendously varied experiences. That is just as true of Dr. Phillips's testimony as it is of the other evidence Plaintiffs offered in an attempt to establish liability on a classwide basis. That basic defect cannot be

overcome by relying on *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), as that case permits shifting the burden of proof only if the defendant has violated a statutory recordkeeping duty, which Walmart did not do here.

### A. Dr. Phillips's Testimony Does Not Constitute Representative Evidence

Rule 23 permits named plaintiffs to bring claims on behalf of themselves and other similarly situated people. "Subdivision (a) states the prerequisites for maintaining any class action in terms of the numerousness of the class making joinder of the members impracticable, the existence of questions common to the class, and the desired qualifications of the representative parties." Fed. R. Civ. P. 23(a) (advisory committee's note to 1966 amendment). The qualifications of those "representative" parties are critical, because the claims of absent persons rise and fall with the merits of their claims. *Id.* Only where the absent persons are "similarly situated" is it appropriate to maintain a (b)(3) class action. *Id*.

This case put those questions to the test under the particular framework of Labor Code section 1194. Plaintiffs were required to prove that they were under Walmart's control during layovers; "performed work" for Walmart; were "paid less than the minimum wage" by Walmart for some or all hours worked; and "the amount of wages owed." *See* CACI 2701. The Supreme Court has explained that class representatives can rely on individual proof to show classwide injury only where the

evidence in question "could have sustained a reasonable jury finding … in each employee's individual action." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046-47 (2016).

Dr. Phillips's so-called expert opinions did not permit that inference. In essence, rather than trying to model the actual experiences of each driver, Dr. Phillips created a hypothetical "composite" driver using aggregate estimates of time spent on layovers, rest breaks, and inspections by relying on guesses given during an unscientific "survey" and in depositions by an unrepresentative sample of forty drivers. AOB12-13. But the experiences of a "composite" driver cannot stand in for the experiences of actual Walmart drivers, because the drivers' work and pay varied substantially by day and by driver, and no one was similarly situated to the "composite" driver. That is underscored by the fact that Dr. Phillips's estimates frequently did not even match the trial testimony of the Named Plaintiffs (*see* ER1273-1298; ER515, ER551, ER554-555, ER564, ER501-502, ER509-510, ER512, ER590, ER581), and did not incorporate the testimony of the twenty other drivers who testified live at trial.

Employees were permitted to rely on aggregate estimates in *Tyson* because they were "similarly situated"—"each employee worked in the same facility, did similar work, and was paid under the same policy"—and there were no records of the time any employees spent "donning and doffing." *Id.* at 1044, 1048. Because

each employee would have had to rely on the survey to prove an individual claim, the Court saw no difficulty in allowing the class to do so. *Id.* at 1048.

But that sort of proof does not exist here. If Plaintiffs Harold, Opitz, or Day were to litigate their claims on an individual basis, they would have no reason to rely on an assumption (unsupported by data) that the average driver took two 10-minute rest breaks per day, because they had their *own* evidence that they either did not take breaks at all (ER554-555, ER564 [Opitz]; ER501-502 [Day]), or took them only "if it was necessary" (ER551 [Harold]). Similarly, Plaintiffs Merhoff and Famoso would have no reason to rely on an assumption that drivers inspected their trucks twice daily for 15 minutes, because Merhoff said he spent only seven minutes on a pre-trip inspection (ER590), and Famoso said he spent 10 to 15 minutes (ER481). Permitting Plaintiffs to rely on statistical evidence and aggregate estimates in the face of their own contrary testimony and experiences would completely undermine the "representative" foundation upon which the class action device rests.

In short, because Dr. Phillips's testimony would not be admissible in an individual action, it cannot be relied upon as common proof to establish classwide injury or damages in a class action. *See Tyson Foods*, 136 S. Ct. at 1048 (Rules Enabling Act prohibits "giving plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action"); *see also In re Hotel Tel.*

*Charges*, 500 F.2d 86, 90 (9th Cir. 1974) (rejecting damages model that calculated only "average" injury as violating due process and the Rules Enabling Act).

Plaintiffs' response—that they were not required to prove damages using an "*individualized analysis* of every rest break and every inspection taken by every class member" during the class period (RB50 (emphasis in original))—misses the point. The problem with Dr. Phillips's testimony is not merely that his estimates were inaccurate or unscientific (though they were, AOB12-13), but that, given the varied nature of the class members' experiences in this particular case, and the actual testimony to the contrary, reliance on those estimates violates the Rules Enabling Act. *Tyson Foods*, 136 S. Ct. at 1046-47; *id*. at 1048 (representative evidence cannot be "based on implausible assumptions"); *Comcast Corp. v. Behrend*, 569 U.S. 27, 34, 35 (2013) (plaintiffs must prove damages are "capable of measurement on a classwide basis" in a manner "consistent with their liability case"). While in some cases, the variation across class members' experiences may be sufficiently limited that a single set of aggregate estimates can fairly capture the experiences of the class, that is not true in a case like this one, where the drivers' experiences varied not only in terms of how long they spent on activities, but how often they performed the activities, whether they performed them during paid or unpaid time, where they took their layovers, and whether they took rest breaks. ER428, ER449, ER553-556, ER551-552, ER606-607, ER696, ER684, ER653, ER489-490, ER455, ER459,

ER415, ER882; FER100, FER108-109, FER171-172, FER173, FER141-145, FER101-102. In other words, while an individualized analysis might not be required in *every* wage-and-hour action, it *was* required here.

Plaintiffs' cases are not to the contrary. In *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), a case alleging that an employer failed to pay employees for time spent donning protective clothing and equipment, there was no dispute that purportedly unpaid work had in fact been performed and liability had been established; the only question was the "*amount* of damage." *Id*. at 914-15. *Alvarez* does not suggest that approximations can be used to determine liability; to the contrary, the court there agreed that even where only damages are at issue, "[i]n contexts in which work tasks are not uniform … that which is 'approximate' may not always be 'reasonable.'" *Id*. at 915. *Abdullah v. U.S. Security Associates, Inc.*, 731 F.3d 952 (9th Cir. 2013), merely states that punch-clock records can be used to "extrapolate" whether a meal break was on or off-duty; the case does not permit vague approximations in cases with highly variable class member activities, or lower an employee's burden of proof categorically where the records the employee would like to have to prove his or her claim do not exist. *Id*. at 966. And *Bell v. Farmers Insurance Exchange*, 115 Cal. App. 4th 715 (2004) simply confirms that while "not all employees need testify" to prove their claims (*id*. at 748 & n.22), that assumption holds only if the employees who *do* testify are representative of, and similarly situated to, the rest of the class.

That is what Rule 23's requirements are meant to ensure, and what the district court did not sufficiently police here.

### B. Plaintiffs Cannot Save Dr. Phillips's Testimony By Relying On *Mt. Clemens*

Plaintiffs defend Dr. Phillips's opinions and testimony by arguing that they can rely on the presumption set forth in *Mt. Clemens*, which provides that, where an employer "who has the duty … to keep proper records of wages, hours and other conditions and practices of employment" fails to do so, an employee may carry his burden of proof by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" and the burden "then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 687-88. Plaintiffs, relying on *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008), characterize the *Mt. Clemens* presumption as being rooted in the principle that "for every wrong there is a remedy." RB53-54. If, they say, there is no doubt that class members were injured, the absence of the records necessary to prove damages should not bar recovery.

Plaintiffs overread *Amaral*, which neither undermines nor expands the reasoning animating *Mt. Clemens*. *Amaral* shifted the burden to an employer to prove which of its employees worked on certain city contracts so as to determine who was

properly owed a living wage under a local ordinance. 163 Cal. App. 4th at 1190. Although the employer was under no statutory duty to keep those records, the court found that it was fair to shift the burden because the employees had no way of knowing which contracts they worked on and the employer had every incentive to track this information (so as to limit the persons to whom it owed a living wage) but made a "business decision" not to do so. *Id*. at 1191.

Thus, while *Amaral* might generally support the proposition that a statutory recordkeeping duty is not required in every case, it acknowledges that in some cases, like *Mt. Clemens*, it may be dispositive. *Id.* at 1189 (citing *Mt. Clemens,* 328 U.S. at 687-88) (recognizing that the animating force for burden-shifting in *Mt. Clemens* was the employer's "*statutory duty* to maintain proper records of wages, hours and work conditions") (emphasis added). And indeed, federal cases interpreting *Mt. Clemens*, including *Tyson*, have consistently emphasized that its burden-shifting rationale is rooted in the notion that a defendant should not be permitted to evade liability and damages by failing to comply with its statutory recordkeeping obligations. AOB53-56 (citing cases); *see also Kurgan v. Chiro One Wellness Ctrs. LLC*, 2014 WL 642092, at *9 (N.D. Ill. Feb. 19, 2014) (explaining that a more "relaxed" standard of proof applies only where statutory recordkeeping requirements are violated).

That same rationale should apply here. Unlike the employer in *Amaral*, Walmart's obligations to pay minimum wage do not vary depending on the records it keeps, and it did not make a strategic "business decision" to forgo required records. Further, unlike the class members in *Amaral*, the drivers are the ones performing the work and should have some basis to determine how long and how often they engaged in various activities. A burden-shift is not justified simply because the employer does not have (because it was not required to have) their preferred forms of evidence.

Plaintiffs next contend that burden-shifting is appropriate because Walmart *was* statutorily obligated to keep records of all time worked and failed to do so. RB53-56. Not so: consistent with federal law, Walmart requires all work time to be logged on duty (49 C.F.R. § 395.2), and tracks all hours drivers are on duty driving and on duty not driving (AOB56 (citing 49 C.F.R. § 395.8(a), (b)); ER633-637). Plaintiffs have not meaningfully argued that any state or federal rule requires Walmart to track how long drivers spent on inspections or rest breaks, or how long they were in the truck for layovers—and they have therefore waived the argument. *Beierle*, 77 F.3d at 1201. In any event, none of the statutes they reference impose an obligation to track the time spent on particular activities, which is the relevant issue here. RB54.

Finally, Plaintiffs argue that Walmart's challenges to Dr. Phillips's testimony are unwarranted because his testimony is rooted in Walmart's records. RB55. But

while those records do reflect the days on which drivers worked, they do not contain (because they were not required to contain) the information necessary to establish liability for Plaintiffs claims—i.e., whether and how frequently drivers elected to take rest breaks; how long the rest breaks lasted; when they were taken; how long inspections took; when they were performed; and whether drivers spent some, none, or part of their layover in the sleeper berth. Indeed, Plaintiffs admit that at least two of the assumptions central to their damages model—that inspections took an average of 15 minutes and that class members took two 10-minute rest breaks per day—had no basis in the data whatsoever. RB55. Thus, the mere fact that Dr. Phillips's estimates were partially grounded in data does not save their claims or his testimony.

### C. No Other Representative Evidence Supports The Judgment

Plaintiffs distance themselves somewhat from Dr. Phillips's testimony, arguing that he did not opine on liability, and pointing to other sources of evidence which they say show Walmart "applied its payment plans and policies to all class members" and otherwise establishes liability. RB45-50, 53 & n.14. But this evidence is just as unrepresentative as Dr. Phillips's testimony and cannot support the judgment.

1. The testimony of the 30(b)(6) witnesses, Ann Dyer and Rick Aurit, cannot be used to establish liability on a classwide basis. First, they were not designated as witnesses on the topics for which Plaintiffs cite them here. Ms. Dyer was designated as a witness to "testify generally about [Walmart's] compensation system" (FER190,

FER198), and Mr. Aurit was designated as a witness on "driver performance issues," not compensation or driver practices (FER222). Their testimony about the time it took to do a pre-trip or whether class members took rest breaks accordingly does not constitute classwide evidence.

Second, neither suggested it was reasonable to assume—as Dr. Phillips did—that every class member always spent 15 minutes on pre- and post-trip inspections, as the testimony Plaintiffs point to underscores. SER628-629 (testifying that it "normally takes less than 15 minutes to do a pre-trip, and then a post-trip would probably take another … between 10 and 15 minutes"); SER639-640 (testifying that "it's a minimum of 15 to 20 minutes that it would take a truck driver to conduct an adequate pre-trip inspection"); SER642 (estimating "a minimum of 15 to 20 minutes" for the post-trip inspection). Nor did either witness confirm that the entire class of drivers in fact took two 10-minute rest breaks per day during allegedly unpaid time, or that drivers were required to and did remain in their trucks during layovers, as Dr. Phillips assumed. *See* RB46-48.

2. Walmart's pay manuals similarly do not prove liability on a classwide basis because they do not even speak to the issues essential to establish liability in this case. In particular, they do not dictate how long a driver must spend on a pre- or post-trip inspection, do not speak to the issue of pay for rest breaks or inspections,

and do not dictate that a driver must remain in the truck for the duration of his layover. ER978; *see also* AOB9 (explaining that the "no pay is earned" language that featured prominently at trial was contained in only one manual). The manuals accordingly do not constitute proof that class members were subjected to a common classwide policy of "control" during layovers or non-payment of wages for rest breaks and inspections.

3. Finally, the testimony of the supervisors and drivers regarding the frequency, length, and payment of activities was all over the map. Some drivers took rest breaks at specific but varying intervals (ER587, ER611), while others took them rarely or not at all (ER664, ER606, ER551, ER554-555, ER564, ER501-502, ER449-450, ER458). Some drivers took layovers in hotels and still received the $42 (ER489, ER642-643, ER652-653, ER433, ER462, ER466); some laid over at home (ER694, ER544, ER496-497); and others slept in the truck but also engaged in myriad other activities during their layovers (ER681, ER600, ER487-488, ER431-432). Some drivers spent seven minutes on a pre-trip inspection (ER481), while others spent fifteen (ER590). The mere fact that some of their testimony happened to coincide with Dr. Phillips's estimates does not, as Plaintiffs contend (RB49), establish that the testimony is representative and may be used as classwide proof. *See Tyson*, 136 S. Ct. at 1046-49; *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 313 n.10 (3d Cir. 2016).

In short, none of these sources established that class members were subject to any sort of uniform policy of non-payment or control, nor do they establish that the class members' experiences were capable of being aggregated on a classwide basis, as Dr. Phillips ultimately did in calculating damages. The across-the-board absence of admissible classwide proof of liability or damages in this case leaves the judgment without a basis in evidence and requires that it be vacated.

## CONCLUSION

Walmart respectfully requests that the Court either (1) dismiss the action for want of an actionable case or controversy; (2) reverse the judgment of liability and damages for layovers, rest breaks, and inspections; (3) decertify the class; and (4) reverse any remaining awards of restitution and attorneys' fees.[4]

---

[4] Should any portion of the verdict or damages amounts be vacated, the corresponding portion of the UCL award must be vacated, as it is predicated on those challenged rulings. *See* ER68-69.

## CROSS-APPELLEE'S RESPONSE BRIEF

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs seek reversal of the district court's discretionary decision to reject any claim for liquidated damages under Labor Code Section 1194.2. That provision permits the judge, "as a matter of discretion, [to] refuse to award liquidated damages" where "the employer demonstrates to the satisfaction of the court" that its actions were in "good faith" and that it "had reasonable grounds for believing" that its actions were not a violation of the Labor Code. *Id.* Here, the district court found that Walmart easily met that standard, based on the overwhelming testimony at trial that Walmart tried to (and did) pay its drivers fairly, consistent with the law, and at the very top of the market, and that "other long-haul trucking employers" did not pay for the tasks at issue. ER74, ER76. The court also relied on the fact that the state of the law at issue was, at best, muddled, confusing, and constantly changing during the class period, and Walmart's actions showed its efforts to comply with that law over time. ER76. The district court—having presided over this case for nine years, and then a three-week trial—did not clearly err in finding that Walmart had reasonable grounds for its good faith belief. Its decision not to award liquidated damages based on those findings was not an abuse of discretion and should be affirmed.

Moreover, any award of liquidated damages would violate Walmart's constitutional due process rights because Walmart must be afforded reasonable notice of what is prohibited before it can be penalized, and cannot be penalized for conduct that did not injure the class. This constitutional prohibition applies equally to civil penalties, such as liquidated damages, and is an independent basis to affirm the district court's post-trial ruling.[5]

## RESTATEMENT OF ISSUES PRESENTED

Whether the district court clearly erred in finding that Walmart acted in good faith and with a reasonable basis, and whether the district court abused its discretion in denying Plaintiffs' request for liquidated damages under Labor Code § 1194.2 based on those findings, where such an award would violate Walmart's due process rights?

## RESTATEMENT OF CASE

After the jury returned its verdict finding that Walmart had paid its drivers the minimum wage and was not liable for seven of the eleven tasks at issue (ER914), Plaintiffs sought liquidated damages under California Labor Code section 1194.2 for the remaining four tasks—pre- and post-trip inspections, rest breaks, and layovers.

---

[5] This Court need not address the issue of liquidated damages if it rules in Walmart's favor on the underlying liability.

Both parties agreed that liquidated damages was an issue for the court to decide. ER387-388; FER131.[6]

Walmart argued in opposition that both the jury's verdict finding Walmart's pay manuals largely compliant with California law, as well as the evolving state of the law governing the claims at issue, confirmed the reasonableness of its pay plans. FER1-31. Walmart also submitted an attorney declaration attaching three exhibits: (1) a Los Angeles Superior Court decision in *Gonzalez v. Downtown LA Motors, LP*, No. BC35079; (2) excerpts of the 1989 Division of Labor Standards Enforcement's Operations and Procedures Manual; and (3) the California Department of Industrial Relations' Piece-Rate Legislation (AB 1513) Fact Sheet. FER60. Plaintiffs did not object to, or even reference, this declaration and its publicly available and judicially noticeable exhibits in the district court.

Walmart also argued that it acted in good faith, both presumptively as a result of the unsettled nature of the law, and as independently established by the factual record. FER1-31 (citing over 100 pages of trial testimony from two dozen witnesses). *Id.* Walmart submitted the 4-page declaration of Edward Parrish, Human Resources Manager for Transportation, who described Walmart's pay manuals and

---

[6] Plaintiffs' request for penalties under Labor Code section 1197.1 was denied because section 1197.1 does not provide a private right of action. ER73-74. Plaintiffs have not appealed that ruling, and therefore, their passing and out-of-context reference to a jury instruction relating to those penalties (RB57-58) is irrelevant.

activity-based pay system, which was also addressed extensively at trial. SER653-657. Plaintiffs did not file evidentiary objections to the Parrish declaration, nor did they seek to cross-examine him. Instead, they argued that the court could not consider post-trial evidence in reaching its decision, an assertion abandoned here. SER2-6, SER18-19, SER646-648.

In a 17-page order, the court denied Plaintiffs' request for liquidated damages, finding that "Wal-Mart implemented its pay policy in good faith" and had "reasonable grounds for believing [its] piece-rate compensation scheme" and "layover policies" "complied with California minimum wage law." ER65. The court expressly relied on its analysis of the "uncertain [legal] landscape" as well as trial testimony. ER74. Plaintiffs appeal from that order.

## STANDARD OF REVIEW

The application of legal principles to established facts is reviewed de novo, and the district court's factual findings are reviewed for clear error; "[o]nce the employer has demonstrated its good faith and reasonable belief, the district court's refusal to award liquidated damages is reviewed for abuse of discretion." *Bratt v. Cty. of L.A.*, 912 F.2d 1066, 1071 (9th Cir. 1990).

## ARGUMENT

### I. The District Court Correctly Declined To Award Liquidated Damages

Under California Labor Code section 1194.2(b), the court may, "as a matter of discretion, refuse to award liquidated damages" where "the employer demonstrates to the satisfaction of the court" that it "had reasonable grounds for believing" that its actions were not unlawful and were "in good faith." Walmart easily satisfied that burden here.

#### A. Walmart's Pay Plans Were Objectively Reasonable

The district court correctly relied upon both the jury's verdict and the evolving state of the applicable law in concluding that Walmart's belief that its pay plans complied with California's minimum wage law was reasonable. ER74-76.

*First*, the jury found that Walmart in fact compensated drivers for the majority of tasks about which Plaintiffs had complained. ER914. That the jury found Walmart liable for a minority of tasks at issue does not diminish the objective reasonableness of Walmart's broader pay plan. Just as a defense can be reasonable even if it is mistaken (*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1202 (2008)), so too if the jury largely agrees with it. *See* ER74 (district court finding that "Wal-Mart presented testimony, which the jury accepted, that it compensated drivers for certain tasks through the use of activity codes that encompassed those tasks").

*Second*, Walmart made its pay decisions against a legal landscape unsettled

on at least four key questions: (a) whether Walmart satisfies minimum wage law by paying at least the minimum wage across each hour worked; (b) whether Walmart must separately pay for rest breaks; (c) whether Walmart controls drivers during layovers; and (d) whether California's minimum wage laws are preempted as applied to the claims here. In fact, as described *supra* pp. 22-23, just this year, the Ninth Circuit certified to the California Supreme Court whether averaging applies to certain activity-based pay systems. *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1077 (9th Cir. 2018).

That uncertainty and lack of notice is highly relevant to the question whether Walmart's method of paying drivers was reasonable—even if later found to be unlawful in part. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007) (penalties improper where there are multiple, reasonable interpretations of the law); *Lusardi Constr. Co. v. Aubry*, 1 Cal. 4th 976, 996-97 (1992) (no "civil penalties against a party who acted with good faith and reasonable belief in the legality" of its actions); *Amaral*, 163 Cal. App. 4th at 1202 (defense not unreasonable absent California appellate decision addressing interpretation or constitutionality of ordinance); FER32 (under Section 1194.2, employer had reasonable basis for payment decision where no published California opinion had interpreted law in situation presented); *Ortega v. J.B. Hunt Transp., Inc.*, No. 2:07-cv-08336-RGK-AFM, Dkt. 280 (C.D. Cal. Aug. 7, 2018) (denying liquidated damages because employer had a "good faith,

reasonable belief" in unsuccessful defense).

***Piece-Rate Pay.*** During the class period, courts and regulatory bodies agreed that minimum wage compliance could be assessed simply by dividing (or "averaging") a piece-rate employee's total earnings in a pay period over total hours worked. *See, e.g.*, FER54 ("To determine if employees paid by the piece … are receiving the minimum wage, divide the total earnings in the pay period by the total hours – ALL hours worked – in the pay period."); *Medrano v. D'Arrigo Bros. Co.*, 336 F. Supp. 2d 1053, 1057 (N.D. Cal. 2004) (employees can be paid an hourly rate, piece rate, or other method as long as they are paid minimum wage for all hours worked). This was true even *after* the courts in *Gonzalez* (2012) and *Bluford* (2013) held that averaging may be impermissible for certain piece-rate systems. *See Burnell v. Swift Transp. Co. of Ariz. LLC*, 2016 WL 2621616, at *6 (C.D. Cal. May 4, 2016) (individualized inquiries needed to evaluate "whether a particular driver's pay was reduced below the minimum wage for each hour worked"); *Reinhardt v. Gemini Motor Transp.*, 869 F. Supp. 2d 1158, 1168 (E.D. Cal. 2012) ("compliance with the minimum wage law is determined by analyzing the compensation paid for each hour worked"); *Cole v. CRST, Inc.*, 2012 WL 4479237, at *7-8 (C.D. Cal. Sept. 27, 2012) (relevant question under California law was whether piece-rate "employee generated enough compensation … to exceed the minimum wage for that hour"). Plaintiffs

argue that *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005), provided employers with notice that "averaging" is not permitted under California law (RB66), but there, unlike here, the employer expressly did not pay hourly employees for "non-productive" time. *Armenta*, 135 Cal. App. 4th at 319. The district court here correctly held that "a California appellate court did not hold that *Armenta* applies to an employer's use of the piece-rate system until 2013." ER75.

Still, confusion remained so thick that the California Legislature felt compelled to intervene to clarify and resolve the "unsettled controversies" among the courts. *See* FER59. A mere five days before the end of the class period, the California Legislature passed AB 1513, making clear—for the first time—that:

> For employees compensated on a piece-rate basis … [e]mployees shall be compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation.

Cal. Lab. Code § 226.2(a)(1). AB 1513 also made clear that:

> "[O]ther nonproductive time" means time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a piece-rate basis.

Cal. Lab. Code § 226.2. In other words, Walmart made its pay decisions against a backdrop so uncertain that the Legislature felt the need to inform employers of their obligations and employees of their rights.

***Rest Breaks.*** It is undisputed that drivers were provided all required rest

breaks. But, the law was uncertain regarding separate *payment* for rest breaks, and it was therefore reasonable for Walmart to believe its rest breaks were compliant. It was not until 2013 that the California Court of Appeal addressed the issue of payment for rest breaks in a piece-rate compensation system—and Plaintiffs in turn re-characterized their rest-break claim as a minimum-wage claim. *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864 (2013). Still, *Bluford* did not fully set forth the law, as it failed to consider whether pay for rest breaks was applied through "fixed rates for certain tasks and hourly rates for other tasks and delays," which is how Walmart provided opportunities for paid rest to drivers. *Id.* at 872. That uncertainty lingered and helped lead to the passage of AB 1513.

***Layovers.*** As for layovers, which are required by federal regulations specifically allowing drivers to take layovers in the sleeper berth (49 C.F.R. §§ 395.1, 395.2), the only decision in this Circuit on the issue held that time spent in the sleeper berth is *not* compensable. *See supra* p. 10. Given Walmart's undisputed compliance with the DOT regulations, driver testimony, and that no other trucking company paid for layovers, Walmart's decision not to compensate drivers for time they were not working and were free to do as they pleased was common sense—and certainly not objectively unreasonable. *See Safeco*, 551 U.S. at 70 (no penalties absent "authoritative guidance" that conduct was unlawful).

***Preemption.*** Finally, the split among the courts regarding the preemptive effect of the Federal Aviation Administration Authorization Act ("FAAAA") on California's minimum wage laws (AOB33-35) further demonstrates Walmart's reasonableness. *Compare, e.g., Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 20 (1st Cir. 2014), *with Dilts v. Penske Logistics LLC*, 769 F.3d 637, 649 (9th Cir. 2014). In fact, the majority view in California until 2014 was that the FAAAA preempts California minimum wage claims. *Dilts*, 769 F.3d at 641 n.1. Given that Plaintiffs' claims would be preempted in some courts but not others, Walmart's decision cannot be deemed unreasonable.

### B. Walmart In Fact Acted In Good Faith

The district court also did not err in finding that "the pre-trial proceedings and the evidence introduced at trial 'demonstrate to the satisfaction of the court' that Walmart implemented its pay policy in good faith." ER74.

Courts consider a variety of factors in making the good faith determination. In *Ortega v. J.B. Hunt Transport, Inc.*, the court denied plaintiff's request for liquidated damages under Section 1194.2 because, although the defendant's defense (preemption) was ultimately unsuccessful, it had a "good faith, reasonable belief" in it. *See* No. 2:07-cv-08336-RGK-AFM, Dkt. 280 at 8. In *Gonzalez v. Downtown LA Motors*, the court declined to impose liquidated damages where the employer had a method to ensure minimum wage compliance and the employer's compensation

method was used by others in the industry. FER32. Other courts have identified as relevant an employer's "sincere concern with the well-being of [its] employees" and efforts to treat them fairly as germane to good faith. *See Ulin v. ALAEA-72*, 2011 WL 723617, at *14-15 (N.D. Cal. Feb. 23, 2011). Further, where, as here, the governing law is unsettled, a presumption of good faith is appropriate. *Amaral*, 163 Cal. App. 4th at 1202.

The court below based its finding of Walmart's good faith on the extensive testimony presented at the three-week trial. The court also considered the Parrish declaration, establishing among other things that: "Wal-Mart understood that its comprehensive driver pay process complied with all applicable minimum wage laws … by paying drivers for all time worked and well above the minimum wage in California" (SER654), "Wal-Mart has always intended to pay its drivers more than what they would have earned had they been compensated at the minimum wage for each hour worked" (SER655), and "By compensating drivers well above what they would earn at minimum wage per hour and by never paying a driver an hourly rate less than minimum wage, Wal-Mart intends and has always intended to pay drivers far in excess of the minimum wage" (*id.*). Plaintiffs submitted no evidence rebutting the Parrish declaration, let alone evidence demonstrating that Walmart intentionally failed to comply with minimum wage laws or otherwise acted in bad faith.

The court concluded that Walmart acted in good faith based on the following findings:

1. Walmart drivers earn $85,000 to $90,000 per year on average (and some more than $120,000), making "Wal-Mart's compensation … among the highest in the trucking industry." ER74; *see also* ER548 (made $18K more at Walmart than Swift); FER114 (made $55K more at Walmart than JB Hunt); ER491 (made $40K more at Walmart than previous job); FER116-117 (made $44K more at Walmart than previous job); ER595-596; ER698-699; ER566-567; ER572; FER132-133; FER130; ER612.

2. No evidence was presented suggesting that other trucking companies paid for layovers. ER75-76; *see also* FER156; ER630; ER580-582; ER547-548; ER490.

3. "Wal-Mart's attrition rates are much lower than industry average." ER74; *see also* ER627; ER406-409.

4. Walmart allowed for discretionary pay where its pay system resulted in drivers "unexpectedly f[alling] short of daily averages." ER74; *see also* FER152; FER128-129; ER616-617.

5. The jury found that Walmart's pay practices followed the Labor Code for seven out of the eleven accused activities. ER74; ER914.

6. Walmart modified its pay practice to comply with AB 1513 less than one week after its enactment. ER74.

### C. Plaintiffs' Arguments On Appeal Are Meritless

Plaintiffs raise five overlapping and meritless arguments for why the district court clearly erred in finding objective reasonableness and good faith and abused its discretion in denying liquidated damages. Each fails independently, but regardless, the district court's decision was based on its extensive view of the case; any flaws with one or more factual findings would be insufficient to disturb that conclusion.

1. On appeal, Plaintiffs no longer broadly contend that the court could not consider *any* post-trial evidence (SER3, SER18-19, SER646), but rather argue for the first time that the district court erred in considering one post-trial declaration that they contend constitutes inadmissible hearsay and lacks foundation. That argument is wrong for several reasons.

First, Plaintiffs have waived that argument, because they made no evidentiary objections to that declaration, much less any mention of hearsay or lack of foundation, nor did they request an evidentiary hearing. *Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994); *Drywall Tapers & Pointers of Greater New York v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 954 F.2d 69, 77 (2d Cir. 1992). To the extent they were not waived, they are meritless. Plaintiffs claim Mr. Parrish did not establish "what basis he had for" describing Walmart's policies, but he testified at length at trial (after being called to

testify *by Plaintiffs*) concerning his role as Human Resources Manager for Transportation. FER67-95. Plaintiffs then argue the declaration is "mostly conclusory" (RB61), but fail to identify which portion they find objectionable and why. This is insufficient. Fed. R. Evid. 103(a)(2); *Jacquin v. Stenzil*, 886 F.2d 506, 508 (2d Cir. 1989) ("Specificity in an evidentiary objection is also required…."). Walmart was not required to present evidence during trial in anticipation of Plaintiffs' *future*, post-trial request for penalties.

Second, the district court did rely on *trial* evidence, and not merely the disputed Parrish declaration. ER72-73 ("the Court finds that Wal-Mart did present evidence *at trial* demonstrating that defendant can meet the requirements of section 1194.2(b)") (emphasis added). As the above citations make clear (*supra* pp. 50-51), there was sufficient evidence independent of the Parrish declaration for each of the court's findings. Plaintiffs concede as much in arguing that the Parrish declaration was the "principal factual support for" only two (but not the rest) of those findings (RB63).

Third, as the district court noted, post-trial evidence is anticipated by the statute, which requires a showing "to the satisfaction of the court" and requires "consideration of factors, such as the evolving state of the law, that are not appropriate for presentation to the jury." ER72; *see also Moore v. Deere Valley Trucking, Inc.*, 2018 WL 3848812, at *2 (D. Id. Aug. 13, 2018) (reviewing post-trial affidavits).

2. Plaintiffs also argue the Parrish declaration is the "only direct evidence of Walmart's subjective beliefs." RB63 (emphasis omitted). For the reasons noted above, Plaintiffs waived any objection to the properly considered declaration. The argument separately fails because there was substantial evidence at trial from which the court could infer Walmart's subjective good faith (*Amster v. Mulberg*, 2017 WL 1374699, at *5 (Cal. Ct. App. Apr. 17, 2017)), including the verdict establishing that Walmart's pay manuals largely complied with California law. *See supra* pp. 50-51.

3. Plaintiffs argue the "factual underpinnings for the court's order" are insufficient "to establish either good faith or that Wal-Mart in fact had a reasonable belief in the lawfulness of its conduct." RB64. But Plaintiffs' characterizations of the court's findings are factually and legally incorrect. Plaintiffs contend "no evidence showed that Wal-Mart ever provided" discretionary pay in practice (RB65), but there was ample testimony on that point. *See* ER616-617 (testifying pay was increased by "an additional $92.81 … to bring [him] up to [his] average day pay"); FER152-155.

Plaintiffs contend that Walmart's revision to its pay practices less than one week after AB 1513 was enacted does not support an inference of good faith (RB65), but that, too, is wrong. *Kennedy v. Arm Strong Towing Servs., Inc.*, 2017 WL 9486773, at *2 (Cal. Super. Ct. Dec. 7, 2017) (denying request for liquidated damages in part because "[d]efendant consistently adjusted its fixed shift pay to take into

account changes in the minimum wage, and legitimately assumed it was complying with that law"). The court properly accounted for Walmart's very prompt action once the Legislature resolved what it deemed ambiguities in the law.

Finally, Plaintiffs argue Walmart's high rate of pay and employee satisfaction "say[] nothing" about whether Walmart acted in good faith (RB65-66), but that is wrong as a matter of fact (SER654 ("Wal-Mart is committed to being highly competitive in the trucking industry with its driver pay and consistent with that commitment, to complying with state, federal, and local minimum wage laws.")) and law (*Oman v. Delta Air Lines, Inc.*, 153 F. Supp. 3d 1094, 1095 (N.D. Cal. 2015) *appeal pending* (fact that flight attendants "always received at least the California minimum wage rate for each hour" suggested no minimum wage violations)).

4. Plaintiffs also argue that Walmart was put on notice of minimum wage violations in 2013, warranting partial liquidated damages for two years (RB66), but this argument conflicts with the governing law, including the express views of the California Legislature in 2015 (*supra* p. 47), which the district court found persuasive here.

5. Finally, Plaintiffs argue the court cited no "case law" in support of its decision to deny liquidated damages for layovers. RB67. This argument is irrelevant (Cal. Lab. Code § 1194.2 ("the court … may, as a matter of discretion, refuse to award liquidated damages")) and wrong—the court cited the only case in this Circuit

on layovers (ER68-69), among other cases (ER73-75), and regulations prohibiting drivers from working or being on call during layovers (ER75-76), with which Walmart indisputably complied.

Thus, as a matter of law and fact, Plaintiffs were not entitled to liquidated damages. The district court correctly denied Plaintiffs' request.

## II. Imposing Penalties Here Would Violate Due Process

A contrary finding would, as Walmart argued below (FER15-16), contravene principles of fair notice and due process. U.S. Const. amend. V; Cal. Const. art. I, § 7.

Punitive measures, including civil penalties, may be imposed only with fair notice of the "conduct that will subject [the defendant] to punishment," consistent with "elementary notions of fairness" and due process. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574, 574 n.22 (1996) (due process protections "implicated by civil penalties"); *Missouri Pac. Ry. Co. v. Tucker*, 230 U.S. 340, 350-51 (1913) (liquidated damages may pose due process concerns). Fair notice requires that a defendant be able to determine—in advance, and based on objectively identifiable standards—"what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). These principles are implicated no matter what "label" Plaintiffs "fasten" (RB60) to their request. *Giaccio v. State of Pa.*, 382 U.S. 399, 402 (1966).

Here, though, there is no question that the penalties Plaintiffs seek are punitive in nature, and worse, disconnected from actual harm to the class. *See Martinez v. Combs*, 49 Cal. 4th 35, 48 n.8 (2010) ("The 'liquidated damages' allowed in section 1194.2 *are in effect a penalty* equal to the amount of unpaid minimum wages.") (emphasis added); *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *12 (N.D. Cal. Apr. 29, 2011) ("provision for liquidated damages functions not as compensation for the time-value of money, but as an additional deterrent"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2013) (penalties must have "nexus" to harm suffered by plaintiffs).

***No notice.*** Plaintiffs sought penalties for conduct that was arguably legal and, at best, not clearly prohibited during the class period and which the jury found to be unlawful only in part. California minimum wage law as it relates to the claims here was at all times muddled, uncertain, and unpredictable, as the district court recognized. ER75; *supra* pp. 46-48.

Similarly, given the circuit conflicts over preemption (AOB33-35; *supra* p. 49), that a claim could be subject to punitive measures here is incompatible with the concept of notice that is fundamental to due process. *Giaccio*, 382 U.S. at 402-03; *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 892 (2000). And given Walmart's 2015 change to its pay plan following passage of

AB 1513 (ER74), additional penalties would not result in deterrence, but would instead constitute excessive punishment in violation of fundamental due process principles. *State Farm*, 538 U.S. at 419; *Gore*, 517 U.S. at 575; *see* ER74.

***No injury.*** In addition, constitutional due process and fairness considerations would preclude an award of penalties based on conduct toward those who did not suffer actual harm. *See supra* pp. 28-33; *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts, C.J., concurring); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549-50 (2016). It is undisputed that not all class members were injured by Walmart's conduct; their claims cannot be the predicate for compensatory damages (*supra* pp. 28-33), much less penalties.[7]

## CONCLUSION

For these reasons, the district court's decision to not award liquidated damages should be affirmed.

[7] Although the district court did not address due process, it is an independent basis to affirm. *Salmeron v. United States*, 724 F.2d 1357, 1364 (9th Cir. 1983).

Dated: August 30, 2018 Respectfully submitted,

s/ *Theodore J. Boutrous, Jr.*

RACHEL S. BRASS
JOSEPH A. GORMAN
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921

JAMES H. HANSON
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, PC
10 West Market Street, Suite 1500
Indianapolis, IN 46204-2968

THEODORE J. BOUTROUS, JR.
LAUREN M. BLAS
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
tboutrous@gibsondunn.com

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Defendant, Appellant, and Cross-Appellee Walmart Stores, Inc. states that it is not aware of any related cases pending before this Court.

Dated: August 30, 2018

s/ Theodore J. Boutrous, Jr.
Theodore J. Boutrous, Jr.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the foregoing Appellant's Opening Brief is proportionately spaced, has a typeface of 14 points, and contains 13,912 words, excluding the portions excepted by Fed. R. App. P. 32(a)(7)(B)(iii), according to the word count feature of Microsoft Word used to generate this brief.

Dated: August 30, 2018

s/ Theodore J. Boutrous, Jr.
Theodore J. Boutrous, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2018, I filed the foregoing Appellant's Response and Reply Brief with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

s/ Theodore J. Boutrous, Jr.
Theodore J. Boutrous, Jr.