Nos. 17-15983 & 17-16142

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CHARLES RIDGEWAY, *et al.*,

*Plaintiffs, Appellees, and Cross-Appellants;*

v.

WAL-MART STORES, INC.,

*Defendant, Appellant, and Cross-Appellee.*

On appeal from the United States District Court for the Northern District of California (Hon. Susan Illston), Case No. 08-05221-SI

# APPELLEES' REPLY BRIEF


Lawrence M. Artenian
Laura E. Brown
WAGNER JONES KOPFMAN & ARTENIAN LLP
1111 E. Herndon Ave., Suite 317
Fresno, CA 93720
(559) 449-1800
lartenian@wagnerjones.com

Jacob M. Weisberg
LAW OFFICES OF JACOB M. WEISBERG
844 N. Van Ness Ave.
Fresno, CA 93728
(559) 441-0201
jmw@jweisberglaw.com

Stanley Saltzman
MARLIN & SALTZMAN LLP
29229 Canwood Street, Suite 208
Agoura Hills, CA 91301
(818) 991-8080
ssaltzman@marlinsaltzman.com

Michael Rubin
Matthew J. Murray
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
mrubin@altber.com

*Attorneys for Plaintiffs/Appellees/Cross-Appellants Charles Ridgeway, et al.*

## TABLE OF CONTENTS

INTRODUCTION .......................................................................................... 1

ARGUMENT ............................................................................................... 3

A. The California Legislature Deliberately Imposed a Heavy Burden of Proof on Employers Seeking to Avoid Paying Liquidated Damages for Their Minimum Wage Violations.................................. 3

B. The District Court's Reliance on Inadmissible Post-Trial Hearsay Requires Reversal........................................................................ 8

C. The District Court's Findings Are Legally Inadequate to Support Its Conclusion That Wal-Mart Had an Actual Good Faith Belief That Its Particular Failures to Pay the Minimum Wage Were Lawful....... 10

D. Even If Wal-Mart Had Established a Good Faith Belief That Its Failures to Pay Minimum Wages Were Lawful, Such a Belief Would Not Have Been Objectively Reasonable ............................... 16

E. Granting Liquidated Damages under §1194.2 Would Not Violate Due Process ........................................................................... 26

CONCLUSION ........................................................................................... 29

## TABLE OF AUTHORITIES

### FEDERAL CASES


*Alvarez v. IBP, Inc.*,
339 F.3d 894 (9th Cir. 2003) .......... 6, 8

*Bratt v. Cty. of L.A.*,
912 F.2d 1066 (9th Cir. 1990) .......... 6

*Brock v. Wilamowsky*,
833 F.2d 11 (2d Cir. 1987) .......... 7

*Burnell v. Swift Transp. Co. of Arizona LLC*,
2016 WL 2621616 (C.D. Cal. May 4, 2016) .......... 22

*California Trucking Assoc. v. Su*,
903 F.3d 953 (9th Cir. 2018) .......... 25, 27

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998) .......... 25

*Cardenas v. McLane FoodServices, Inc.*,
796 F. Supp. 2d 1246 (C.D. Cal. 2011) .......... 20

*Chao v. A-One Med. Servs., Inc.*,
346 F.3d 908 (9th Cir. 2003) .......... 6, 27

*Cole v. CRST, Inc.*,
2012 WL 4479237 (C.D. Cal. Sept. 27, 2012) .......... 20

*Dilts v. Penske Logistics, LLC*,
769 F.3d 637 (9th Cir. 2014) .......... 25, 26

*Drywall Tapers & Pointers of Greater N.Y., Local 1974 of I.B.P.A.T., AFL-CIO v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*,
954 F.2d 69 (2d Cir. 1992) .......... 9

*Engquist v. Oregon Dep't of Agric.*,
478 F.3d 985 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008) .......... 9

*Flores v. City of San Gabriel*,
824 F.3d 890 (9th Cir. 2016) .......... 7, 12

*Gasaway v. Northwestern Mutual Life Insur. Co.*,
26 F.3d 957 (9th Cir. 1994) .......... 9

*Local 246 Utilities Workers Union of Am. v. S. Cal. Edison Co.*,
83 F.3d 292 (9th Cir. 1996) .......... 7

*Mahone v. Lehman*,
347 F.3d 1170 (9th Cir. 2003) .......................................................................10

*Marshall v. Brunner*,
668 F.2d 748 (3d Cir. 1982) ...........................................................................7

*Martin v. Cooper Elec. Supply Co.*,
940 F.2d 896 (3d Cir. 1991) ........................................................... 7, 8, 15, 18

*Massachusetts Delivery Ass'n v. Coakley*,
769 F.3d 11 (1st Cir. 2014) ...........................................................................25

*Medrano v. D'Arrigo Bros. Co. of California*,
336 F. Supp. 2d 1053 (N.D. Cal. 2004)...........................................................20

*Oman v. Delta Air Lines Inc.*,
153 F. Supp. 3d 1094 (N.D. Cal. 2015)..................................................... 14, 22

*Oman v. Delta Air Lines, Inc.*,
889 F.3d 1075 (9th Cir. 2018) .......................................................................22

*Ontiveros v. Zamora*,
2009 WL 425962 (E.D. Cal. Feb. 20, 2009) ....................................................20

*Overnight Motor Transp. Co. v. Missel*,
316 U.S. 572 (1942) ........................................................................... 6, 26, 27

*Reinhardt v. Gemini Motor Transp.*,
869 F. Supp. 2d 1158 (E.D. Cal. 2012) ...........................................................20

*Ridgeway v. Wal-Mart Stores Inc.*,
107 F. Supp. 3d 1044 (N.D. Cal. 2015)...........................................................14

*Rodriguez v. Taco Bell Corp.*,
896 F.3d 952 (9th Cir. 2018) .........................................................................28

**STATE CASES**

*Amaral v. Cintas Corp. No. 2*,
163 Cal. App. 4th 1157 (2008) .......................................................................15

*Armenta v. Osmose, Inc.*,
135 Cal. App. 4th 314 (2005) .................................................................. 20, 23

*Bluford v. Safeway Stores, Inc.*,
216 Cal. App. 4th 864 (2013) .................................................................. 20, 21

*Brinker Restaurant Corp. v. Superior Court*,
53 Cal. 4th 1004 (2012) ...................................................................................5

*Estate of Griswold*,
25 Cal. 4th 904 (2001) .......... 4

*Gonzalez v. Downtown LA Motors, LP*,
215 Cal. App. 4th 36 (2013) .......... 20

*Martinez v. Combs*,
49 Cal. 4th 35 (2010) .......... 6

*Mendiola v. CPS Sec. Sols., Inc.*,
60 Cal. 4th 833 (2015) .......... 19

*Morillion v. Royal Packing Co.*,
22 Cal. 4th 575 (2000) .......... 17, 19, 27

*Murphy v. Kenneth Cole Products, Inc.*,
40 Cal. 4th 1094 (2007) .......... 6

**Federal Statutes**

29 U.S.C. §206(b) .......... 4

29 U.S.C. §260 .......... 5, 7

May 14, 1947, c. 52, §11, 61 Stat. 89 .......... 3

**State Statutes**

Cal. Lab. Code §203 .......... 15

Cal. Lab. Code §226.2 .......... 23, 24

Cal. Lab. Code §1194.2 .......... *passim*

Cal. Lab. Code §1197.1 .......... 1

Cal. Stats.1991, c. 825 (S.B. 955), §3 .......... 3

**Federal Regulations**

29 C.F.R. §790.22 .......... 7

49 C.F.R. §395.2 .......... 19

**State Regulations**

IWC Wage Order No. 9-2001, §2(H) .......... 19

**Other Authorities**

Assembly Committee on Labor and Employment,
Third Reading Analysis of SB 955 (Sept. 10, 1991) .......... 4

Assembly Floor Analysis of AB 1513 (Sept. 11, 2015) ..........................................23

Office of Senate Floor Analyses,
Unfinished Business Analysis of SB 955 (Sept. 12, 1991) ....................................4

## INTRODUCTION

The district court's refusal to award liquidated damages must be reversed. Under California Labor Code §1194.2(a), an employer that fails to pay the minimum wage is liable for those unpaid wages plus liquidated damages in "an amount equal to the wages unlawfully unpaid." The only way an employer can avoid liability for liquidated damages is to establish, as an affirmative defense, that (1) at the time of each "act or omission" causing a particular minimum-wage violation, it had a subjective good faith belief that its conduct did not "violat[e] any provision of the Labor Code relating to minimum wage," *and* (2) its mistaken belief was objectively reasonable. Lab. Code §1194.2(b). The trial court must impose liquidated damages unless the employer satisfies both prongs of this affirmative defense. *Id.*; *see* Appellees' Principal and Response Brief, Dkt. 23 ("Cross-Appeal Br.") 57, 59-60. Wal-Mart agrees that these are the governing standards. *See* Cross-Appellee's Response Brief, Dkt. 32 ("Wal-Mart Response Br.") 44.

In this case, the jury expressly found that Wal-Mart's minimum-wage violations were "intentional" and therefore *not* in "good faith." *See* Cross-Appeal Br. 57-58 & n.16 (quoting special verdict and jury instructions regarding Labor Code §1197.1); ER102, 917. Nevertheless, the district court refused to award *any*

liquidated damages. ER72-76. This was reversible error. *See* Cross-Appeal Br. 56-68.

Wal-Mart failed to pay the required minimum wage to its California drivers with respect to four categories of compensable work time: (1) layovers; (2) rest breaks; (3) pre-trip inspections; and (4) post-trip inspections. ER48-60, 914-36. Thus, to overcome its obligation to pay liquidated damages, Wal-Mart had the burden of proving, with respect to each separate category, that at the time it failed to pay the minimum wage Wal-Mart had an actual good faith belief that California law did not require it to pay its drivers *any* wages for that category of work time, *and* that its belief was objectively reasonable. Wal-Mart failed to offer competent evidence establishing either its subjective good faith belief or the objective reasonableness of any such belief, with respect to any of the four categories of its minimum-wage violations.

Wal-Mart concedes that the district court based its denial of liquidated damages in material part on the post-trial, hearsay declaration of Wal-Mart's human resources director, Ed Parrish, whose declaration plaintiffs had no opportunity to challenge through cross-examination (and which plaintiffs expressly argued could not be relied upon for precisely that reason). *See* Cross-Appeal Br. 58. The Parrish declaration was the *only* direct evidence of Wal-Mart's claimed subjective good faith; and as plaintiffs have shown, the district court's erroneous

reliance on that declaration was prejudicial because it "more probably than not tainted" the court's decision to deny liquidated damages. *Id.* at 62-68.

While the erroneous admission of the Parrish declaration provides sufficient grounds by itself for reversal, the district court compounded its error by improperly basing its findings of subjective and objective good faith on legally inadequate considerations, any one of which would be sufficient to require reversal. *See* Cross-Appeal Br. 62-68. Wal-Mart tries to justify the court's findings by portraying itself as a beneficent employer that generously compensates its drivers, Wal-Mart Response Br. 44, 49-51, but that is not the standard.

## ARGUMENT

### A. The California Legislature Deliberately Imposed a Heavy Burden of Proof on Employers Seeking to Avoid Paying Liquidated Damages for Their Minimum Wage Violations

The California Legislature enacted the liquidated damages statute, Labor Code §1194.2, in 1991, using the same language and statutory structure that Congress had drafted almost 50 years earlier in requiring employers to pay liquidated damages for Fair Labor Standards Act (FLSA) violations unless they could affirmatively prove subjective and objective good faith. *See* Cal. Stats.1991, c. 825 (S.B. 955), §3; May 14, 1947, c. 52, §11, 61 Stat. 89. By choosing to base §1194.2's language and structure on the FLSA's well-established liquidated damages provision, the California Legislature surely intended §1194.2 to be *at*

*least* as protective of workers as the federal law. *See Estate of Griswold*, 25 Cal.4th 904, 915-16 (2001) ("Where, as here, legislation has been judicially construed and a subsequent statute on the same or an analogous subject uses identical or substantially similar language, we may presume that the Legislature intended the same construction, unless a contrary intent clearly appears.").

Were there any doubt, the legislative history of §1194.2 repeatedly emphasizes the Legislature's intent to model that new statute on the FLSA's liquidated damages provision. *See* Assembly Committee on Labor and Employment, Third Reading Analysis of SB 955 at 2 (Sept. 10, 1991) ("Proponents point out that the provisions pertaining to employers who act in good faith conform to language in the Federal Fair Labor Standards Act."); Office of Senate Floor Analyses, Unfinished Business Analysis of SB 955 at 2 (Sept. 12, 1991) (same).[1]

Wal-Mart has not challenged plaintiffs' showing that the Legislature intended §1194.2 to be at least as protective as its federal counterpart, 29 U.S.C. §§206(b), 260. *See* Cross-Appeal Br. 60. Both statutes provide that in a suit for unpaid minimum wages, the prevailing employee is entitled to liquidated damages in an amount equal to his or her unpaid wages, subject to a limited subjective and

[1] These legislative history materials are attached to plaintiffs' accompanying Request for Judicial Notice as Exhibit A.

objective good faith exception. The language of that exception in §1194.2(b) tracks the FLSA exception in 29 U.S.C. §260 almost word for word: "[I]f the employer demonstrates" (or "shows," in the FLSA) "to the satisfaction of the court … that the act or omission giving rise to [the] action was in good faith and that [the employer] had reasonable grounds for believing that [the] act or omission was not a violation of" the Labor Code (or the FLSA), "the court … may, [as a matter of] discretion, [refuse to award] liquidated damages or award any amount of liquidated damages" not exceeding the full amount of unpaid minimum wages. Lab. Code §1194.2(b) (brackets indicate differences between Labor Code §1194.2 and 29 U.S.C. §260, all of which are stylistic).[2]

Given the well-established principle that the worker-protection provisions of the California Labor Code must be construed as being as protective, if not more protective, than their counterpart provisions in the FLSA, cases implementing the FLSA's liquidated-damages provision should establish the baseline level of protection for California employees under Labor Code §1194.2.[3] Wal-Mart does

[2] The only substantive difference between the two statutes is that under the FLSA, liquidated damages are available for minimum wage *and* overtime violations, while under California law liquidated damages are only available for minimum wage violations. That difference is irrelevant to this minimum wage case.

[3] The California Supreme Court has consistently recognized that the worker-protective provisions of the California Labor Code must "be liberally construed with an eye to promoting such protection," *Brinker Restaurant Corp. v. Superior*

not disagree, and its brief cites federal authority construing the FLSA. *See, e.g.*, Wal-Mart Response Br. 43 (citing *Bratt v. Cty. of L.A.*, 912 F.2d 1066, 1071 (9th Cir. 1990)).

Under the FLSA, "liquidated damages represent compensation, and not a penalty. Double damages are the norm, single damages the exception." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003) (quotation marks omitted); *accord Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003); *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942), *superseded by statute on other grounds*. Given the California Legislature's choice to reproduce the FLSA's language almost word-for-word, the same principles apply to liquidated damages under §1194.2.[4]

---

*Court*, 53 Cal.4th 1004, 1026-27 (2012), and has explained that "[c]ourts must" construe "the state's wage laws …, as appropriate, to provide greater protection to workers than federal law affords." *Martinez v. Combs*, 49 Cal.4th 35, 68 (2010).

[4] Wal-Mart cites dicta in a footnote in *Martinez*, 49 Cal.4th at 48 n.8, stating without discussion or citation that "[t]he 'liquidated damages' allowed in section 1194.2 are in effect a penalty equal to the amount of unpaid minimum wages." The issues before the Court in *Martinez* had nothing to do with the characterization of liquidated damages payments under §1194.2. Moreover, the California Supreme Court has also expressly acknowledged that courts have long found "liquidated damages provision[s] to be compensatory," and has specifically cited the discussion of the FLSA's liquidated damages provision in *Overnight Motor Transp. Co.*, 316 U.S. at 583-84, for the proposition that "[w]here damages are obscure and difficult to prove, the Legislature may select a set amount of compensation without converting that remedy into a penalty." *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 1112 (2007).

A "defendant employer's burden of proof [to avoid liquidated damages] is 'a difficult one to meet.'" *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991) (quoting *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987)). That is why federal courts have consistently held that "[t]o avail itself of th[e] defense [to liquidated damages under 29 U.S.C. §260], the employer must 'establish that it had an honest intention to ascertain and follow the dictates of the Act and that it had reasonable grounds for believing that its conduct complied with the Act.'" *Flores v. City of San Gabriel*, 824 F.3d 890, 905 (9th Cir. 2016) (quoting *Local 246 Utilities Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 298 (9th Cir. 1996)) (brackets and additional internal quotation marks omitted); *accord*, *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982). "If an employer fails to satisfy its burden under §260, an award of liquidated damages is mandatory." *Flores*, 824 F.3d at 905; *see Martin*, 940 F.2d at 908 ("If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages."); *accord* 29 C.F.R. §790.22(b). "An employer who 'failed to take the steps necessary to ensure its practices complied with FLSA' and who 'offers no evidence to show that it *actively endeavored* to ensure such compliance' has not satisfied §260's heavy burden." *Flores*, 824 F.3d at 905 (quoting *Alvarez,*

339 F.3d at 910) (emphasis in original; some internal quotation marks and brackets omitted).

Those same standards (or more worker-protective standards) apply here. Because Wal-Mart has not met its heavy burden of presenting "plain and substantial evidence to satisfy the good faith and reasonableness requirements," *Martin*, 940 F.2d at 908, the district court's order denying liquidated damages must be reversed.

### B. The District Court's Reliance on Inadmissible Post-Trial Hearsay Requires Reversal

As an initial matter, reversal is required because, as Wal-Mart concedes, the district court relied on the post-trial Parrish declaration to "establish" Wal-Mart's subjective good faith—accepting Parrish's word (despite Parrish having no personal knowledge of the facts surrounding Wal-Mart's formulation of its pay policy) that "Wal-Mart understood" that its pay process complied with all applicable minimum wage laws and that "Wal-Mart has always intended" to pay drivers in excess of the minimum wage. Wal-Mart Response Br. 50. Parrish's foundationless declaration was the *only* evidence directly supporting the district court's finding of subjective good faith—the first of the two required elements of an employer's affirmative defense to liquidated damages. *See* Lab. Code §1194.2(b).

Wal-Mart asserts that plaintiffs waived any challenge to the court's consideration of Parrish's post-trial declaration by failing to object. Wal-Mart Response Br. 52. But as plaintiffs pointed out in their Cross-Appeal Brief at 60-62, plaintiffs fully preserved their objections by arguing below that "[t]he Court cannot consider … the post-trial Declaration of Mr. Parrish, because it's not subject to cross-examination, and it wasn't subject to cross-examination. … Otherwise, it's not fair, and it violates the Class' right to cross-examine that evidence, which is the most fundamental of all trial rights." SER18-19.[5]

Wal-Mart next argues that any error in the district court's reliance upon the Parrish declaration was harmless because there was "sufficient evidence independent of the Parrish declaration" of Wal-Mart's subjective good faith. Wal-Mart Response Br. 53-54. In determining the prejudicial effect of evidentiary error, though, the question is not whether other evidence in the record would have been sufficient by itself to support the ruling, but whether the court's consideration

---

[5] Wal-Mart's cited cases are factually inapposite. *See Drywall Tapers & Pointers of Greater N.Y., Local 1974 of I.B.P.A.T., AFL-CIO v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 954 F.2d 69, 77 (2d Cir. 1992) (affirming permanent injunction where facts presented in multiple proceedings "amply justified" injunction, and defendant "did not request an additional evidentiary hearing" and was "content in the district court to rest on affidavits"); *Gasaway v. Northwestern Mut. Life Insur. Co.*, 26 F.3d 957, 960 (9th Cir. 1994) (where plaintiff made no argument in district court that affidavit on which defendant relied contained improper "opinion" testimony, plaintiff could not raise that new argument on appeal).

of the improper evidence "more probably than not tainted the [ruling]." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1009 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008); *see, e.g.*, *Mahone v. Lehman*, 347 F.3d 1170, 1174 (9th Cir. 2003) (erroneous admission of hearsay evidence undermining defendant's credibility required reversal despite argument that there "was already sufficient [other] evidence" that defendant was lying). The Parrish declaration was the only direct evidence of Wal-Mart's subjective intent. Wal-Mart does not contend otherwise. Wal-Mart Response Br. 62-63. The district court's reliance on that declaration therefore requires reversal.

### C. The District Court's Findings Are Legally Inadequate to Support Its Conclusion That Wal-Mart Had an Actual Good Faith Belief That Its Particular Failures to Pay the Minimum Wage Were Lawful

Even if the district court's improper reliance on the Parrish declaration did not require reversal of its subjective-good-faith finding, the court's denial of liquidated damages must be reversed for the independent reason that the facts the district court cited to conclude that Wal-Mart acted in subjective good faith are not legally adequate to support that conclusion. *See* Cross-Appeal Br. 62-66.

Wal-Mart acknowledges that the district court rested its conclusion that Wal-Mart acted in "good faith" on five factors: (1) "Wal-Mart's pay policy included discretionary pay for drivers who unexpectedly fell short of daily averages"; (2) Wal-Mart "modified" its pay policies following the enactment of Assembly Bill

1513 in 2015; (3) Wal-Mart's activity codes "compensated drivers for certain tasks" *other* than rest breaks, inspections, and layovers; (4) "Wal-Mart's compensation is among the highest in the trucking industry"; and (5) "Wal-Mart's attrition rates are much lower than industry average." ER74; *see* Wal-Mart Response Br. 51 (adding an unstated sixth factor, that "[n]o evidence was presented suggesting that other trucking companies paid for layovers"). If *any* of those factors were an impermissible basis for finding that Wal-Mart acted with actual good faith, the district court's ruling must be reversed, because the court's ruling rested on each of those factors in combination.

The critical inquiry under §1194.2(b) is not whether Wal-Mart had a good-faith belief that its pay plan *as a whole* provided reasonable compensation to the drivers whom it deprived of legally mandated minimum wages. Instead, the statutory text makes clear that the relevant inquiry is whether (1) the particular "act or omission giving rise to [the minimum wage violation] was in good faith" and (2) "the employer had reasonable grounds for believing that the act or omission was not a violation of any provision of the Labor Code relating to minimum wage." Lab. Code §1194.2(b). In other words, Wal-Mart had to show that it actually believed, and that it had an objectively reasonable basis for believing, that California law entitled it not to pay at least the minimum wage for (1) layovers when it controlled its drivers, (2) rest breaks for which it had no compensation

code, and (3) mandatory pre-trip and post-trip inspections for which it also had no compensation code.

Wal-Mart, like the district court, mostly skirts the required act-by-act inquiry and focuses on the purported overall reasonableness of Wal-Mart's pay scheme. But just as an employer that pays wages at a rate below the minimum wage cannot avoid liquidated damages by pointing to evidence that it gave generous vacation benefits or complied with mandatory overtime requirements, neither can Wal-Mart escape liquidated-damages liability for its "acts and omissions" causing specific minimum wage violations by relying on evidence that it was a legally compliant employer in other respects.

In *Flores*, 824 F.3d 890, for example, this Court made clear that the required actual-subjective-good-faith inquiry under the FLSA (which uses the same "act or omission" language as §1194.2) must focus on the particular act that violated the law (failure to include certain payments in calculating the regular rate of pay), not some other aspect of the employer's pay scheme. This Court rejected the employer's argument "that its good faith is … demonstrated by its inclusion of other types of payments in the regular rate of pay and its payment of overtime more generously than the FLSA requires." *Id.* at 905-06. As the Court explained, "[e]vidence that the [employer] complied with its *other obligations* under the Act or that it agreed to pay overtime more generously than required by law do not

demonstrate" that the employer had a good faith belief that "the *payments at issue here* complied with the FLSA." *Id.* at 906 (emphases added). The same analysis applies under Labor Code §1194.2. *See supra* at 3-8.

Four of the five factors relied upon by the district court to support its subjective-good-faith finding address Wal-Mart's pay scheme application to *other* tasks, not Wal-Mart's unlawful failure to pay the minimum wage for layover time, rest breaks, or pre- and post-trip inspections—the only "acts or omissions" that are relevant. Evidence that Wal-Mart's total pay may be competitive, that it may have low overall driver attrition rates (for whatever reason), that it sometimes provides discretionary pay, and that it pays minimum wages for certain *other* activities (Wal-Mart Response Br. 51), says nothing about whether Wal-Mart had a good faith belief that it was complying with California law *when it failed to pay for layovers, rest breaks, and pre- and post-trip inspections*.

Wal-Mart points out that the jury found no minimum wage violations for seven of the 11 driver activities at issue at trial. Wal-Mart Response Br. 44, 51. But the jury found that Wal-Mart *did* violate California's minimum wage laws for the four activities at issue here, and as to those activities the jury expressly found that Wal-Mart "intentionally" failed to pay minimum wage, ER917, and thus that those violations were *not* in "good faith." ER102.

Wal-Mart relies on the hearsay statement in Ed Parrish's improperly considered declaration that "Wal-Mart is committed to being highly competitive … with its driver pay" and "consistent with that commitment, to complying with state … minimum wage laws." Wal-Mart Response Br. 55 (quoting SER654). But if employers could avoid liquidated damages simply by submitting a post-trial declaration (even an admissible one) asserting that they are "committed … to complying with" the law, §1194.2 would become a nullity.[6]

The only factor of the five cited by the district court in its good faith analysis that even arguably relates to the minimum wage violations at issue is that Wal-Mart "modified its piece-rate pay policies" after the enactment of Assembly Bill 1513 in 2015. ER74; Wal-Mart Response Br. 51. That finding does not come close to satisfying Wal-Mart's burden. Not only is there no evidence of *how* Wal-Mart modified its pay structure, but Wal-Mart has never contended that those modifications addressed its unlawful failure to pay drivers for their layover time. Moreover, modifications to a pay plan made *after* the October 10, 2015 enactment of A.B. 1513 (effective January 1, 2016), were necessarily made after the 11-year

[6] Wal-Mart also cites *Oman v. Delta Air Lines Inc.*, 153 F.Supp.3d 1094, 1095 (N.D. Cal. 2015), *appeal pending* 9th Cir. Case No. 17-15124, but that case did not involve a piece-rate pay scheme like Wal-Mart's in which employees receive no pay for certain work time, and did not involve any question of "good faith" under §1194.2. Moreover, the district court in *Oman* expressly distinguished the facts in that case from those at issue here. *Id.* at 1106 (distinguishing *Ridgeway v. Wal-Mart Stores Inc.*, 107 F.Supp.3d 1044 (N.D. Cal. 2015)).

class period had ended (on October 15, 2015). Those modifications therefore cannot constitute evidence that Wal-Mart had an actual good faith belief that it was in compliance with California law when it denied plaintiffs their lawfully required minimum wage payments for layovers, rest breaks, and pre- and post-trip inspections during the class period. *See, e.g., Martin*, 940 F.2d at 909-10 (fact that defendant employer "changed [its] pay structure" after Department of Labor initiated investigation was "irrelevant to good faith analysis," because FLSA's liquidated damages provision "requires *retrospective* analysis of an employer's conduct with respect to violations of the FLSA, not appraisal of an employer's post-violation conduct") (emphasis in original). Wal-Mart has no response.[7]

Wal-Mart fares no better in asserting that it established its actual good faith belief that layover time need not be compensated because "[n]o evidence was

---

[7] Although Wal-Mart elsewhere cites *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008), that case did not discuss §1194.2 or the analogous liquidated damages provision in the FLSA, and thus is not relevant. *Amaral* analyzed the particular standard that applies to a claim that an employer "willfully" failed to pay wages due under Labor Code §203, and the regulations that expressly allow an employer's later presentation of a non-frivolous defense in litigation to preclude a finding of "willfulness" for purposes of §203. *See* 163 Cal.App.4th at 1201-03. Those standards have no bearing on §1194.2, which has no willfulness requirement and which places the burden of proof on the employer, not the employee. *See id.* at 1203 n.21 (explaining that "'Wil[l]ful' is a term of art carrying with it certain requisites as to the amount and type of proof which will suffice to find a violation of the particular statute in reference. The term has different connotations and implications depending on the nature, purpose and intent of the statute.") (ellipsis, brackets, and internal quotation marks omitted).

presented suggesting that other trucking companies paid for layovers." Wal-Mart Response Br. 51. The "act or omission" at issue is not Wal-Mart's failure to pay the minimum wage for layovers (or for other times), but its failure to pay for layovers *when the drivers are under the employer's control*, and there is no evidence in the record that any other company exercised the same control over drivers during layovers as Wal-Mart did. Besides, even if other companies imposed similar restrictions on their own drivers during layovers, that anecdotal evidence would have no bearing on whether Wal-Mart had the requisite actual, good-faith belief that California law permitted it to refuse to pay the minimum wage for layover time during which it restricted the movements and activities of its drivers (let alone when it refused to pay for rest break or pre- and post-trip inspection time).

In sum, the evidence on which the district court relied was, as a matter of law, insufficient to support the court's conclusion that Wal-Mart acted in good faith with respect to the particular violations at issue here. The court's denial of liquidated damages must therefore be reversed.

### D. Even If Wal-Mart Had Established a Good Faith Belief That Its Failures to Pay Minimum Wages Were Lawful, Such a Belief Would Not Have Been Objectively Reasonable

The district court's denial of liquidated damages should also be reversed for the independent reason that even if Wal-Mart had established a good faith belief

that it was not violating the Labor Code when it refused to pay drivers for time spent subject to Wal-Mart's control during layovers, rest breaks, and pre- and post-trip inspections, such a belief would not have been objectively reasonable.

***Layovers.*** The jury expressly found that the drivers in the plaintiff class were subject to Wal-Mart's control during layovers. *See* Cross-Appeal Br. 26-29. Under California law, all "time during which an employee is subject to the control of an employer" is compensable, including time when the employee is not performing physical job duties in the conventional sense. *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 582 (2000) (internal quotations omitted).

Wal-Mart complains that its "decision not to compensate drivers for time they were not working *and were free to do as they pleased* was common sense." Wal-Mart Response Br. 48 (emphasis added). But the jury found, as a matter of fact based on the extensive evidence presented at trial, that Wal-Mart's California drivers were *not* free from its control during these layovers. To the contrary, the jury concluded that drivers' freedom was restricted by Wal-Mart's control over where the drivers were permitted to spend layovers (in their vehicles, absent express prior permission) and by Wal-Mart's requirements that they keep their tractors "park[ed] in a safe, legal and secure location"; that they remain responsible for the safekeeping of the vehicle at all times during the layover; that they must report any accidents promptly; and that they were prohibited from using alcohol

and having visitors (including spouses), pets, or other animals during the layovers. ER59-60 & n.7, ER188; *see* Cross-Appeal Br. 30-35 (discussing evidence).

However "reasonable" it might be for an employer to reduce labor costs by not paying the minimum wage during layovers when its employees are in fact "free to do as they please" (Wal-Mart Response Br. 48) without any restriction or limitation, it is unlawful under California law, and not at all reasonable, to fail to pay at least the minimum wage to employees over whom the employer exercises significant control, as here. Wal-Mart cannot contend that its refusal to pay for this time was objectively reasonable based on a description of the facts that the jury rejected.

Wal-Mart insists that the lack of evidence that other employers paid for layovers made it objectively reasonable for Wal-Mart to refuse to pay its drivers for layover time during which they were subject to Wal-Mart's control. But as explained *supra* at 16, Wal-Mart did not present any evidence that other companies subjected their drivers to the same level of control as the jury found Wal-Mart exercised here. In any event, an "employer's adherence to customary and widespread industry practices that violate [FLSA pay] … provisions is not evidence of an objectively reasonable good faith violation." *Martin*, 940 F.2d at 910. The same is true under §1194.2. *See supra* at 3-8.

Wal-Mart also argues that its refusal to pay for layover time was objectively reasonable because Wal-Mart complied with federal regulations requiring 10-hour layovers. Wal-Mart Response Br. 48. Plaintiffs have already demonstrated, though, that Wal-Mart could have complied with the federal Department of Transportation regulations requiring that drivers on layovers be "relieved from … all responsibility for performing work," 49 C.F.R. §395.2, *and* with California law requiring employers to pay employees for all "time during which an employee is subject to the control of an employer," IWC Wage Order No. 9-2001, §2(H)—either by not exercising that control or by paying plaintiffs for that time. *See* Cross-Appeal Br. 35-36.

In California, "an employee who is subject to an employer's control does not have to be working during that time to be compensated." *Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal.4th 833, 839 (2015) (quotation marks omitted); *see Morillion*, 22 Cal.4th at 582. Nothing in the federal regulations prevented Wal-Mart from paying for time during which drivers were relieved of responsibility for performing work but still subject to Wal-Mart's control.

***Rest breaks and pre- and post-trip inspections.*** Wal-Mart also insists that its failure to pay drivers *at all* for time spent during rest breaks and pre- and post-trip inspections was objectively reasonable because the drivers' overall pay, averaged across a full pay period, exceeded the minimum wage. But Wal-Mart is

wrong when it asserts that "[d]uring the class period, courts and regulatory bodies agreed that minimum wage compliance could be assessed simply by dividing (or 'averaging') a piece-rate employee's total earnings in a pay period over total hours worked." Wal-Mart Response Br. 46.

California law has prohibited "averaging" as a defense to minimum wage violations since at least 2005, shortly after the class period began in October 2004. *See Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 323 (2005). While Wal-Mart cites *Reinhardt v. Gemini Motor Transp.*, 869 F.Supp.2d 1158, 1168 (E.D. Cal. 2012), the district court in *Reinhardt* expressly acknowledged that "averaging hourly compensation is not permitted under California law," and that "*Armenta*'s rules that every hour worked must be compensated, and that 'averaging' is not permitted under California law, have been recognized in piece-rate cases." *Id.* at 1168 (citing *Cardenas v. McLane FoodServices, Inc.*, 796 F.Supp.2d 1246, 1252-53 (C.D. Cal. 2011), and *Ontiveros v. Zamora,* 2009 WL 425962, *2-5 (E.D. Cal. Feb. 20, 2009)).[8]

---

[8] Wal-Mart cites one case decided *before* the class period, *Medrano v. D'Arrigo Bros. Co. of Cal.*, 336 F.Supp.2d 1053 (N.D. Cal. 2004), but that case was expressly rejected in *Armenta*, 135 Cal.App.4th at 322-23. The only case decided during the class period that even arguably supports Wal-Mart is *Cole v. CRST, Inc.*, 2012 WL 4479237, *7 (C.D. Cal. Sept. 27, 2012), but as plaintiffs have previously explained, that unpublished decision cited no authority and was decided before *Gonzalez v. Downtown LA Motors, LP*, 215 Cal.App.4th 36, 40 (2013), and *Bluford v. Safeway Stores, Inc.*, 216 Cal.App.4th 864, 872 (2013),

Moreover, Wal-Mart *concedes* that the California Court of Appeal "addressed the issue of payments for rest breaks in a piece-rate compensation system" in 2013 in *Bluford v. Safeway Stores, Inc.*, 216 Cal.App.4th 864 (2013). Wal-Mart Response Br. 48. Thus, at a minimum, Wal-Mart's failure to pay its drivers for rest breaks and pre- and post-trip inspections was objectively unreasonable during the last two years of the class period, from 2013 to 2015.

Wal-Mart incorrectly asserts that *Bluford* did not "consider whether pay for rest breaks was applied through 'fixed rates for certain tasks and hourly rates for other tasks and delays,'" which Wal-Mart asserts is how it "provided opportunities for paid rest to drivers." Wal-Mart Response Br. 48. To the contrary, *Bluford* is directly on point. Just as the jury found here, in *Bluford* the employer's "activity based compensation system did not separately compensate drivers for their rest periods." 216 Cal.App.4th at 872. "Pay was calculated based on mileage rates applied according to the number of miles driven, the time when the trips were made, and the locations where the trips began and ended," and "[d]river pay was also based on fixed rates for certain tasks and hourly rates for other tasks and delays." *Id.* As here, none of these rates compensated drivers for rest periods. *Id.*

---

made overwhelmingly clear that California's prohibition on "averaging" applies to employees paid under a piece-rate system and requires separate pay for each task, including rest breaks. *See* Cross-Appeal Br. 41 n.9.

The employer in *Bluford*, like Wal-Mart, argued that "although it did not separately compensate for rest periods, the activity based compensation system did include compensation for rest periods," because "the system's mileage rates and the activity rates were designed to include payment for expected rest periods." *Id.* But the court concluded that "[e]ven if that is so, it is akin to averaging pay to comply with the minimum wage law instead of separately compensating employees for their rest periods at the minimum or contractual hourly rate, and, as we have explained, it is not allowed under California labor law." *Id.* *Bluford* is therefore indistinguishable.[9]

---

[9] Neither of the post-*Bluford* cases that Wal-Mart cites support its position either. The court in *Burnell v. Swift Transp. Co. of Ariz. LLC*, 2016 WL 2621616, at *3 (C.D. Cal. May 4, 2016), denied class certification for lack of commonality because "there was wide variation as to if, when, and for how long any particular driver performed any … allegedly uncompensated tasks," plaintiffs provided "no evidence demonstrating that [the employer] had a general policy not to pay drivers minimum wage for all work completed pursuant to a general policy," and thus plaintiffs had "not presented evidence that shows the putative class was denied a minimum wage *in a manner appropriate for class-wide resolution*." *Id.* at *3 (emphasis added). The case says nothing suggesting that "averaging" is permissible under California's minimum wage law.

Wal-Mart also asserts that in *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1077 (9th Cir. 2018), this Court certified to the California Supreme Court "whether averaging applies to certain activity-based pay systems." Wal-Mart Response Br. 45. The certified questions in *Oman*, however, focus on whether an employer violates California minimum wage law when it uses a pay system that includes multiple formulas for calculating flight attendant pay, one of which guarantees pay at more than the minimum wage for every work hour, and another which provides greater total pay but does not guarantee the minimum wage for all hours worked. *See Oman*, 889 F.3d at 1077, 1080; *see also Oman*, 153 F.Supp.3d at 1095. The

Given the controlling, on-point appellate authority, Wal-Mart could not have had an objectively reasonably basis for believing that its failure to pay drivers anything for work time spent on rest breaks and pre- and post-trip inspections complied with California law (at least from 2013 forward).

Despite a decade of uniform case law rejecting Wal-Mart's "averaging" approach, Wal-Mart argues that not until the Legislature enacted AB 1513 in 2015 (codified at Labor Code §226.2) was it clear "for the first time" that employees compensated on a piece-rate basis must be separately compensated for rest breaks. Wal-Mart Response Br. 47. To the contrary, California appellate decisions from *Armenta* through *Gonzales* and *Bluford* made abundantly clear that under California minimum wage law, *all* compensable time must in fact be compensated and that "averaging" is not a permissible method of compliance. *See supra* at 20-22; Cross-Appeal Br. 38-42.

Indeed, the Legislature expressly recognized before it enacted AB 1513 that *Gonzales* and *Bluford* had already "clarified that piece-rate workers must be separately compensated for non-productive time and rest and recovery periods." Assembly Floor Analysis of AB 1513 at 5 (Sept. 11, 2015).[10] The purpose of AB 1513 was to adopt a safe-harbor "compromise" that would enable employers who

---

case has no bearing on plaintiffs' claims here, because—as the jury found—Wal-Mart did *not* pay drivers for all compensable work time.

[10] Attached to the concurrently filed Request for Judicial Notice as Exhibit B.

used piece-rate compensation systems to avoid liability for past violations of California's minimum wage laws but "*only if* they retroactively compensate employees for their rest periods, recovery periods, and nonproductive time." *Id.* (emphasis added). Section 226.2(b) thus created an "affirmative defense to any claim or cause of action for recovery of wages, damages, liquidated damages … *including liquidated damages pursuant to Section 1194.2*," and a variety of statutory and civil penalties "based solely on the employer's failure to timely pay the employee the compensation due for rest and recovery periods and other nonproductive time for time periods prior to and including December 31, 2015, if, by no later than December 15, 2016," the employer takes certain steps, including "mak[ing] payments to each of its employees, [with certain specified exceptions] …, for previously uncompensated or undercompensated rest and recovery periods and other nonproductive time from July 1, 2012, to December 31, 2015, inclusive," using a specified formula. Lab. Code §226.2 (emphasis added). Wal-Mart chose not to take advantage of this statutory safe harbor.

The fact that the Legislature expressly constructed a safe harbor provision to allow employers to avoid liquidated damages claims under §1194.2 for failure to pay for rest breaks and other work time under a piece-rate system if the employer *affirmatively paid all back wages that were due*, torpedoes Wal-Mart's "objective reasonableness" argument. If it had been objectively reasonable to believe that

refusal to pay for such time remained lawful until the Legislature adopted AB 1513 in 2015, liquidated damages under §1194.2 would never be available for that kind of minimum wage violation, and there would have been no reason for the Legislature to provide a safe harbor for employers to avoid liquidated damages awards under §1194.2.

***Preemption.*** Finally, Wal-Mart insists that it was objectively reasonable for it to believe it could ignore California's minimum wage laws based on the theory that they were preempted by the Federal Aviation Administration Authorization Act ("FAAAA"). Wal-Mart Response Br. 49. The district court expressly and correctly rejected this argument. ER76. First, Wal-Mart presented no evidence that, at the time that it violated California minimum wage law, it had an actual subjective good faith belief that its violations were lawful because of FAAAA preemption. That alone forecloses Wal-Mart's argument.

Moreover, any such belief would not have been objectively reasonable. This Court has consistently held, since well before the beginning of the class period, that "state wage laws" are not preempted by the FAAAA. *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 644, 647, 648 (9th Cir. 2014); *see Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998) (prevailing wage law not preempted by FAAA); *California Trucking Assoc. v. Su*, 903 F.3d 953, 961 (9th Cir. 2018); *see also* Cross-Appeal Br. 37-38.

Wal-Mart cites no authority to the contrary other than an out-of-circuit case, *Massachusetts Delivery Ass'n v. Coakley*, 769 F.3d 11 (1st Cir. 2014), which addressed FAAAA preemption of Massachusetts's independent-contractor law, not California's (or any other state's) minimum wage law. While Wal-Mart also cites a footnote in *Dilts*, 769 F.3d at 641 n.1, that footnote did not address minimum wage claims either.[11]

Thus, Wal-Mart's assertion that "Plaintiffs' claims would be preempted in some courts but not others," Wal-Mart Response Br. 49, is incorrect. Wal-Mart cites *no* supporting authority from any jurisdiction addressing any state's minimum wage laws, let alone California's. Not only did Wal-Mart present *no* evidence that it actually believed in good faith during the class period that California's minimum wage laws were preempted by the FAAAA, but any such belief would not have been objectively reasonable.

### E. Granting Liquidated Damages under §1194.2 Would Not Violate Due Process

Wal-Mart's final argument, that an award of liquidated damages here would violate constitutional due process principles, is frivolous. First, as previously explained, under the analogous FLSA provisions it is well-established under long-

[11] Wal-Mart argues that "majority view in California until 2014 was that the FAAAA preempts California minimum wage claims," Wal-Mart Response Br. 49, but that is not true. The *Dilts* footnote that Wal-Mart cites discusses district court cases addressing meal-and-rest-break claims, not minimum wage claims.

standing Supreme Court precedent that "liquidated damages for failure to pay the minimum wages under [the FLSA] are compensation, not a penalty or punishment by the Government." *Overnight Motor Transp. Co.*, 316 U.S. at 584; *accord Chao*, 346 F.3d at 920 ("[L]iquidated damages represent compensation, and not a penalty.") (quotation marks omitted). There is no reason to construe §1194.2 any differently. *See supra* at 3-8. Moreover, the Supreme Court has squarely held that while liquidated damages for minimum wage violations are not penalties at all, even if they were "penalties" they would not violate due process. *See Overnight Motor Transp. Co.*, 316 U.S. at 583-84 ("liquidated damages for failure to pay the minimum wages under [the FLSA]" are not "violative of due process"). This well-established precedent disposes of Wal-Mart's argument.

Even if the Supreme Court had not already rejected Wal-Mart's due process attack on minimum wage laws authorizing liquidated damages, that attack would fail. Wal-Mart's assertion that the liquidated damages plaintiffs seek are "disconnected from actual harm to the class," Wal-Mart Response 57, is demonstrably untrue, as they are measured by the exact amount of minimum wages that Wal-Mart failed to pay. *See Chao*, 346 F.3d at 920 (liquidated damages for unpaid minimum wages "represent compensation") (quotation marks omitted). The "nexus" (Wal-Mart Response Br. 57) between these liquidated damages and the plaintiff drivers' harms is obvious.

Wal-Mart also cannot seriously argue that it lacked "fair notice" that California law required it to pay minimum wages for all time its drivers were subject to its control. *See, e.g.*, *Morillion*, 22 Cal.4th at 582. Plaintiffs have already demonstrated that the district court applied well-established law. Cross-Appeal Br. 26-44. Wal-Mart offers nothing to change the analysis. Its only new argument rests on *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952 (9th Cir. 2018), but in that case it was undisputed that the employer "exercised no control over [its employees'] activities" during their meal breaks. *Id.* at 954. Although the employer offered its employees the opportunity to purchase a discounted meal if they consumed that meal on the premises, it was "undisputed" that the purchase of the meal was "entirely voluntary" and that the employees were entirely "free to leave the premises or spend their break time in any way that they choose …." *Id.* at 956-57.

The Court's conclusion in *Rodriguez* that the employees were not under Taco Bell's "control" during their meal breaks is therefore unremarkable. In contrast, the jury found here that Wal-Mart *did* exercise control over drivers while they were on layovers, and that drivers were thus not free to spend those layovers wherever and however they chose. Cross-Appeal Br. 26-35. Awarding liquidated damages to compensate drivers for the injuries they suffered when Wal-Mart failed

to pay them minimum wages as required by California law would not remotely implicate any due process concerns.

## CONCLUSION

For the reasons stated above and in plaintiffs' Cross-Appeal Brief, the district court's post-trial denial of liquidated damages under Labor Code §1194.2 should be reversed.

Dated: November 14, 2018

Respectfully submitted,

/s/ *Michael Rubin*

Lawrence M. Artenian
Laura E. Brown
WAGNER, JONES, KOPFMAN
& ARTENIAN LLP
1111 East Herndon Avenue, Suite 317
Fresno, CA 93720

Michael Rubin
Matthew J. Murray
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108

Stanley Saltzman
MARLIN & SALTZMAN
29229 Canwood Street, Suite 208
Agoura Hills, CA 91301

Jacob M. Weisberg
LAW OFFICES OF
JACOB M. WEISBERG
844 N. Van Ness Avenue
Fresno, CA 93728

**Form 8. Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 17-15983

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 28.1-1.
The brief is 6,916 words or ____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is ____ words or ____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is ____ words or ____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated ____
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is ____ words or ____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is ____ words or ____ pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is ____ words or ____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is ____ words or ____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant: s/ Michael Rubin

Date: Nov 14, 2018

("s/" plus typed name is acceptable for electronically-filed documents)

9th Circuit Case Number(s) 17-15983 & 17-16142

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*********************************************************************************

## CERTIFICATE OF SERVICE
## When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) 2018-11-14 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) s/ Michael Rubin

*********************************************************************************

## CERTIFICATE OF SERVICE
## When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)