Nos. 17-15983 & 17-16142

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

CHARLES RIDGEWAY, *et al.*,

*Plaintiffs, Appellees, and Cross-Appellants*,

v.

WAL-MART STORES, INC.,

*Defendant, Appellant, and Cross-Appellee*.

---

On Appeal from the United States District Court
for the Northern District of California (Hon. Susan Illston)
No. 08-05221-SI

---

# DEFENDANT-APPELLANT'S PETITION FOR REHEARING AND REHEARING *EN BANC*

---


RACHEL S. BRASS
JOSEPH A. GORMAN
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921

JAMES H. HANSON
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PC
10 West Market Street, Suite 1500
Indianapolis, IN 46204-2968

THEODORE J. BOUTROUS, JR.
LAUREN M. BLAS
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
tboutrous@gibsondunn.com

*Attorneys for Defendant, Appellant, Cross-Appellee Wal-Mart Stores, Inc.*

# TABLE OF CONTENTS

Page

RULE 35(B) STATEMENT ..... 1

BACKGROUND ..... 3

REASONS FOR GRANTING THE PETITION ..... 5

I. The Panel's Decision That Discovery May Be Ordered To Help Plaintiffs' Counsel Find New Clients Conflicts With Article III And Rule 26 ..... 5

II. The Panel's Creation Of A New "Control" Standard And Affirmance Of The District Court's Summary Judgment Ruling Conflicts With Ninth Circuit And California Supreme Court Precedent ..... 7

III. The Panel Decision Inverting Roles Of Judge And Jury In A Class Action Results In Unprecedented Exceptions To Rule 23 And *Daubert* ..... 12

CONCLUSION ..... 18

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acosta v. Off Duty Police Servs., Inc.*,
915 F.3d 1050 (6th Cir. 2019) ........................................................................17

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946)........................................................................................17

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018)...............................................................................15

*Barnes v. Chase Home Fin., LLC*,
934 F.3d 901 (9th Cir. 2019) .............................................................................11

*Belville v. Ford Motor Co.*,
919 F.3d 224 (4th Cir. 2019) .............................................................................16

*Bono Enters., Inc. v. Bradshaw*,
32 Cal. App. 4th 968 (1995) ................................................................................9

*Boyd v. City & Cty. of San Francisco*,
576 F.3d 938 (9th Cir. 2009) .............................................................................16

*Brinker Restaurant Corp. v. Superior Court*,
53 Cal. 4th 1004 (2012) .......................................................................................3

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)............................................................................................16

*Campbell-Ewald v. Gomez*,
136 S. Ct. 663 (2016)........................................................................................1, 6

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)...................................................................3, 13, 15, 16

*Del Webb Cmtys., Inc. v. Partington*,
652 F.3d 1145 (9th Cir. 2011) .............................................................................2

*Garcia v. Tyson Foods, Inc.*,
770 F.3d 1300 (10th Cir. 2014) .........................................................................18

*Kuebel v. Black & Decker Inc.*,
643 F.3d 352 (2d Cir. 2011) ..................................................................18

*Madera Police Officers Ass'n v. City of Madera*,
36 Cal. 3d 403 (1984) ..................................................................8, 9

*Mazzei v. Money Store*,
829 F.3d 260 (2d Cir. 2016) ..................................................................13

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
429 F.3d 1344 (Fed. Cir. 2005) ..................................................................16

*Morillion v. Royal Packing Co.*,
22 Cal. 4th 575 (2000) ..................................................................8

*Nikmanesh v. Wal-Mart, Inc.*,
2019 WL 7163375 (9th Cir. Dec. 23, 2019)..................................................................11

*Ollier v. Sweetwater Union High Sch. Dist.*,
768 F.3d 843 (9th Cir. 2014) ..................................................................15

*Oppenheimer Funds, Inc. v. Sanders*,
437 U.S. 340 (1978)..................................................................6

*Reed v. Bowen*,
849 F.2d 1307 (10th Cir. 1988) ..................................................................5

*Rodriguez v. Taco Bell Corp.*,
896 F.3d 952 (9th Cir. 2018) ..................................................................2, 7, 8

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..................................................................13

*Rookaird v. BNSF Ry. Co.*,
908 F.3d 451 (9th Cir. 2018) ..................................................................11

*Senne v. Kansas City Royals Baseball Corp.*,
934 F.3d 918 (9th Cir. 2019) ..................................................................17

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016)..................................................................2, 13, 14, 15, 17

*United States v. Nacchio*,
555 F.3d 1234 (10th Cir. 2009) ....................................................................16

*United States v. Truitt*,
938 F.3d 885 (7th Cir. 2019) ........................................................................16

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
593 F.3d 802 (9th Cir. 2010) ........................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)........................................................................................14

*Williams v. Mosaic Fertilizer, LLC*,
889 F.3d 1239 (11th Cir. 2018) ....................................................................16

*Williams v. Woodford*,
384 F.3d 567 (9th Cir. 2004) ..........................................................................7

*In re Williams-Sonoma Inc.*,
---F.3d---, 2020 WL 131360 (9th Cir. Jan. 13, 2020).......................................1, 6

**Rules**

Fed. R. App. P. 35(b)(1) ..............................................................................1

Fed. R. App. P. 40(a)(2)................................................................................1

Fed. R. Civ. P. 23(c)(1)(A) ..........................................................................13

Fed. R. Evid. 104(a).....................................................................................12

## RULE 35(B) STATEMENT

The panel's opinion in this case holds that courts may compel discovery to help plaintiffs' attorneys find clients, even absent jurisdiction; adopts a per se rule of "control" that starkly conflicts with decisions of this Court and the California Supreme Court and was reached only by ignoring material factual disputes and drawing all inferences from an ambiguous policy *against* the nonmoving defendant; and further holds that a classwide verdict on liability and damages can be sustained simply because a jury entered it, despite the absence of testimony showing that Plaintiffs' "representative" evidence could be reliably extrapolated to the class. These holdings—reached over a partial dissent by Judge O'Scannlain and despite what the panel itself repeatedly acknowledged as "compelling points" by Wal-Mart (App. 5a)—are exceptionally important to California employers and create conflicts within this Circuit and with other Circuits. They therefore warrant *en banc* or panel rehearing. Fed. R. App. P. 35(b)(1); *id.* 40(a)(2).

The panel's affirmance of the court's order compelling Wal-Mart to provide Plaintiffs' lawyers with contact information for potential new clients after each of the original plaintiffs either passed away, lost interest, or were deemed unsuitable by Plaintiffs' counsel—defies Article III and conflicts with this Court's recent decision in *In re Williams-Sonoma Inc.*, ---F.3d---, 2020 WL 131360 (9th Cir. Jan. 13, 2020) and *Campbell-Ewald v. Gomez*, 136 S. Ct. 663 (2016). The panel's decision

that Wal-Mart waived its alternate abuse-of-discretion challenge to this ruling also contravenes the record and should be corrected on rehearing.

The panel's dramatic expansion of the "control" standard and blessing of the court's decision to take the question of "control" away from the jury by drawing adverse inferences and ignoring Wal-Mart's evidence about what certain policies meant and how it worked in practice, inverted the universally accepted standard for summary judgment, and made the kind of fact-based inquiry followed in other cases such as *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952 (9th Cir. 2018), wholly irrelevant. It also departs from binding California Supreme Court precedent on an issue of state law—which this Court is bound to "approximate . . . as closely as possible" and "hesitate . . . to extend" (*Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011))—making clear that the question of "control" cannot be boiled down to the "simplistic proposition" that anything less than "complete freedom of movement" renders non-work time compensable. App. 26a, 53a.

Finally, the panel's rulings with respect to class certification are equally erroneous and irreconcilable with decisions of this Court and the U.S. Supreme Court. The panel authorized a class verdict based upon *speculation* that the testimony of non-randomly selected witnesses could stand in for the experiences and claimed damages of the class as a whole, thereby contradicting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016). And in holding that *expert* testimony purporting to

extrapolate classwide liability from anecdotes was properly admitted because the *jury* ultimately accepted its conclusions, the panel inverted the role of judge and jury in contravention of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

## BACKGROUND

Plaintiffs are long-haul "over-the-road" truck drivers who transported freight across Wal-Mart's network of distribution centers, vendors, and stores in California. App. 6a. Even though their activity-based compensation "is among the highest in the trucking industry"—between $80,000 and more than $100,000 annually (App. 6a, 43a)—Plaintiffs claimed that Wal-Mart failed to separately compensate them for time spent performing certain non-driving activities, including federally required 10-hour breaks ("layovers") during which they could not work or be expected to work, 10-minute rest breaks, and pre-trip and post-trip truck inspections.

At the end of a mutually agreed-upon stay pending the decision in *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012), which forced Plaintiffs to reboot their case, Plaintiffs' counsel found themselves without any viable class representatives and filed a "motion for orders permitting [counsel] to engage in pre-certification communications with putative class members for the purpose of determining the identity of new class representative." ER1448. The court granted the motion over Wal-Mart's objections under Article III and the Federal Rules of Civil

Procedure, and compelled Wal-Mart to provide driver contact information so that Plaintiffs could find new class representatives and "file an amended complaint for the limited purpose of substituting in new named plaintiffs." ER243.

After the court certified a class, Plaintiffs moved for partial summary judgment, including on whether layovers were compensable hours worked. App. 7a-8a. Ignoring as irrelevant Wal-Mart's voluminous evidence regarding the meaning of its pay manual and actual layover practices, the court granted Plaintiffs' motion, construing the manual to conclude that Wal-Mart "specified and controlled" the "physical location of the layover" by restricting paid layovers "to the [sleeping compartment of the] tractor cab" and "specifically exclud[ing]" the driver's residence. ER189.

After discovery revealed wide variation in driver practices with respect to the allegedly unpaid time, Wal-Mart moved to decertify the class and to exclude the testimony of Plaintiffs' damages expert, Dr. Phillips. App. 9a. His report purported to estimate "how much time [drivers] spent performing various activities" and the "dollar equivalent values for such time" by using cherry-picked deposition testimony from a non-random sample of 40 drivers to create an "average median response" for each activity. ER1155, ER1211. The court denied both motions. App. 9a.

The court held a jury trial on whether Wal-Mart applied its pay manuals as the court had construed them and thereby deprived Plaintiffs of the minimum wage.

App. 9a. Throughout trial, the defective summary judgment rulings dictated the scope—and result—of the trial, as the court twice instructed the jury that it had "previously found" Wal-Mart's layover policy and pay plan were facially unlawful and that if Wal-Mart followed its policies, liability should be found. App. 10a-11a. Plaintiffs' counsel echoed those instructions by stressing to the jury, "[y]ou don't get to decide" control. ER330. The jury found that rest breaks, inspections, and layovers were unpaid and awarded $54 million in damages. App. 14a. The court denied Wal-Mart's motions for decertification, a new trial, and judgment notwithstanding the verdict, and Wal-Mart appealed. *Id*.

The panel affirmed the court's decision. Judge O'Scannlain partially dissented because the pay manual was ambiguous and the jury—not the court—should have decided whether drivers were subject to Wal-Mart's control even if Wal-Mart faithfully applied the pay manual. Keeping that from the jury "short-circuited the entire layover periods question," led to erroneous jury instructions, and prejudiced Wal-Mart's defense on this claim. App. 47a.

## REASONS FOR GRANTING THE PETITION

### I. The Panel's Decision That Discovery May Be Ordered To Help Plaintiffs' Counsel Find New Clients Conflicts With Article III And Rule 26

A district court lacks the power to compel a defendant to produce discovery to help lawyers to find new clients. *See Reed v. Bowen*, 849 F.2d 1307, 1313-14 (10th Cir. 1988). That proposition is so plain that days after the panel's decision,

this Court issued a writ of *mandamus* vacating such an order, holding that "using discovery to find a client to be the named plaintiff before a class action is certified is not within the scope of Rule 26(b)(1)." *In re Williams-Sonoma*, 2020 WL 131360, at *3 (citing *Oppenheimer Funds, Inc. v. Sanders*, 437 U.S. 340, 353 (1978)). The panel's error here is even more significant: it affirmed such an order where the district court lacked the power under Article III to do *anything*—much less compel improper discovery—because all existing plaintiffs had either died, lost interest, or were otherwise deemed inadequate class representatives, and thus lacked the "personal stake" in the litigation that *Campbell-Ewald Co. v. Gomez* requires.

The panel did not address *Campbell-Ewald*, and instead wrongly suggested that Wal-Mart "waived" its abuse-of-discretion challenge. App. 16a. Not so. Wal-Mart's opening brief argued that courts "routinely refuse to order defendants to provide information to enable plaintiffs to continue litigating their claims" (ECF 9 at 25), that no precedent supported the court's decision to order Wal-Mart to help Plaintiffs find new clients (*id*. at 26), and that it was an "abuse of the class action procedure" to proceed as the court did (*id.* at 27). Plaintiffs acknowledged as much *and* responded to that argument (ECF 23 at 15 (citing ECF 9 at 22-27)), and Wal-Mart addressed that response in turn on reply (ECF 32 at 4, 8 & n.1). Thus, this argument, which requires reversing the verdict, was properly preserved (*Williams v. Woodford*,

384 F.3d 567, 587 n.5 (9th Cir. 2004)), and rehearing by the panel or the full *en banc* court is warranted.

## II. The Panel's Creation Of A New "Control" Standard And Affirmance Of The District Court's Summary Judgment Ruling Conflicts With Ninth Circuit And California Supreme Court Precedent

By finding that summary judgment on liability is appropriate on a conflicting evidentiary record whenever an employer's written policy "restrict[s] employees from complete freedom of movement during breaks" (App. 26a-27a), the panel's opinion inverts the basic standards of summary judgment and departs from the California Supreme Court's decisions regarding "control." As the dissent noted, not "a single case . . . supports such a broad rule, and the text of the manual hardly demonstrates the sort of strict location control" that was sufficient to find control as a matter of law in other cases. App. 53a. To the contrary, decisions from this Court and the California Supreme Court universally make clear that "control" cannot be resolved as a matter of law where, as here, there are fundamental disputes about what a policy actually is and how it is applied in practice.

Outside this case, this Court and the California Supreme Court have consistently honored this approach and declined to impose per se rules. In *Rodriguez v. Taco Bell Corp.*, this Court considered whether, under California law, Taco Bell "controlled" employees during meal breaks by requiring those who voluntarily chose to purchase a discounted Taco Bell meal to remain on store premises while eating

the meal. 896 F.3d at 954-55. The Court recognized that while there might be situations in which "an employer may so burden the use of employees' break time that employees must be considered 'on duty,'" those concerns were inapplicable because it was undisputed that purchasing the meal was "entirely voluntary," and "the employees [were] not on call and [were] free to use the time in any way they wish." *Id.* at 956-57.

That holding followed directly from *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000), which considered whether time spent on mandatory employer bus rides was compensable. It was undisputed that all employees had no choice with respect to "when, where, and how" to travel to the worksite. *Id.* at 588. Those facts were sufficient to show that the employees were not merely subject to restrictions, but actually "prevent[ed] . . . from using the time [on the bus] for their own purposes." *Id.* at 583, 587.

When facts are disputed, however, the court cannot find control as a matter of law. In *Madera Police Officers Association v. City of Madera*, 36 Cal. 3d 403 (1984), for example, the California Supreme Court—following a bench trial on liability—pointed to specific facts demonstrating that officers' off-duty meal time was "so substantially restricted that they [were] unable to engage in private pursuits." *Id.* at 409. Among other points, the court emphasized evidence that the officers were on call during their meal periods, had to notify their superiors each day where they

were eating, had to seek approval to take their meal out of their work area, and could not "eat at home or at the home of a friend even with prior approval." *Id*.

Likewise, in *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968 (1995), *disapproved on other grounds by Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557 (1996), the California Court of Appeal flagged the "extremely significant" fact employees who could make "prior arrangements" to re-enter the worksite following a meal "were not restricted to the work site" and "therefore, did not remain subject to the employer's control." *Id*. at 978 n.4.

The majority's decision to "short-circuit the entire layover periods question" directly conflicts with all of these precedents. App. 47a. The dissent identifies several instances where the court improperly took questions regarding Wal-Mart's "level of control" from the jury: for example, although the majority suggested (mistakenly) that the manual's "limitations on a driver's ability to spend a layover at home" "effectively direct where drivers are required to be during their layover periods" (App. 50a, citing App. 23a-24a), Wal-Mart's pay manual (unlike the policy in *Morillion*, for example) does not limit drivers to a particular location, thereby necessitating factual inquiries into what drivers actually did on layovers. App. 51a. Underscoring that this was a fact-driven inquiry, drivers testified about their varied activities during layovers—which included "visiting a friend, going to see a movie,

going to a bar or restaurant, shopping, running errands," among other pursuits. App. 51a.

Under the erroneous summary judgment order and jury instructions, though, these activities were relevant only to the narrow question whether Wal-Mart followed its purportedly unlawful pay manual in practice—not whether Wal-Mart *in fact* prevented drivers from using their layovers "for their own purposes." That was a critical mistake: if Wal-Mart did not "control" anyone as a factual matter—because even if it faithfully followed the manual, drivers could nonetheless use their layovers for their own purposes—then Wal-Mart owes nothing for layovers. Even a cursory review of the record shows that Wal-Mart did not "prevent" drivers from enjoying their layovers. As just one example, over-the-road driving (as opposed to local driving), can take drivers hundreds of miles away from their homes. If a trip home is impracticable, a requirement to seek permission before going home on layover could not have "restricted" that driver. ER580-81. By contrast, for those drivers whose routes did pass near home, the "permission requirement" did not restrict them from visiting with family at home, even if they did not spend the *entire* layover there. ER432, ER442, ER489. Yet, the panel's narrow construction renders this highly probative evidence about whether drivers were in fact "prevented" from doing anything—the key question under *Taco Bell*, *Morillion*, and other cases—completely irrelevant.

In affirming the court's refusal to engage with these facts at summary judgment, the panel majority disregarded the basic and repeatedly reaffirmed rule that all reasonable inferences must be drawn in favor of the non-moving party. App. 53a (citing *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019)); *see also Nikmanesh v. Wal-Mart, Inc.*, 2019 WL 7163375, at *2 (9th Cir. Dec. 23, 2019). As the dissent explained, "the court seems to have drawn every inference against Wal-Mart and assumed that the most restrictive reading of the manual must be true." App. 53a. The majority rejected Wal-Mart's interpretation of the pay manual simply because it was "aware of no per se rule under California law that control will not be found when an employer creates an exception for employees who receive prior approval to engage in otherwise restricted activities." App. 24a. But that too improperly shifted the burden, as "summary judgment should not have been granted unless *the plaintiffs* could show that Wal-Mart's interpretation was *wrong* as a matter of law—a conclusion that even the majority seems to recognize is not supported under California law." App. 54a (citing *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018)). Under the binding precedents of this Court and the California Supreme Court, the question whether Wal-Mart in fact prevented drivers from using their layovers for their own purposes—not merely whether it followed its pay manual—"should have been decided by the jury at trial." *Id.*

The majority's decision will not be limited to layovers or transportation companies; it will impact every case in which there is any indication that an employer "restrict[s] employees from complete freedom of movement during breaks." App. 26a-27a. In *Taco Bell*, the non-controlling policy required employees who wanted to enjoy a discounted meal to remain on premises and prohibited employees from taking their breaks near "the food production area" and the "cash register service area" (896 F.3d at 954). The majority's "complete freedom of movement" rule would lead to the opposite outcome. Other common workplace inconveniences that do not actually "prevent" the employee from enjoying their break—for example, requirements that employees pass through a brief security screening, not spend their break time in places where clients or customers are present, not travel more than certain distance from the worksite during a meal break, not smoke at the worksite, or not consume alcohol during a meal break—would, in the majority's view, also constitute "control" because they restrict an employee's movement or activities. Rehearing is warranted to make clear that this is not the governing standard for California employers.

## III. The Panel Decision Inverting Roles Of Judge And Jury In A Class Action Results In Unprecedented Exceptions To Rule 23 And *Daubert*

Ensuring compliance with the Federal Rules of Evidence and, in a class action, with Rule 23, is the responsibility of the trial judge, not the jury. *See* Fed. R. Evid. 104(a) ("[t]he court must decide any preliminary question about whether a

witness is qualified . . . or evidence is admissible."); Fed. R. Civ. P. 23(c)(1)(A) ("[T]he court must determine by order whether to certify the action as a class action."). The panel, however, relieved the court of both duties and relied instead on the jury's verdict to justify the class certification order and excuse irredeemable flaws in Plaintiffs' supposedly "representative" evidence. The panel's approach inverts the roles of judge and jury, defies the Supreme Court's instructions regarding the sufficiency of classwide proof and the admissibility of expert testimony, and clashes with the decisions of other Circuits.

A district court must ensure compliance with Rule 23 at all stages of class litigation, including through trial. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also Mazzei v. Money Store*, 829 F.3d 260, 264, 266 (2d Cir. 2016). Where, as here, *classwide* proof of liability and damages depends upon an "expert" witness purporting to extrapolate individual proof to the class as a whole, the court must ensure that it is "reliable" and "could have sustained a reasonable jury finding . . . in each employee's individual action" *before* permitting the jury to rely upon it to render a classwide verdict. *Tyson*, 136 S. Ct. at 1046-47; *see Daubert*, 509 U.S. at 589. The panel's departure from these principles warrants *en banc* review.

As to liability, Plaintiffs' extrapolation assumed, contrary to the evidence, that every driver took the same number of unpaid rest breaks, always performed inspections during unpaid time, and always took the entirety of their layovers in the sleeper berth of their truck. *See* ECF 9 at 16-17, 49-53 (summarizing evidence belying these assumptions); App. 38a (acknowledging that "plaintiffs testified to varying hours"). The panel ignored this problem entirely with respect to rest breaks and inspections, and when it came to layovers, held that Plaintiffs' extrapolation was sufficient to support a classwide liability finding because "substantial evidence supported the jury's finding that Wal-Mart was liable." App. 37a. The "substantial" evidence, however, consisted only of individual anecdotes from "[s]everal drivers" about various restrictions they believed they were subject to during layovers. App. 30a.

Thus, the panel appears to have held that an extrapolation is sufficient to support classwide liability if *any* anecdotes happened to align with the extrapolation—even if there is no evidentiary basis to find that those anecdotes are representative of the class and despite the existence of trial testimony to the contrary. That directly contradicts *Tyson*'s holding that a class action cannot proceed based upon "implausible assumptions." 136 S. Ct. at 1048; *cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 & n.9 (2011) (rejecting plaintiffs' reliance on "a few anecdotes" to certify "a companywide class"). And, because the speculation here carried the imprimatur

of an "expert," the panel's holding also contradicts the entire body of *Daubert* jurisprudence. *Daubert*, 509 U.S. at 590; *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) ("[S]peculative testimony is inherently unreliable."). Finally, by lifting the requirement that representative evidence be statistically reliable and nonspeculative, the panel's holding creates a Circuit split. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 55-56 (1st Cir. 2018) (denying certification where purportedly representative evidence was little more than "statistical observations of tendencies and distributions").

With respect to damages, the panel acknowledged that "[v]ariation abounded" and that Wal-Mart made "compelling" arguments "that, given the broad range of experiences among drivers, [Plaintiffs' expert] and other evidence could not prove classwide damages" (App. 37a), but affirmed the admission of Plaintiffs' extrapolation anyway. Why? Because the testimony of a handful of drivers happened to overlap with Plaintiffs' proposed averages and, according to the panel, "[i]n a class action, testimony alone may serve as the basis for classwide damages." App. 39a. Not so: the admissibility of evidence "turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action." *Tyson*, 136 S. Ct. at 1046. The panel's oversimplification of the law conflicts with *Tyson*, *Daubert*, and their progeny, which require the *court* to scrutinize expert extrapolations before

allowing the jury to rely upon them to render a classwide verdict. *Id.*; *see also Daubert*, 509 U.S. at 590.

Rather than perform this required analysis, the panel excused Plaintiffs' failure to account for contrary evidence at trial because "that evidence was submitted to the jury, and the jury found for plaintiffs." App. 37a. And when it came to damages, the panel simply recounted various data sources that Plaintiffs' expert reviewed and declared, "[i]n the end, the jury credited the evidence presented by plaintiffs." App. 40a. But the jury's acceptance of Plaintiffs' extrapolations does not make them reliable in the first instance. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). The panel's reliance on the jury in this regard contradicts this Court's prior holding that "[i]t is the *trial judge's* responsibility to ensure 'that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand'" (*Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 945 (9th Cir. 2009) (quoting *Daubert*, 509 U.S. at 597) (emphasis added)) and generates another Circuit split. *See, e.g.*, *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019); *United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019); *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1244 (11th Cir. 2018); *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1355 (Fed. Cir. 2005).

Finally, the panel's holding that Plaintiffs' extrapolations were properly admitted "because plaintiffs had no other practicable way to prove how much Wal-Mart owed them" (App. 42a), creates yet another irreconcilable conflict with binding Supreme Court and sister-Circuit precedent. The panel's holding misinterprets *Anderson v. Mt. Clemens Pottery Co.*, which held that an individual employee may use "just and reasonable inference" to prove time worked—but only if the employer failed to comply with a statutory duty to track the time. 328 U.S. 680, 687-88 (1946); *see also Tyson*, 136 S. Ct. at 1047 (explaining that *Mt. Clemens* creates a presumption "when employers violate their statutory duty to keep proper records"). But the panel fails to mention any duty to track separately time spent taking rest breaks, performing inspections, and resting on layovers, and none exists. *See Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 939 (9th Cir. 2019) ("*Mt. Clemens* established its landmark burden-shifting framework for actions in which the employer has kept *inaccurate* or *inadequate* records" in violation of a "statutory duty") (emphasis added).

By expanding *Mt. Clemens* to encompass *all* circumstances where plaintiffs lack sufficient classwide proof of damages, the panel created an exception that will nullify *Tyson*, veers away from this Circuit's recent jurisprudence applying *Mt. Clemens* to recordkeeping violations (*see Senne*, 934 F.3d at 939), and departs from the reasoning of sister Circuits. *See*, *e.g.*, *Acosta v. Off Duty Police Servs., Inc.*,

915 F.3d 1050, 1064 (6th Cir. 2019); *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1307 (10th Cir. 2014); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

## CONCLUSION

The Court should grant panel rehearing or rehearing *en banc*.

Dated: January 21, 2020

Respectfully submitted,

s/ *Theodore J. Boutrous, Jr.*

THEODORE J. BOUTROUS, JR.
LAUREN M. BLAS
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
tboutrous@gibsondunn.com

RACHEL S. BRASS
JOSEPH A. GORMAN
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921

JAMES H. HANSON
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PC
10 West Market Street, Suite 1500
Indianapolis, IN 46204-2968

# APPENDIX

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHARLES RIDGEWAY; JAIME FAMOSO; JOSHUA HAROLD; RICHARD BYERS; DAN THATCHER; WILLIE FRANKLIN; TIME OPITZ; FARRIS DAY; KARL MERHOFF, *Plaintiffs-Appellees/ Cross-Appellants*, <br><br> v. <br><br> WALMART INC., DBA Wal-Mart Transportation LLC, *Defendant-Appellant/ Cross-Appellee.* | Nos. 17-15983<br>17-16142<br><br>D.C. No.<br>3:08-cv-05221-SI<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted August 6, 2019
San Francisco, California

Filed January 6, 2020

Before: Diarmuid F. O'Scannlain, Eugene E. Siler,*
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Siler
Partial Concurrence and Partial Dissent by
Judge O'Scannlain

**SUMMARY****

**Class Action / California Employment Law**

The panel affirmed the district court's judgment awarding tens of millions of dollars in damages in a class action brought by Wal-Mart California truck drivers alleging employment-related claims.

The case was initially filed in state court by four truck drivers. Wal-Mart removed the suit to federal court, and the parties agreed to a stay until the California Supreme Court issued *Brinker Restaurant Corp. v. Superior Court*, 273 P.3d 513 (Cal. 2012) (holding that employers must make meal and rest breaks available, but do not have to ensure that employees take such breaks). After the stay was lifted, plaintiffs filed their fourth amended complaint and dropped some initial plaintiffs while adding new class plaintiffs. The district court certified the new class, granted partial summary judgment to plaintiffs on their minimum wage

* The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

liability claims, and eventually conducted a jury trial and entered judgment.

The panel held that Wal-Mart raised no reversible error.

The panel rejected Wal-Mart's claim that the district court erred by failing to dismiss for lack of jurisdiction. The panel held that the district court correctly concluded that the case presented an Article III case or controversy because two lead plaintiffs remained in the action after the stay was lifted.

The panel rejected Wal-Mart's claims that plaintiffs should not have been awarded damages for layovers, rest breaks, and inspections. Specifically, the panel held that the district court correctly concluded that, under California law, time drivers spent on layovers was compensable if Wal-Mart exercised control over the drivers during those breaks. The panel further held that a comprehensive review of the Wal-Mart pay manual demonstrated that it unambiguously required drivers to obtain preapproval to take a layover at home, and therefore, the district court did not err in granting partial summary judgment on this issue to plaintiffs. The panel also held that the district court correctly determined that Wal-Mart's written policies, if applied as written, resulted in Wal-Mart exercising control over employees during mandated layovers as a matter of California law. The panel held that the district court properly instructed the jury on layovers. The panel also held that there was sufficient evidence for the jury to find that Wal-Mart had exercised control over its drivers. The panel rejected Wal-Mart's contention that the Federal Aviation Administration Authorization Act preempted California law governing layovers. The panel also affirmed the district court's judgment awarding damages to plaintiffs for rest breaks and inspections.

The panel held that the district court did not err in certifying a class and allowing representative evidence as proof of classwide damages – including plaintiffs' expert Dr. Phillips' testimony and sample.

On cross-appeal, plaintiffs argued that the district court erred in denying liquidated damages. The panel held that the district court did not err in finding that Wal-Mart acted in good faith and with a reasonable belief in the legality of its action, and therefore affirmed the district court's denial of liquidated damages.

Judge O'Scannlain concurred in the majority's opinion, except for Part II.B.1.b. Judge O'Scannlain did not agree with the majority's conclusion that the district court correctly granted partial summary judgment to the plaintiffs when it found that Wal-Mart's written pay policies necessarily establish that the company "controlled" drivers during layovers. In his view, the jury should have been allowed to decide the meaning of these ambiguous policies and the extent to which the policies actually "control" what drivers may do and where they may go.

---

**COUNSEL**

Theodore J. Boutrous, Jr. (argued) and Lauren M. Blas, Gibson, Dunn & Crutcher LLP, Los Angeles, California; Rachel S. Brass and Joseph A. Gorman, Gibson, Dunn & Crutcher LLP, San Francisco, California; James H. Hanson, Scopelitis, Garvin, Light, Hanson & Feary, P.C., Indianapolis, Indiana; for Defendant-Appellant/Cross-Appellee.

Michael Rubin (argued) and Matthew Murray, Altshuler Berzon LLP, San Francisco, California; Lawrence M. Artenian and Laura E. Brown, Wagner Jones Kopfman & Artenian LLP, Fresno, California; Jacob M. Weisberg, Law Office of Jacob M. Weisberg, Fresno, California; Stanley Saltzman, Marlin & Saltzman LLP, Agoura Hills, California; for Plaintiffs-Appellees/Cross-Appellants.

---

**OPINION**

SILER, Circuit Judge:

Long-haul truckers perform a vital service in the nation's economy. No wonder then, that Wal-Mart, among the world's largest retail companies, employs hundreds of truck drivers. Still, over a decade ago, drivers in California felt that Wal-Mart did not pay them properly in accordance with California law. So they sued in a class action. After a sixteen-day trial, the jury agreed with Wal-Mart on most issues. On some claims, however, the jury sided with the class of truckers and awarded tens of millions of dollars in damages.

Now, Wal-Mart asks this panel to erase that judgment. Wal-Mart contends that the district court erred at every step along the way—in concluding that it had jurisdiction, in certifying a class, in interpreting California minimum wage law, in allowing expert testimony, and in providing jury instructions.

But it is improper for this court to play armchair district judge. In the end, while Wal-Mart makes some compelling points, Wal-Mart raises no reversible error. Additionally, the district court properly concluded that liquidated damages are not owed under California law because Wal-Mart

demonstrated that it acted in good faith and with a reasonable belief in the legality of its conduct. Accordingly, we **AFFIRM**.

## I. Background

### *A. The Original Lawsuit, the Stay, and the Named Plaintiffs*

More than a decade ago, four truck drivers sued Wal-Mart in Alameda County Superior Court claiming Wal-Mart violated state meal and rest break laws. Those drivers worked out of several distribution centers in California that served as hubs through which Wal-Mart delivered items across the western United States. As part of their job, truckers would travel a wide range of routes, to different locations, hauling different freight. And, by industry standards, the truckers were paid well—an average of $300 per day and between $80,000 and more than $100,000 annually.

Still, drivers claimed that they were not receiving adequate minimum wage pay. Wal-Mart paid truckers through what it called an activity-based pay system. That system included pay for (1) mileage, (2) tasks that constituted "activity," such as arriving and departing a facility, as well as hooking a new trailer to the truck, and (3) hourly wages of fourteen dollars per hour for limited events like time spent waiting at a store or supplier, delays due to inclement weather, or delays caused by a truck breakdown.

Wal-Mart removed the suit to federal court. Subsequently, the parties agreed to stay the suit while the California Supreme Court considered an issue that would affect the truckers' claims. Three years later, in *Brinker*

*Restaurant Corp. v. Superior Court*, 273 P.3d 513 (Cal. 2012), the California Supreme Court ruled that an employer must make meal and rest breaks available, but employers did not have to ensure that employees took such breaks.

Consequently, the stay was lifted. Just one problem: it was unclear if any of the named plaintiffs remained in the lawsuit. Of the four original plaintiffs, two had died during the stay, one had lost interest in pursuing the case, and class counsel had concerns about the fourth plaintiff's ability to adequately represent the class.

Thus, plaintiffs' counsel asked the court to order Wal-Mart to turn over information about potential class members so that counsel could determine the identity of new plaintiffs and class representatives. Wal-Mart objected, arguing that without an adequate plaintiff, the district court did not have jurisdiction. Citing the "unique circumstances" of the case, and noting that information about putative class members would serve purposes other than finding new plaintiffs, the district court granted plaintiffs' motion.

After obtaining new information from Wal-Mart, plaintiffs' counsel found new named plaintiffs and filed an amended complaint. Under plaintiffs' theory, Wal-Mart did not pay drivers for time spent under the company's control—such as during layovers, rest breaks, and inspections—in violation of California law. Plaintiffs filed their fourth amended complaint in 2013, seeking damages, restitution, and statutory penalties under California law.

### *B. Class Certification*

Next, plaintiffs moved to certify a class. They argued that all Wal-Mart drivers in California after October 10, 2004, were subject to the same written pay policies.

Additionally, plaintiffs contended that common issues predominated over any individual issues because there were only "minor variations" among the class members.

Wal-Mart objected. It argued that huge variations among truckers' locations, routes, and duties could lead to differences in pay, so individual issues infected the class, making certification inappropriate.

The district court agreed with plaintiffs and certified the class.

*C. Pre-Trial Partial Summary Judgment for Plaintiffs*

Then, plaintiffs moved for partial summary judgment. Plaintiffs argued that Wal-Mart did not pay drivers for all job duties, required drivers to take rest breaks without pay, and "controlled" drivers during ten-hour layover periods, entitling drivers to minimum wage pay.

The district court granted partial summary judgment as to plaintiffs' minimum wage liability claims. The district court found that under Wal-Mart's pay policy—if applied as written—drivers were not paid separately for some activities and that those activities "may not properly be built in or subsumed into the activity pay component of Wal-Mart's pay policies." The court also held that, under the policy, drivers were subject to Wal-Mart's "control"—as defined by California law—during layovers. Thus, the district court found that Wal-Mart must pay minimum wages during those times. Although the district court found that Wal-Mart's policies described practices that would violate California law, the court presented to the jury the factual question of whether Wal-Mart had implemented those policies.

*D. Wal-Mart's Pre-Trial Motions*

After discovery concluded, Wal-Mart made several pretrial motions. First, it argued that the case could not proceed on a classwide basis based on variations in the routes, daily tasks, and duties of each driver. The district court denied the motion.

Second, Wal-Mart moved for summary judgment on the minimum wage claims. It argued that the Federal Aviation Administration Authorization Act ("FAAAA") preempted California law. Again, the district court denied the motion.

Third, Wal-Mart moved to exclude Dr. G. Michael Phillips from providing expert testimony about classwide damages. Phillips said he could "estimate how much time [truckers] spent performing various activities[,] and then, under various assumptions, . . . estimate dollar equivalent values for such time." The district court also denied Wal-Mart's motion to exclude, ruling that Wal-Mart's issue with Phillips's proposed testimony went toward "weight rather than . . . admissibility."

*E. Trial and Jury Instructions*

The trial occurred in 2016, focusing on plaintiffs' minimum wage claims for eleven separate activities from October 2004 to October 2015.

Among the jury instructions, the district court issued a California minimum wage instruction stating:

> "Wages" includes all amounts for labor performed by an employee, whether the amount is calculated by time, task, piece, commission, or some other method. The rate

> of the minimum wage is set forth in Instruction No. 13.
>
> The Court has previously found that Wal-Mart's 2008 driver pay manual states that no pay is earned for certain tasks. Such a policy, if enforced or applied, does not comply with California's minimum wage laws. A policy that does not compensate directly for all time worked does not comply with California Labor Codes, even if, averaged out, it would pay at least minimum wage for all hours worked. Therefore, if Wal-Mart applied the policy as it is stated in the driver pay manual, such that no pay was earned for certain tasks, then it did not comply with California's minimum wage law. Wal-Mart may, however, pay drivers for certain tasks through activity codes that include those tasks.
>
> What is stated in any pay plan or written policy does not itself establish whether someone was paid the minimum wage. Rather, plaintiffs must still prove that, in accordance with the pay policy, the class members in fact were not paid for certain tasks. Plaintiffs have the burden to prove their claims.

The court also instructed the jury about layovers:

> Plaintiffs claim that Wal-Mart owes them unpaid wages for time spent during 10-hour "layovers" at the end of a shift. Plaintiffs

claim that Wal-Mart owes them the difference between the layover fee paid by Wal-Mart and the wages that plaintiffs claim should have been paid according to the minimum wage rate required by state law.

Under California law, employers must pay employees at least the minimum wage per hour for all hours worked. "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." The level of the employer's control over its employees, rather than the mere fact that the employer requires the employee's activity, is determinative.

The Court has previously found that the policies stated in Wal-Mart's driver pay manuals subjected drivers to Wal-Mart's control during layover periods. Under California law, the drivers must be paid for all of the time that they were subject to Wal-Mart's control. Therefore, if plaintiffs prove by a preponderance of the evidence that Wal-Mart applied the policy as it is stated in the driver pay manuals, then plaintiffs are entitled to the amount of additional pay that will bring Wal-Mart's payment for each 10-hour layover up to the amount of the minimum wage that was applicable at that time.

> You must limit your calculations to wages for layovers that occurred during the period beginning on October 10, 2005 and ending on October 15, 2015.

The court further gave the following damages instruction:

> If you find for the plaintiffs on the plaintiffs' minimum wage claim, you must determine the plaintiffs' damages. The plaintiffs have the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiffs for any injury you find was caused by Wal-Mart, in accordance with these instructions.
>
> It is for you to determine what damages, if any, have been proved.
>
> Your award must be based upon evidence and not upon speculation, guesswork or conjecture.
>
> In instances where Wal-Mart did not maintain records of the number of times certain work duties were performed or the amount of time it took class members to perform those duties, the plaintiffs can satisfy their burden of proof if they produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. Wal-Mart may dispute

> the reasonableness of the inference to be drawn from the plaintiffs' evidence.

The jury, seemingly confused about the instruction on layovers, asked a question, seeking a "definition regarding Wal-Mart's control during layover period." In response, the court instructed the jury as follows:

> There is no clear definition of control in the California Labor Code. The cases from the California courts have stated that the level of the employer's control over its employees, rather than the mere fact that the employer requires the employees activity, is determinative. To determine if a driver was subject to Wal-Mart's control during the layover, you must determine whether the driver was able to use that time effectively for his or her own purposes.
>
> I will give you two examples from other cases. These involve different factual situations, and they may be helpful to you as guidance only. They may be helpful to you as analogies. The facts in those cases were different from these facts. But here are the two examples.
>
> When an employer directs, commands or restrains an employee from leaving the workplace during his or her lunch hour and thus prevents the employee from using the time effectively for his or her own purposes, the employee remains subject to the employer's control.

> And here is the second example. When agricultural worker employees were required by their employer to meet at designated places to take the employer's buses to work and were prohibited from taking their own transportation, the employees were subject to the control of the employer, although they could read on the bus or perform other personal activities.

Wal-Mart called the supplemental instruction one it "c[ould] live with" because it was "a fair compromise." Following deliberations, the jury returned a verdict for Wal-Mart on seven of the eleven tasks in dispute, and for plaintiffs on four issues. The jury awarded $44,699,766 for layovers, $3,961,975 for rest breaks, $2,971,220 for pre-trip inspections, and $2,971,220 for post-trip inspections.

The district court denied plaintiffs' post-trial motion for liquidated damages and civil penalties. And the court denied Wal-Mart's motions for a new trial and for judgment as a matter of law. This appeal followed.

## II. Discussion

Wal-Mart raises multiple issues, claiming each constitutes reversible error. First, it claims the district court erred by failing to dismiss for lack of jurisdiction. Second, it contends that it was error to award damages to plaintiffs based on layovers, rest breaks, and inspections. Third, it argues that the district court erred in certifying a class. We affirm the district court on all assertions of error raised by Wal-Mart.

Plaintiffs filed a cross-appeal. They contend that the district court erred by denying liquidated damages to

plaintiffs as required under California law. We disagree. As a result, we affirm on the issue of liquidated damages.

*A. Jurisdiction After Stay Was Lifted*

1. *Active Case or Controversy*

We review the district court's ruling on jurisdiction de novo. *Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1122 (9th Cir. 2009).

The district court correctly concluded that this case presented an Article III case or controversy because two lead plaintiffs remained in the action after the stay was lifted.

Wal-Mart argues that any "case or controversy" disappeared because, after the stay was lifted, no named plaintiff remained to represent the class. Thus, Wal-Mart contends the case was moot when the stay was lifted.

Wal-Mart is partially correct. When the stay was lifted, two of the named plaintiffs had died, one of the named plaintiffs indicated that he might no longer be interested in litigating the matter, and plaintiffs' counsel was concerned about whether the fourth named plaintiff could represent the class. And, at that time, the class had not yet been certified, so the putative class members were not parties to the case. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013). But not all named plaintiffs were gone. Two named plaintiffs remained parties to the action when the stay was lifted.

The cases Wal-Mart cites in support of its position are unavailing. For instance, *Reed v. Bowen* is easily distinguished from this case because, in *Reed*, the district court had already determined that the named plaintiffs were

not adequate representatives because they had no stake in the outcome of the litigation. 849 F.2d 1307, 1311 (10th Cir. 1988). Since no adequate named plaintiffs remained in *Reed*, the district court held that the case was moot and refused to certify the class. *Id.* That is not the case here. The district court never found the two remaining named plaintiffs inadequate, and both remaining named plaintiffs continued to have a stake in the outcome of the litigation after the stay was lifted.

Moreover, Wal-Mart would be correct had the remaining plaintiffs voluntarily dismissed their claims before the putative class was certified. *See Employers-Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Anchor Cap. Advisors*, 498 F.3d 920, 924 (9th Cir. 2007). But lethargy does not constitute voluntary dismissal when the lethargic plaintiff continues to have an active dispute with the defendant. Here, plaintiffs continued to have live controversies with Wal-Mart despite one plaintiff's lack of enthusiasm and counsel's concern about the other. The district court correctly refused to dismiss this case for lack of jurisdiction.

2. *Abuse of Discretion*

We do not address whether the district court abused its discretion by permitting pre-certification discovery because Wal-Mart does not argue the issue. In its opening brief, Wal-Mart argues only that the district court lacked jurisdiction to issue the pre-certification discovery order. When an appellant fails to clearly and distinctly raise an argument in its opening brief, this court considers the argument abandoned. *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009). As a result, any argument that the district court abused its discretion in allowing pre-certification discovery was waived.

*B. Liability for Damages Arising from Layovers, Rest Breaks, and Inspections*

Wal-Mart claims that plaintiffs should not have been awarded damages for layovers, rest breaks, and inspections. It advances numerous theories in support of its contention and urges reversal. We address each in turn.

1. *Award of Damages for Layovers*

Wal-Mart advances four arguments in support of its contention that damages should not have been awarded for unpaid layovers. First, it argues that layovers are not compensable as a matter of law because Wal-Mart cannot legally control an employee while he is on a legally-mandated break. Second, it contends that, even if layovers could be compensable, layovers are not compensable here because Wal-Mart did not exercise control over the truckers on layovers. Third, it claims that the district court erred when instructing the jury. Fourth, it argues that the FAAAA preempts California law.

a. *Compensability of Layovers Under California Law*

The district court correctly concluded that, under California law, time drivers spent on layovers is compensable if Wal-Mart exercised control over the drivers during those breaks.

Under California and federal law, truckers must take breaks. 13 Cal. Code Regs. § 1212.5(a); 49 C.F.R. § 395.3(a)(1). During mandatory breaks, drivers may take "sleeper berth" time or "off duty" time. 13 Cal. Code Regs. § 1212(g)(1)(A); 49 C.F.R. § 395.1(g)(1)(i). But the drivers are specifically not "on duty" or "driving"—two other distinct categories under state and federal law—during

breaks. 13 Cal. Code Regs. §§ 1201(u)(4), 1213(c); 49 C.F.R. §§ 395.2, 395.8(b). What's more, time spent on layovers cannot be interrupted; otherwise, the ten-hour rest period begins anew. 13 Cal. Code Regs. § 1212(g)(1)(A); 49 C.F.R. § 395.1(g)(1)(i).

So, must workers be compensated for time spent on legally mandated breaks? Wal-Mart says no. It says that surely the law cannot require a driver to be compensated for periods when state and federal law compel drivers not to work.

Wal-Mart's argument has logical appeal, but it does not follow California law. In California, an employer must pay minimum wages whenever it *controls* the employee. *See* 8 Cal. Code Regs. § 11090. And there is no reason to think that, as a matter of law, an employer cannot exercise control of a trucker even when the driver is taking a legally-mandated break.

Here, the district court identified the appropriate legal standard. The district court determined that "California law . . . requires an additional inquiry: whether the employer exercised control."

In sum, whether an employee deserves pay in California turns on whether the employer exercised control over the employee, not whether the employee is actively working. Thus, Wal-Mart's argument on this point fails.

b. *Control, Partial Summary Judgment, and Factual Sufficiency*

Next, Wal-Mart contends that even if layover time is compensable under California law, it did not exercise control over the truckers here. This contention can be divided into

two primary issues. First, the parties dispute whether the district court erred in granting partial summary judgment for plaintiffs. Second, Wal-Mart argues that there is insufficient evidence to support a finding that it applied these policies in a manner that controlled employees during layovers.

i. *Partial Summary Judgment Based on Wal-Mart's Pay Policy*

Wal-Mart argues that the district court erred by granting partial summary judgment to plaintiffs when the court found that Wal-Mart's policies, as written, would constitute control over employees during layovers. We review the district court's grant of summary judgment de novo. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 639 (9th Cir. 2003).

(a) *Meaning of Wal-Mart's Pay Manual*

Initially, we consider the meaning of the relevant provisions in Wal-Mart's pay manual. Wal-Mart argues that—under a correct reading—the pay manual only "create[s] a requirement to seek prior approval to obtain the $42 for a layover taken at home." Wal-Mart contends that the pay manual does not require employees to seek approval to go home during layovers but instead requires drivers to seek preapproval to obtain the $42 inconvenience payment.

In support of its position, Wal-Mart cites a single provision of the 2008 Driver Reference and Pay Manual. The layover provision says:

> ***LO – Layover Time:***
>
> A *layover* is earned when taking a mandatory DOT break and is not paid in conjunction with any other type of pay. The intent is to

pay Drivers for layovers taken in the tractor cab.

- Any exceptions must be approved prior to the Layover by the GTM, including:
  - Drivers taking a layover at his/her residence
  - Drivers taking a layover not required by hours of service rules

Read in isolation, this provision could support Wal-Mart's argument. Its meaning is sufficiently ambiguous that, if this provision stood alone, interpretation might have been a jury question.

But a more comprehensive review of the Wal-Mart pay manual demonstrates that it unambiguously required drivers to obtain preapproval to take a layover at home. For instance, Wal-Mart's pay manual provides that a break may be taken at home "[o]nly after receiving approval from a member of Transportation management." The manual also states that taking an "[u]nauthorized break at home" is "unacceptable and may lead to immediate termination." These provisions make no mention of the $42 inconvenience fee and instead require drivers to seek preapproval before choosing to take a break at home. Thus, when read comprehensively and in context, Wal-Mart's written policy clearly prohibits drivers from taking a layover at home unless they receive prior approval. Wal-Mart's argument to the contrary lacks textual support.

(b) *District Court's Finding on Control as a Matter of Law*

Next, we consider whether the district court erred when it found that, as a matter of law, the written policies in Wal-Mart's pay manual would amount to an exercise of control over drivers during layover periods if implemented as written. We conclude that the district court correctly determined that Wal-Mart's written policies constituted control as a matter of California law.

Employers in California must pay at least minimum wages to employees for all hours worked, 8 Cal. Code Regs. § 11090, including all the time in which an employer exercises control over the employee, *Morillion v. Royal Packing Co.*, 995 P.2d 139, 143–45 (Cal. 2000). An employee "does not have to be working during that time to be compensated." *Id.* at 143. California courts construe worker-protection laws liberally "with an eye to promoting such protection." *Brinker Restaurant Corp. v. Superior Court*, 273 P.3d 513, 527 (Cal. 2012).

What constitutes control in California is not so clear, but caselaw provides underlying principles. Although an employer may place some constraints on an employee's movement during breaks, control exists if the employer goes too far. *See Augustus v. ABM Sec. Servs., Inc.*, 385 P.3d 823, 832 (Cal. 2016). Thus, an employer may restrict an employee from traveling more than five minutes away from the worksite during a ten-minute break because if she does, she will be unable to return to the worksite before the break ends. *Id.* But control may exist if a worker, although off duty, remains on call. *Id.* 832–33. And if employees face disciplinary action for not responding to an employer during rest breaks, the employer may be exercising control.

*Madera Police Officers Ass'n v. City of Madera*, 682 P.2d 1087, 1088–92 (Cal. 1984).

Moreover, control may exist even when employees are permitted to perform personal activities if the employer imposes meaningful restrictions on the employee. For instance, control was found even when employees were permitted to read for leisure or sleep while being forced to travel on a company bus to a worksite. *Morillion*, 995 P.3d at 146–47.

In short, the question of control boils down to whether the employee may use break or non-work time however he or she would like. *Augustus*, 385 P.3d at 832; *Mendiola v. CPS Sec. Sols., Inc.*, 340 P.3d 355, 360 (Cal. 2015) ("When an employer directs, commands or restrains an employee from leaving the work place and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control."). Even so, this case-specific approach focuses on the level of the employer's control on employees, not necessarily whether the employer requires certain activities. *Mendiola*, 340 P.3d at 360; *Morillion*, 995 P.2d at 146.

Here, the mere fact that Wal-Mart requires its employees to take layovers—as it must, by law—does not indicate that Wal-Mart exercised control over drivers during breaks. Rather, the relevant consideration is the level of control that Wal-Mart exerted over its employees during layovers.

Thus, we look back to the text of the policy. As noted, the written policy required drivers to gain preapproval from management before taking a layover at home. The manual also required drivers to record the break at home and the approving manager on the trip sheet. Finally, drivers could be subject to disciplinary action, up to and including

"immediate termination," for taking an unauthorized layover at home.

Analogous case law supports a finding of control here. Wal-Mart's written policy is similar to the policies that were found to establish employer control in *Morillion*, 995 P.2d 139, and *Bono Enterprises, Inc. v. Bradshaw*, 38 Cal. Rptr. 2d 549 (Cal. Ct. App. 1995), *disapproved on other grounds by Tidewater Marine Western, Inc. v. Bradshaw*, 927 P.2d 296 (Cal. 1996).

In *Morillion*, employees were required to meet at a designated departure point at a set time to ride the employer's buses to work. 995 P.2d at 147. Employees were prohibited from using their own cars and were subjected to verbal warnings and lost wages if they used personal vehicles to travel to work. *Id.* The California Supreme Court found that control existed because—even if the employers could engage in limited activities like sleeping or reading while on the bus—employees "were foreclosed from numerous activities in which they might otherwise engage if they were permitted to travel to the fields by their own transportation." *Id.* at 146.

While Wal-Mart's policy did not contain as strong indicia of control as in *Morillion*, the same logic applies. Wal-Mart's policy restricted drivers' freedom of movement and prevented drivers from making a unilateral decision to spend layovers at home without preapproval. Wal-Mart employees may have been free to leave the truck and engage in personal activities during layovers, but they could not go home. This foreclosed drivers from numerous activities in which they might otherwise engage while on layovers. As a result, employee liberty and freedom of movement was controlled by Wal-Mart.

Similarly, in *Bono*, employees were prohibited from leaving the employer's premises during meal periods, even though they were relieved of their duties. 38 Cal. Rptr. 2d at 551–54. The California Court of Appeal found that employees were under the employer's control during these periods because the policy "prevent[ed] the employee from using the time effectively for his or her own purposes." *Id.* at 553–54.

Here, Wal-Mart's policy established similar restrictions. Wal-Mart's layover policy imposed constraints on employee movement such that employees could not travel freely and avail themselves of the full privileges of a break. For instance, if Wal-Mart's policies were applied as written, drivers may have been free to take a shower or go to a movie while on layovers, but drivers were not free, without receiving permission, to go home to see a pet, to eat a meal at their kitchen table, or to watch television in their own living room.

The dissent argues that the manual's limitation on a driver's ability to take a layover at home may not constitute control as a matter of California law because Wal-Mart's pay manual provides an exception that permits employees to take layovers at home *with permission*. *See* Dis. Op. at 52. In support of that position, the dissent cites *Bono* for the proposition that control may not exist when an employer requires employees to "ma[ke] prior arrangements" to engage in certain activities. *See id.* at 52. It is true that Wal-Mart's policy permits drivers to take layovers at home with permission. Even so, we are aware of no per se rule under California law that control will not be found when an employer creates an exception for employees who receive prior approval to engage in otherwise restricted activities.

Again, the relevant inquiry under California law on control is whether an employee was permitted to use their time as he or she would like. And here, Wal-Mart's written policy prohibited drivers from taking layovers at home without permission. This is not a case where Wal-Mart simply required workers to take lunch or a short break at a certain location. Instead, Wal-Mart required drivers to receive permission to enjoy one of the most fundamental privileges that all employees enjoy—the autonomy to go home when they are not working. In sum, the nature of the restriction matters, and Wal-Mart's restriction requiring drivers to receive permission before taking a ten-hour layover at home prevented drivers from independently choosing to use their time spent on layovers at their own leisure.

Even so, Wal-Mart says its policy did not amount to control under California law. It says control occurs when employers erect prohibitions on employee conduct, not when employers impose additional burdens on employees. And, according to Wal-Mart, the policy simply required employees to ask permission to take a layover at home, it did not outright ban such conduct.

But the prohibition-burden distinction advanced by Wal-Mart finds no support in California law. The key question is whether the employee may use the time spent on layovers for his or her own purposes, not whether the provisions are classified as prohibitions or burdens. If Wal-Mart's policies directed, commanded, or restrained employee conduct, such that drivers were not free to spend layover time as they saw fit, then control existed. Nor, for that matter, does Wal-Mart's prohibition-burden distinction find support in the facts of this case. In requiring its drivers to seek *permission*, rather than merely provide *notification*, before taking a

layover at home, Wal-Mart reserved the right to decline such requests. By retaining that power, Wal-Mart's policy established more than a mere "burden."

Additionally, Wal-Mart argues that drivers were free to leave their trucks as much as they wanted while on layovers, and many of them did. So, Wal-Mart argues that the district court erred because the question of whether Wal-Mart controlled the physical location of drivers on layovers was a disputed question of fact. But the district court did not determine that Wal-Mart in fact controlled the physical location of drivers on layovers. All the district court said was that the policy, *if applied as written*, amounted to control. The district court submitted the question of whether Wal-Mart *in fact* applied the written policy to the jury. As such, Wal-Mart was permitted to make the argument that it did not in fact control the physical location of its drivers at trial—notwithstanding the district court's partial summary judgment ruling on the written policy.

In conclusion, the district court correctly concluded that Wal-Mart's policies, if applied as written, resulted in Wal-Mart's exercising control over employees during mandated layovers. Whether the written policies constituted control was a question of law that the district court had the authority to resolve at the summary judgment stage. Wal-Mart's written policy gave the company control over whether drivers could go home during a layover period. Additionally, drivers that took an unauthorized layover at home were subject to disciplinary action, including potential termination. As such, Wal-Mart's policy dictated what drivers could do on layovers and restricted employees from complete freedom of movement during breaks. As a result, the district court correctly concluded that Wal-Mart's

written policy—if implemented as written—constituted control under California law.

ii. *Jury Instructions*

We next consider whether the district court committed reversible error based on the jury instructions pertaining to layovers. The district court properly instructed the jury because the initial instruction on layovers and the supplemental instruction in response to a jury question—when viewed as a whole—fairly and accurately covered the issues, correctly stated the law, and were not misleading or prejudicial.

In reviewing jury instructions, we do not employ a line-by-line examination. Instead, we use a practical approach, focusing on whether "in the light of the issues and viewed as a whole," the instructions "were complete, clear, correct, and adequate." *Mueller v. Auker*, 700 F.3d 1180, 1193 (9th Cir. 2012). So long as the instructions "fairly and adequately cover the issues presented, correctly state the law, and are not misleading," no error will have occurred. *Brewer v. City of Napa*, 210 F.3d 1093, 1097 (9th Cir. 2000).

Wal-Mart argues that the district court's initial instruction on layovers was prejudicial and requires reversal. The district court instructed the jury, in relevant part, that "[t]he [c]ourt has previously found that the policies stated in Wal-Mart's driver pay manuals subjected drivers to Wal-Mart's control during layover periods." Contrary to Wal-Mart's assertion, this instruction was not erroneous. As discussed above, the district court correctly found that Wal-Mart's pay manuals, if applied as written, subjected drivers to Wal-Mart's control during layover periods. Both on summary judgment and in its instruction to the jury, the district court limited its finding of control to the language of

the pay manuals alone. The district court never told the jury that Wal-Mart's conduct in fact amounted to control.

The district court properly left to the jury the question of whether Wal-Mart had in fact applied its written layover policy. Later in the initial layover instruction, the court informed the jury that "if plaintiffs prove by a preponderance of the evidence *that Wal-Mart applied the policy as it is stated in the driver pay manuals*, then plaintiffs are entitled to the amount of additional pay that will bring Wal-Mart's payment for each 10-hour layover up to the amount of minimum wage that was applicable at that time." (emphasis added). This part of the instruction provided an accurate statement of the applicable legal standard and instructed the jury that it was for them to decide whether Wal-Mart had applied its written policies as stated in the driver pay manual. As a result, the district court's initial layover instruction—when viewed as a whole—fairly and adequately covered the issues, was not misleading, and accurately stated the law and the district court's earlier summary judgment ruling.

Still, even if the initial layover instruction was erroneous, the supplemental instruction that was issued in response to a jury question provided an accurate statement of the law and cured any defects in the initial instruction. The jury question sought a "definition regarding Wal-Mart's control during layover periods." In response, the district court correctly informed the jury that "[t]here is no clear definition of control in the California Labor Code," but that, "cases from California courts have stated that the level of the employer's control over its employees, rather than the mere fact that the employer requires the employees['] activity, is determinative." The court went on, saying, "[t]o determine if a driver was subject to Wal-Mart's control during the layover, *you must determine* whether the driver was able to

use that time effectively for his or her own purposes." (emphasis added). Thus, the supplemental instruction correctly stated California law on the doctrine of control and informed the jurors that it was *their responsibility* to determine whether Wal-Mart controlled its drivers during layovers.

Ultimately, the initial jury instruction on layovers, paired with the supplemental jury instruction on control under California law, provided a complete, clear, accurate, and adequate statement of the applicable law on layovers. The district court accurately informed the jury that it had previously found that the provisions in Wal-Mart's pay manual would subject drivers to Wal-Mart's control. Still, the district court's instructions made clear that it was for the jury to decide whether Wal-Mart implemented the written policies. As a result, the district court committed no error when instructing the jury on layovers.

iii. *Factual Sufficiency*

Now, we address Wal-Mart's next grievance regarding layovers: How, on this record, were drivers subject to Wal-Mart's control during layovers? Wal-Mart argues that there was insufficient evidence for the jury to find that Wal-Mart had exercised control over its drivers. We disagree.

Fact finding is normally left to the jury. U.S. Const. amend. VII. This court will not typically disturb a jury's factual findings. *See Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). When substantial evidence supports the verdict, it should be upheld. *Id.* And all that substantial evidence requires is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Id.*

Wal-Mart urges this court to overturn the jury's verdict. To that end, Wal-Mart notes that trial evidence showed that some drivers slept in hotels or at home during layovers, some went to the movies, a few went to restaurants, or took long walks, and others visited family or went sightseeing. Wal-Mart says that hardly amounts to control.

If that were the only evidence in the record, Wal-Mart might be right. But the record also contained substantial countervailing evidence that a reasonable jury could have credited. Several drivers testified that they understood that they were required to sleep in the truck on layovers and were supposed to seek permission to sleep elsewhere. Additionally, drivers testified that they were under the impression that they were not allowed to consume alcohol, could not carry a personal weapon, had to seek authorization to have a guest in the tractor, and were not allowed to have a pet in the cab during a layover. That evidence is enough to support a finding that Wal-Mart controlled drivers on layovers.

Wal-Mart points to conflicting evidence that was presented at trial, but that is not dispositive. It is "within the province of the jury" to hear disputed testimony and resolve inconsistencies. *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002). As such, the jury was responsible for weighing conflicting evidence and reaching a factual conclusion.

Additionally, Wal-Mart's argument that factors such as prohibitions on alcohol use and having pets in the cab should not have been considered is inconsistent with California law. *See Mendiola*, 340 P.3d at 360 (finding that employer restrictions on "nonemployee visitors, pets, and alcohol use" were relevant to determining control).

In sum, the jury's factual finding, that Wal-Mart exercised control over its drivers under California law, is supported by substantial evidence. As a result, we will not disturb its determination.

c. *Preemption*

Lastly, we consider Wal-Mart's contention that the FAAAA preempts California law. The FAAAA expressly preempts state laws "related to a price, route, or service of any motor carrier." 49 U.S.C. § 14051(c)(1). Wal-Mart argues that the district court's ruling would require companies to pay minimum wages for layovers in California—something that surely affects prices, routes, and services.

But we can quickly dispense with that argument. In *Dilts v. Penske Logistics, LLC*, this court held that the FAAAA does not preempt California meal and rest break laws. 769 F.3d 637, 647 (9th Cir. 2014). Wal-Mart argues that *Dilts* does not control because here, unlike in *Dilts*, "an actual conflict between state and federal law" exists. As plaintiffs point out, however, California law and federal law do not conflict here because federal law says nothing about states requiring employers to pay workers that are under the employer's control while on break. Like the meal and rest break laws in *Dilts*, California laws governing layovers "do not set prices, mandate or prohibit certain routes, or tell motor carriers what services that they may or may not provide, either directly or indirectly." 769 F.3d at 647. Thus, "even if employers must factor [state wage and hour laws] into their decisions about the prices they set, the routes that they use, or the services that they provide," the FAAAA does not preempt those laws. *Id.* at 646. As such, no preemption exists here.

2. *Award of Damages for Rest Breaks and Inspections*

Plaintiffs were also awarded damages for not being paid minimum wages during rest breaks and inspections. After considering California law, we conclude that the district court judgment on damages for rest breaks and inspections must be affirmed.

Wal-Mart claims that it does not owe damages for failure to pay minimum wages for rest breaks and inspections—after all, drivers made more than $80,000 per year, and some made six-figure salaries. Thus, Wal-Mart claims that no matter how many hours that drivers worked, they must have received minimum wages based on total compensation.

Moreover, Wal-Mart contends that its system did pay drivers for rest breaks and inspections. According to Wal-Mart, these tasks were built in to the pay plan because rest breaks and inspections occurred during an hour when the driver was already compensated above minimum wage and the tasks were "directly related" to other tasks for which the drivers received compensation.

Plaintiffs say otherwise. The drivers say that they received pay for certain specific activities, and rest breaks and inspections were excluded. They note that, under California law, all time worked must be accounted for in the compensation scheme. In other words, an employer is not permitted to take a worker's entire salary—even if it is six figures—and divide it by the number of hours worked to ensure that minimum wage was paid for all activities. So, plaintiffs say, if Wal-Mart paid truckers for some activities, but not specifically for rest breaks and inspections, it violated California minimum wage law.

Wal-Mart's argument may have some logical appeal, but it lacks support in California law. In California, "[t]he averaging method utilized by the federal courts for assessing a violation of federal minimum wage law does not apply." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (Cal. Ct. App. 2005). As mentioned in the layover context, an employer must pay an employee for all "hours worked," including "the time during which an employee is subject to the control of an employer." 8 Cal. Code Regs. § 11090.

Plaintiffs argue that Wal-Mart's pay structure impermissibly averaged a trucker's pay within a single hour, when it should have provided separate compensation for rest periods. *See Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872 (Cal. Ct. App. 2013). Under California law, plaintiffs are correct.

A brief review of Wal-Mart's pay manual is instructive. Wal-Mart used an activity-based pay system that compensated drivers for (1) miles driven, (2) "activity pay," which included arriving at a location, departing, and hooking a new trailer to the truck, and (3) hourly pay for limited events like waiting at a store or supplier, delays due to inclement weather, or delays caused by a truck breakdown. Wal-Mart argues that pay for rest breaks and inspections was subsumed into activity pay because rest breaks and inspections were performed in conjunction with other activities that were included in activity pay.

But Wal-Mart may not meet rest period or inspection payment requirements by "borrowing" from other compensation sources, such as an hourly rate or mileage payment. *See id.* Indeed, arguments that a pay plan includes in its calculation "the time [employees] spent taking rest breaks . . . misinterpret[s] California law." *Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98, 114 (Cal. Ct.

App. 2017). For instance, in *Vaquero*, the California Court of Appeal ruled an employer's compensation system failed to properly pay for rest periods when the system "did not include any component that directly compensated sales associates for rest periods." *Id.*

That is not to say that Wal-Mart could never incorporate payments for multiple tasks in activity codes. And we need not decide as much. Here, all the district court found was that California law prohibited Wal-Mart from subsuming time spent on rest breaks and inspections into the "activity pay" component of the pay structure because that would not separately pay workers for all the time worked.

For example, if, in a given hour, a trucker drove for forty-five minutes and was paid a mileage rate that would otherwise meet the state's minimum wage requirement for a full hour, Wal-Mart may not have that driver take a fifteen-minute break and provide no additional compensation for the break just because that driver had already received a minimum wage in the first forty-five minutes of the hour. That would constitute improper borrowing and averaging under California law. *Bluford*, 216 Cal. App. 4th at 872; *Armenta*, 135 Cal. App. 4th at 323.

No doubt, sometimes several tasks like rest breaks and inspections could fall under a general provision in the pay plan. But, to comply with California law, Wal-Mart would have to pay drivers for certain activity codes that include those tasks. Here, the pay manual is silent on rest breaks and inspections.

Next, Wal-Mart takes aim at the jury instructions on pay for rest breaks and inspections. As in the layover context, the district court commented on the permissibility of the policy stated in Wal-Mart's pay manual, but left to the jury

the factual question of whether Wal-Mart in fact applied its pay policy with respect to rest breaks and inspections. Wal-Mart says it was prejudiced by the jury instructions.

But Wal-Mart's argument fails because the challenged instructions were not misleading. Instruction No. 17's statement that Wal-Mart's policy did "not separately specify pay for rest breaks" was accurate. Wal-Mart does not dispute that the pay manual was silent on pay for rest breaks. Moreover, the instruction directed the jurors to find for plaintiffs only if they found (1) "that class members took rest breaks," and (2) "that Wal-Mart applied the policy as it is stated in the driver pay manuals, *such that minimum wage was not earned for rest breaks*." (emphasis added). Additionally, Instruction No. 15 informed the jury that a written plan or policy "does not itself establish whether someone was paid minimum wage," and that "plaintiffs must still prove" that Wal-Mart failed to pay minimum wages. That instruction also specified that Wal-Mart could "pay drivers for certain tasks through activity codes that include those tasks." As a result, considered in totality, the jury instructions on rest breaks were neither erroneous nor prejudicial because the court correctly informed the jury that plaintiffs had to prove that Wal-Mart failed to pay minimum wages for rest breaks.

Wal-Mart's challenge to the jury instructions on pay for inspections also fails. Wal-Mart claims that the court's instructions were prejudicial because they referred to prior court orders, which suggested that the court had already determined that Wal-Mart violated the law. But, while the court did correctly inform the jury that it had found that the pay manuals violated California wage laws, the court also informed jurors that it was their responsibility to determine whether Wal-Mart had in fact applied the policies as written.

As a result, when considered in totality, the jury instructions on inspections provided an accurate statement of the law.

Lastly, Wal-Mart argues that the court erred by failing to include language—based on Cal. Lab. Code § 226.2—that an employer need not pay for tasks that are "directly related" to other compensable tasks. The relevant statutory language provides that employees "shall be compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation," with "nonproductive time" defined as "time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a piece-rate basis." Cal. Lab. Code § 226.2(a)(1). But the district court did not err by refusing to include this instruction because, as the district court noted, the Code section with the "directly related" language did not take effect until January 1, 2016, after the close of the class period.

*C. Class Certification and Damages*

Wal-Mart further argues that plaintiffs' classwide damages proof ran outside of what the law allows. Indeed, Wal-Mart argues that plaintiffs' expert on damages—Dr. Phillips—should not have been permitted to testify at all, and in any event, that his testimony failed to show classwide damages.

Representative evidence is nothing new. Courts allow it in certain circumstances, but plaintiffs do not have free rein in using such evidence. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046–49 (2016). Thus, we must decide whether representative evidence was properly used in this case.

Initially, Wal-Mart attacks Phillips because it says his methodology was improper and his conclusions were not representative. Wal-Mart says that truckers differed on how much time they spent on rest breaks, completing inspections, and on layovers. Wal-Mart contends that these variations mean that plaintiffs cannot use representative testimony to prove the elements of their case, including damages.

The portion of Wal-Mart's attack that focuses on liability is unpersuasive. As we have already discussed, substantial evidence supported the jury's finding that Wal-Mart was liable for not paying minimum wages in accordance with California law. Wal-Mart continues to dispute this by pointing to the range of activities that truckers engaged in while on layovers. But that evidence was submitted to the jury, and the jury found for plaintiffs on the issues of pay for layovers, rest breaks, and inspections. Once the jury found that Wal-Mart owed minimum wages to drivers for layovers, rest breaks, and inspections, the varying amount of time truckers spent doing these tasks went to the question of damages.

Wal-Mart's argument is more compelling on the issue of damages. It argues that, given the broad range of experiences among drivers, Phillips's testimony and other evidence could not prove classwide damages. For example, some truckers took shorter rest breaks than others. Some inspections took longer than others. Variation abounded.

It is true that "the 'amount of damages is invariably an individual question,'" but that "does not defeat class action treatment." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). Time and time again, this court has reaffirmed the principle that the need for individual damages calculations

does not doom a class action. *Id.*; *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *Yokoyama*, 594 F.3d at 1094. The Supreme Court's ruling in *Tyson Foods* "has not disturbed our precedent." *Vaquero*, 824 F.3d at 1155. Thus, to the extent that Wal-Mart argues that different damages calculations require reversal, we reject that argument based on our precedent. Still, plaintiffs must prove their damages. So next we address whether plaintiffs proved damages through representative evidence.

*Tyson Foods* serves as a starting point for our analysis. There, employees claimed their employer owed overtime pay for time employees spent donning and doffing protective gear. 136 S. Ct. at 1043. Of course, it might take one employee longer to put on protective gear than others. So how could one determine how much overtime the employer owed each employee? That's where representative evidence came into play. *Id.* at 1046. In *Tyson Foods*, the Supreme Court allowed class members to use representative evidence to prove their claims, even though some individual issues might arise. Statistical examples, the Court explained, are a means of proving a case. *Id.* Of course, representative evidence and statistical evidence are not always proper. These types of evidence are only permissible when "the evidence is reliable in proving or disproving the elements of the relevant cause of action." *Id.*

Wal-Mart argues that Phillips's testimony fails under *Tyson Foods* because the testimony is not something that "could have sustained a reasonable jury finding as to hours worked" if the drivers had brought individual actions. *See id.* at 1046–47. That's so, according to Wal-Mart, because the named plaintiffs testified to varying hours during which they took rest breaks and completed inspections. For

example, Plaintiff Gonzalez testified his inspections took between seven and ten minutes. Thus, Wal-Mart asks how Gonzalez could have used Phillips's fifteen-minute average if Gonzalez had brought an individual action. Wal-Mart contends that he could not have, so the representative evidence fails.

Not exactly. First, *Tyson Foods* tells us that representative evidence "include[s] employee testimony, video recordings," and expert studies. 136 S. Ct. at 1043. So testimony from Wal-Mart drivers can amount to representative evidence. *See Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 748–49 (6th Cir. 2019) (approving of employee testimony as a form of representative evidence in a wage and hour collective action); *Monroe v. FTS USA, LLC*, 860 F.3d 389, 401 (6th Cir. 2017) (holding that *Tyson Foods* did not limit representative evidence to studies). Here, many plaintiffs testified about the length of their rest breaks and inspection time. In a class action, testimony alone may serve as the basis for classwide damages.

Wal-Mart argues that there is no reason to think the testimony from plaintiffs was representative, but it does not tell us why. And if Wal-Mart believed the testimony was not perfectly representative, its recourse was to present that argument to the jury. Indeed, Wal-Mart did argue to the jury that it couldn't properly extrapolate from plaintiffs' representative evidence to the hundreds of absent class members, and the jury rejected that position. Ultimately, as the district court held, Wal-Mart's problem with Phillips's testimony went to weight, not to admissibility.

Second, there is no reason to think that Gonzalez or other plaintiffs with shorter rest breaks or inspections times could not use the evidence submitted by Phillips if they had

brought individual actions. Wal-Mart says such plaintiffs "would have no reason to rely on an assumption" about rest breaks "because they had their *own* evidence." But why not? Phillips's testimony would strengthen and corroborate all plaintiffs' claims that they were not paid when they should have been.

Wal-Mart's position would mean that anytime an individual plaintiff testified about an estimate of how long he or she worked and was not paid, representative samples would be improper. That cannot be squared with *Tyson Foods*, which included time variants "alleged to be upwards of 10 minutes a day" among class members. *Id.* at 1047.

Representative evidence may include the testifying plaintiffs, who provided ample evidence for a fifteen-minute average rest break. The use of Phillips's sample is consistent with *Tyson Foods*, because each individual plaintiff could have used that information in an individual action. *Id.* at 1046–47.

Nor does Phillips's testimony present any methodological flaw. Phillips based his information on Wal-Mart's own electronic payroll data, questionnaires from forty random members of the class, hard copies of payroll documents, data from 1,200 DOT inspections, a driver log database, a trip detail database, a GPS database, and more. Wal-Mart had ample opportunity to cross-examine Phillips, call its own expert, or present other evidence. In the end, the jury credited the evidence presented by plaintiffs. And because this is a case in which "a representative sample is 'the only practicable means to collect and present relevant data'" to show damages, such representative evidence was properly admitted. *Id.* at 1046 (quoting Manual of Complex Litigation § 11.493, p. 102 (4th ed. 2004)).

For instance, consider layovers. For those, Phillips simply took Wal-Mart's data showing when *each class member* was paid $42 for the layover and subtracted that from what Wal-Mart would have paid if drivers received minimum wages. Phillips calculated damages based on "every individual class member for whom [he] had electronic records." In other words, Phillips's damages calculation as to layovers entailed little to no extrapolation—it involved looking at records for each class member. Yes, Wal-Mart argues that it did not "control" drivers during layover periods because drivers could—and did—engage in many types of activities. But that point goes to liability, not damages.

As for inspections, all agree that pre-trip and post-trip inspections occurred each workday. The DOT requires such inspections. Thus, Phillips could determine how many inspections were done by simply counting each day that each class member drove for Wal-Mart. Wal-Mart notes that Phillips testified about an average fifteen-minute inspection time, but argues that nothing supported that number. For instance, drivers may have taken five minutes or seven minutes to complete inspections. According to Wal-Mart, nothing in the data—or representative testimony—provides an answer.

Wal-Mart's argument misses the mark. Drivers need not prove that they all took the same time to complete required inspections. All that is required is enough representative evidence to allow a jury to draw a reasonable inference about the unpaid hours worked. *Id.* at 1047–49. Here, plenty of evidence supported the fifteen-minute determination. For example, the jury considered evidence from forty class member deponents, a Wal-Mart training video, and Wal-Mart manager depositions. Phillips testified that he used the

depositions and surveys of class members to get the average of fifteen-minute inspections. Not only that, but Phillips calculated how much Wal-Mart would owe for each single minute per inspection. Thus, the jury did not have to accept Phillips's fifteen-minute inspection calculation. But the jury had ample evidence to do so. Again, Phillips's sample was concerned with the amount of damages, "not the fact that damages are due." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 915 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005).

The same is true for rest breaks. Despite variations, which are common in class action damage calculations, introduction of the representative sample and representative testimony was proper because plaintiffs had no other practicable way to prove how much Wal-Mart owed them. *Tyson Foods*, 136 S. Ct. at 1046–48. And plenty of evidence supported the jury's conclusion.

In the end, the district court properly admitted representative testimony and the representative sample. Wal-Mart's quarrel with the jury's finding on liability is misplaced. The jury weighed evidence presented by the parties and found for plaintiffs on layovers, rest breaks, and inspections. Phillips's sample, surveys, Wal-Mart's data, and testimony from the named plaintiffs provided ample evidence regarding the extent of classwide damages. Thus, the district court did not err in certifying a class and allowing representative evidence as proof of classwide damages—including Phillips's testimony and sample.

*D. Cross Appeal on Liquidated Damages*

In a cross appeal, plaintiffs argue that the district court erred in denying liquidated damages. Under California law, aggrieved employees are entitled to liquidated damages when an employer is found to have unlawfully withheld

wages, unless the defendant employer shows it acted in good faith and with a reasonable belief in the legality of its conduct. Cal. Lab. Code § 1194.2. Thus, the question is whether Wal-Mart can show good faith and a reasonable belief in the legality of its conduct. When considering this question, the district court did not limit Wal-Mart to the evidence it presented at trial. Instead, the district court allowed Wal-Mart to present information that was not before the jury and determined that Wal-Mart need not pay liquidated damages.

Plaintiffs argue that the district court erred in considering post-trial declarations that amounted to hearsay from witnesses that plaintiffs did not get to cross-examine. But plaintiffs cite no authority that such evidentiary rules apply. And limiting review to only evidence presented at trial would require defendants to anticipate losing at trial by presenting their good faith and reasonableness arguments for potential post-trial liquidated damages motions. We reject that position.

The district court concluded that Wal-Mart acted reasonably and in good faith. As to good faith, the district court determined that Wal-Mart believed its pay policy complied with California minimum wage law. For example, the court noted that Wal-Mart drivers were among some of the highest paid drivers in the industry. The court also concluded that Wal-Mart had low attrition rates and paid discretionary pay when drivers unexpectedly fell short of daily averages. And for seven activities, the jury found in Wal-Mart's favor. Additionally, Wal-Mart eventually changed its pay policies to comply with California law. Finally, at least one California district court previously found claims parallel to those presented here to be preempted by the FAAAA. *Ortega v. J.B. Hunt Transport*,

*Inc.*, No. 2:07-cv-08336-BRO-SH, 2014 WL 2884560, at *5–6 (C.D. Cal. June 4, 2014), *vacated and remanded*, 694 F. App'x 589 (9th Cir. 2017). While we reject that interpretation, as did the court below, *Ortega* lends some credibility to Wal-Mart's assertion of good faith.

Still, plaintiffs argue that Wal-Mart failed to meet its burden. They contend that the key inquiry is not whether Wal-Mart had generally laudable pay practices. Instead, plaintiffs say that the proper inquiry is whether Wal-Mart acted in good faith and with reasonable belief in the legality of its actions based on its employment practices pertaining to layovers, rest breaks, and inspections, not general pay practices. That is because the statute says an employer must show that the "act or omission giving rise to the action was in good faith." Cal. Lab. Code § 1194.2(b). Thus, plaintiffs contend that most of what the district court relied on—including Wal-Mart's general pay practices—was not relevant to whether Wal-Mart acted in good faith and with a reasonable belief as to pay for layovers, rest breaks, and inspections.

But here—even if the district court relied on some irrelevant information—there is enough evidence to support the district court's finding that Wal-Mart acted in good faith and with a reasonable belief in the legality of its actions. Several Wal-Mart pay practices indicate an effort, albeit an imperfect one, to comply with California law. And the bounds of permissible conduct were, at least during the class period, somewhat murky. As the district court noted, even though some California cases are instructive, those cases are not conclusive on whether Wal-Mart's pay policies were reasonable under California law. For example, there is no clear definition of what constitutes employer control under California law. As a result, we cannot say that Wal-Mart did

not act with a reasonable belief in the legality of its actions, even though we affirm the finding for plaintiffs on liability.

In sum, the district court did not err in finding that Wal-Mart acted in good faith and with a reasonable belief in the legality of its action, and we affirm its determination as to liquidated damages.

**III. Conclusion**

Wal-Mart and plaintiffs propose several bases for reversal in this admittedly complex case, but ultimately none holds water. Following over a decade of litigation, a robust motions practice, and a sixteen-day trial, we conclude that the judgment should stand.

Appellees' motion for judicial notice of certain materials from the legislative history of two provisions of the California Labor Code is **GRANTED** and the district court is **AFFIRMED**.

---

O'SCANNLAIN, J., concurring in part and dissenting in part:

I concur in all of the majority's opinion except for Part II.B.1.b, in which the court affirms the finding of liability against Wal-Mart for its failure to compensate drivers for time spent during layover periods. Specifically, I cannot agree with the majority's conclusion that the district court correctly granted partial summary judgment to the plaintiffs when it found that Wal-Mart's written pay policies necessarily establish that the company "controlled" drivers during their layover breaks. In my view, the jury should have been allowed to decide the meaning of these ambiguous

policies and the extent to which the policies actually "control" what drivers may do and where they may go.

For the reasons expressed herein, I respectfully dissent from the "layover periods" portion of the majority's opinion.

I

As required by both state and federal law, Wal-Mart's long-haul truck drivers must take ten-hour breaks—so-called "layovers"—between each of their driving shifts. *See* 49 C.F.R. § 395.3(a)(1); Cal. Code Regs. tit. 13, § 1212.5(a). During this time, drivers formally are not on duty, and they may not drive or perform other work for Wal-Mart. *See* 49 C.F.R. §§ 395.2, 395.8(b); Cal. Code Regs. tit. 13, §§ 1201(u)(4), 1213(c). Trucks are equipped with sleeper berths to allow drivers to rest during their layovers, though testimony in this case indicates that drivers actually spent time performing a variety of activities including visiting family, exercising, eating, golfing, or even visiting casinos.

One of the principal claims in this case is that, under California law, Wal-Mart was required—but failed—to pay drivers minimum wage during their layover periods. The validity of that claim ultimately turns on whether Wal-Mart exercised "control" over its drivers during such periods, within the meaning of California employment law. If so, Wal-Mart needed to pay drivers minimum wage for their layover time; if not, no compensation was required. *See* Cal. Code Regs., tit. 8 § 11090(2)(G). At summary judgment, the district court found that, at least as a matter of written policy, Wal-Mart did purport to control its drivers during their layovers. The court entered partial summary judgment in the plaintiffs' favor on this issue, finding that "the policies in

[Wal-Mart's] Driver Pay Manuals subjected drivers to Wal-Mart's control during layover periods."

In light of this ruling, at trial the issue of whether Wal-Mart was required to pay its drivers during layover periods was reduced to the question of whether Wal-Mart actually implemented these written policies. In its jury instructions, the court restated its finding of fact that the policies expressed in the pay manuals "subjected drivers to Wal-Mart's control during layover periods" and instructed the jury to find in favor of the plaintiffs if they proved "that Wal-Mart applied the [layover] policy as it is stated in the driver pay manuals." If it believed Wal-Mart did indeed apply its own written policies, the jury was instructed to award pay to compensate the plaintiffs for the full length of each 10-hour layover period.

Ultimately, the jury found that Wal-Mart owed drivers more than $44 million in unpaid wages for layover time.

II

The core problem with the jury's finding is that the district court's earlier entry of partial summary judgment short-circuited the entire layover-periods question. Although Wal-Mart's written pay policies *might* be understood to assert control during layover periods, that was a genuinely disputed question of fact, which should have been presented to the jury to decide. By instead answering that question itself, the district court prejudiced Wal-Mart in its ability to defend the lawfulness of its own company policies and practices.

A

Under California law, an employer must pay minimum wage for all time "during which an employee is subject to the control of an employer." Cal. Code Regs. tit. 8, § 11090(2)(G). Under this test, an employee "does not have to be working during that time to be compensated." *Morillion v. Royal Packing Co.*, 995 P.2d 139, 143 (Cal. 2000). Even during a break period, an employee might remain under control of his or her employer if the employer imposes requirements that prevent the employee from spending "truly uninterrupted time" at his or her pleasure. *Augustus v. ABM Sec. Servs., Inc.*, 385 P.3d 823, 833 (Cal. 2016). While an employer may freely impose reasonable restraints like requiring employees to remain on site during short breaks, it must compensate employees for break periods if it imposes more severe restrictions that effectively prevent the employee from spending the time as he or she might wish, such as by requiring the employee to remain on-call or preventing him or her from leaving the worksite for extended periods of time. *See id.* at 832–34.

Against this backdrop, the district court ruled that the terms of Wal-Mart's 2008 pay manual necessarily established the company's control over drivers during their layover periods. Such manual, however, says very little about what a driver may or may not do during a layover. The parties agree that Wal-Mart paid drivers a $42 "inconvenience fee," at least for layovers they spent in the sleeper berths of their trucks and away from home. The pay manual reinforces this payment but says little else about how a layover must be spent. The manual specifies that layover time is "not paid in conjunction with any other type of pay," but instead is a standalone pay category "inten[ded] . . . to pay Drivers for layovers taken in the tractor cab." The

manual further emphasizes that drivers "will not be compensated for a DOT [layover] break if *any portion of it* is taken at home." In addition to forgoing the $42 payment, in order to "take a [layover] at home" a driver must receive a manager's prior approval, safely and securely park his or her tractor and trailer, and record the break at home (and the manager's approval) on his or her time sheet. Taking an unauthorized layover at home is prohibited and "may lead to immediate termination."

Altogether, then, Wal-Mart's written policy establishes essentially two relevant restrictions on drivers' layover time: (1) they will receive a $42 payment only if the layover is spent "in the tractor cab," and (2) if they wish to take the layover at home, they must receive a manager's approval and lock the truck in a safe location. The district court and the majority seize on these basic restrictions to conclude that, because drivers were not *completely* free to spend their layovers at home without management approval, they must have been subject to Wal-Mart's control during that time. But none of these requirements establishes control as a matter of California law.

1

First, there can be no serious argument that the offer to pay drivers $42 for a layover taken in the truck constitutes "control" over them.

The $42 payment is simply a gratuitous offer on Wal-Mart's part—what the company asserts is a benefit to alleviate the inconvenience of spending a layover in the driver's truck. That benefit is not paid when the driver instead chooses to spend the layover in a more convenient location like his or her home, a friend's house, a hotel, or elsewhere. We have previously recognized that employers

in California are free to impose such reasonable limitations on benefits like this. In *Rodriguez v. Taco Bell Corp*, for example, we recently held that Taco Bell did not exert control over its employees by offering them a discounted lunch, but only if they ate in the store itself. 896 F.3d 952, 956 (9th Cir. 2018). We explained that employees were free to forgo the meal discount and eat their lunch anywhere else; the fact that the restaurant required them to stay onsite to receive the gratuitous benefit did not inhibit their freedom of choice. *See id.* at 956–57. The same is true about the $42 inconvenience fee here.

2

Second, the manual's limitations on a driver's ability to spend a layover at home do not, as a matter of law, establish "control."

The majority suggests that these restrictions effectively direct where drivers are required to be during their layover periods. It analogizes Wal-Mart's policy to two cases in which employers were found to have exercised control by requiring their employees to spend downtime at specified locations. *See* Maj. Op. at 23–24. In *Bono Enterprises, Inc. v. Bradshaw*, for example, the California Court of Appeal held that an employer was required to compensate its employees during lunch breaks in which the employees were prohibited from leaving the worksite. *See* 32 Cal. App. 4th 968, 975–76 (1995), *disapproved on other grounds by Tidewater Marine W., Inc. v. Bradshaw*, 927 P.2d 296 (Cal. 1996). Likewise, in *Morillion v. Royal Packing Co.*, the California Supreme Court held that an employer controlled its employees by requiring them to meet at a designated place and then ride employer-provided buses to the fields in which they worked. 995 P.2d at 147. The California Supreme Court held that, even though employees could pass

the time on the bus as they saw fit (for example by reading or sleeping), they were still under the employer's control during that time, because they "were foreclosed from numerous activities in which they might otherwise engage if they were permitted to travel . . . by their own transportation," such as dropping their children at school, stopping for breakfast before work, or running other errands. *Id.* at 146.

The limited restrictions expressed in Wal-Mart's pay manual are a far cry from those in *Bono* or *Morillion*. In both *Bono* and *Morillion*, the employees were prohibited from being *anywhere other than* a location specifically directed by the employer. Here, by contrast, Wal-Mart's pay manual says almost nothing about where drivers can go or what they can do during a layover. At most, the policy places certain restrictions on a driver's ability to pass the layover at home. Such restrictions hardly amount to the sort of control recognized in *Bono* or *Morillion*. First, it is not clear that (as the majority suggests) Wal-Mart's pay manual prevents drivers from even *visiting* their homes. If drivers take any portion of their layover at home, they don't get the $42 convenience fee. But it is not clear that the policy generally requiring authorization prior to "taking" a layover at home, also means drivers needed permission to visit a nearby home even briefly, for example to eat a meal or change clothes. More to the point, the policy says nothing at all about a driver's freedom to spend layover time anywhere else. The majority points to nothing in the policy that would preclude a driver from visiting a friend, going to see a movie, going to a bar or restaurant, shopping, running errands, and so forth. Unsurprisingly, drivers testified at trial that they did—and that they understood they were *permitted* to do—exactly these sorts of things during layovers.

Moreover, the majority glosses over the fact that Wal-Mart's pay manual expressly *allows* employees to take their breaks at home as well, so long as they receive prior approval. Requiring approval before engaging in certain activities does restrict employees' ability to do those activities in some way. But it hardly prevents them. Again, the contrast to *Bono* and *Morillion* is instructive. In both cases, employers enforced policies that simply prohibited—without any apparent exception—employees from straying from their directed areas. *See Morillion*, 995 P.2d at 141 & n.1; *Bono*, 32 Cal. App. 4th at 978 n.4. Indeed, in *Bono* the court wrote that the employer would *not* have exerted control over its employees if had permitted them to "ma[ke] prior arrangements" to leave the worksite for lunch. *See* 32 Cal. App. 4th at 978 n.4. The court observed that the lack of such a policy was "extremely significant" to its conclusion that the on-site lunch breaks required compensation. *Id.* Here, in direct contrast, the manual expressly informs drivers that they may spend breaks at home, so long as they receive prior approval and secure the truck while they will be away.

Just as in *Bono*, the availability of a policy allowing drivers to make prior arrangements to spend a layover at home should be "extremely significant" to our interpretation of the pay manual and the extent to which it purports to control drivers' activities. But instead of actually grappling with how such a policy might reduce the degree to which the manual restrains drivers' ability to go home, the majority instead quickly dismisses its relevance because the manual implicitly "reserved [Wal-Mart's] right to decline" a driver's request to take a layover at home. Maj. Op. at 25–26. The manual itself says nothing about the grounds on which such a request might be declined. Yet, the majority appears to assume the worst, simply asserting that Wal-Mart's authority to decline a driver's request means that the policy

necessarily imposed "more than a mere 'burden'" on drivers' ability to take a layover at home—with no explanation for why that is so or, more importantly, how we know it from the face of the policy alone. *See id.* at 26. At summary judgment, the manual's failure to make clear the extent of the burden imposed by the pre-approval rule should have weighed against granting summary judgment, and instead allowed this open question to go to the jury. *See infra* Part II.B.

In the end, the majority's interpretation of Wal-Mart's pay manual rests on a sweeping and simplistic proposition: any policy that "restrict[s] employees from complete freedom of movement during breaks" is sufficient to show "control" under California law. Maj. Op. at 26–27. Unfortunately, the majority does not cite a single case that actually supports such a broad rule, and the text of the manual hardly demonstrates the sort of strict location control at issue in the only cases upon which the majority relies.

B

Because Wal-Mart's pay manual says so little about what drivers may or may not do during layovers, it leaves a great deal of room for interpretation. In attempting to parse this scant guidance at summary judgment, the district court was required to draw all reasonable inferences in Wal-Mart's favor. *See Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019). Instead, the court seems to have drawn every inference against Wal-Mart and assumed that the most restrictive reading of the manual must be true.[1] Perhaps a

[1] For example, the majority asserts that summary judgment was proper because it is "aware of no per se rule under California law that control will not be found when an employer creates an exception for

reasonable factfinder could agree with the district court that the manual could be construed as a company policy of strictly controlling drivers' whereabouts during layover periods. But the text of the manual itself does not compel such a conclusion.

1

In deciding this contested issue against Wal-Mart, the court effectively took from the jury one of the most critical questions in this case: what *was* Wal-Mart's official policy regarding what drivers were permitted to do during layover periods? Notably, testimony in this case shows that many drivers understood company policy to be broadly permissive, allowing them to do "whatever [they] want[ed]" during layovers. But the court significantly limited the jury's own consideration of how permissive Wal-Mart policy was by instructing them that at least the company's official written policy violated California law, and that Wal-Mart was liable if it followed such policy.

employees who receive prior approval to engage in otherwise restricted activities." Maj. Op. at 24. But such observation flips the burden at summary judgment on its head. In defending against summary judgment on this issue, Wal-Mart was certainly not required to show that its interpretation of the manual is *necessarily correct* as a matter of law. Rather, summary judgment should not have been granted unless *the plaintiffs* could show that Wal-Mart's interpretation was *wrong* as a matter of law—a conclusion that even the majority seems to recognize is not supported under California law. Regardless whether there is a "per se rule" under California law that Wal-Mart's view will necessarily prevail, such view is one with which a reasonable factfinder could agree—and thus this is a genuinely disputed question that should have been decided by the jury at trial. *See Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).

It is not difficult to see how this ruling prejudiced Wal-Mart. Wal-Mart should have had the opportunity to persuade the jury that the pay manual (and company policy generally) placed only minimal restraints on drivers' activity or whereabouts during layovers. Instead, Wal-Mart was forced to accept that its manual announced unlawful policies and then attempt to convince the jury that it had implemented practices that conflicted with those policies in material ways. In essence, Wal-Mart could win only by showing that it ignored its own company standards.[2]

2

Nor did the court eliminate the prejudice by offering a supplemental jury instruction on the definition of "control" under California law, as the majority suggests. *See* Maj. Op. 28–29. Perhaps confused as to whether the court's summary judgment ruling had already declared Wal-Mart to be liable on the layover claims, the jury asked the court to clarify the "definition regarding Wal-Mart's control during layover periods." In response, the court told the jury that there "is no clear definition of control" under California law, but that the key was whether "the driver was able to use that time effectively for his or her own purposes." The court gave two examples, notably both from cases in which courts found employer control (once again, *Bono* and *Morillion*). The court gave no counterexamples from a case in which control

[2] The prejudice is especially obvious if one considers the situation of a juror who read the manual and found its policies not to be overly restrictive. Nonetheless, such a juror would have been told that, if Wal-Mart actually followed the manual, then it had violated California law. Even though such a juror found Wal-Mart's written policies to be perfectly permissive, Wal-Mart would lose unless it could persuade him or her that, in practice, the company was even *more* lenient with drivers.

was lacking, nor did it offer any possible limitations to the cases' holdings.

This supplemental instruction might have given the jury more detail on what "control" means under California law, but it did nothing to correct its earlier instruction that such control is *necessarily demonstrated* by Wal-Mart's written policy. Thus, the jury was still left to decide only whether Wal-Mart deviated from that policy in a way that materially lowered the extent to which it controlled drivers. If the jury simply decided that Wal-Mart followed its policy as written, the precise definition of control was beside the point because its command was already clear: impose liability. This was error.

III

In sum, while I join the majority in all other respects, I must conclude that the district court erred in granting partial summary judgment against Wal-Mart on the meaning of Wal-Mart's written pay policies. Such a conclusion can be supported only by drawing every inference against Wal-Mart—exactly the opposite of the court's task at summary judgment. The limited text of Wal-Mart's policies says very little about what drivers may do during their layover periods, and it does not remotely demonstrate the degree of control found sufficient in other California cases. On this scant evidence, the district court should have left for the jury the critical task of determining the extent of control exerted by Wal-Mart's layover policies and practices.

I would reverse the judgment against Wal-Mart to such extent and remand for a new trial on the "layover periods" issue.

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing or Answers

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 17-15983 & 17-16142

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer to petition is *(select one)*:

[x] Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4,142

*(Petitions and answers must not exceed 4,200 words)*

**OR**

[ ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/ Lauren M. Blas **Date** January 21, 2020

*(use "*s/[typed name]*" to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2020, I filed the foregoing Petition for Rehearing and Rehearing *En Banc* with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: January 21, 2020

s/ Theodore J. Boutrous, Jr.
Theodore J. Boutrous, Jr.